**Not for Publication**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| M.N., INDIVIDUALLY AND ON BEHALF OF A.D., & A.D., <br><br>*Plaintiffs,* <br><br> v. <br><br> SPARTA TOWNSHIP BOARD OF EDUCATION, NEW JERSEY DEPARTMENT OF EDUCATION, & ANGELICA ALLEN-MCMILLAN, ACTING COMMISSIONER OF EDUCATION, IN HER OFFICIAL CAPACITY, <br><br> *Defendants.* | Civil Action No. 21-19977 <br><br> **OPINION** |

**John Michael Vazquez, U.S.D.J.**

      This matter returns to the Court on the motion of Defendants the New Jersey Department of Education ("NJDOE") and Acting Commissioner of Education Angelica Allen-McMillan (collectively "the State Defendants") to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), the relevant counts of Plaintiffs' First Amended Complaint. D.E. 50. The Court has reviewed the parties' submissions[1] and considered the motions without oral argument pursuant to Fed. R. Civ. P. 78 and L. Civ. R. 78.1(b). For the reasons set forth below, the State Defendants' motion is **GRANTED in part** and **DENIED in part**.

---

[1] The State Defendants' brief in support of the motion, D.E. 50-1, will be referred to as "S.D. Br." Plaintiffs' brief in opposition, D.E. 57, will be referred to as "Plf. Opp'n." The State Defendants' reply, D.E. 60, will be referred to as "S.D. Rep."

I. **BACKGROUND**[2]

Plaintiff A.D. is a nineteen-year-old young man who suffers from disabilities. D.E. 17 ("FAC") ¶ 20. A.D. lives in Sparta, New Jersey. *Id.* ¶ 21. A.D. lives with Plaintiff M.N., his mother, and his father, R.D., who is not a party. *Id.* ¶¶ 25, 50. A.D. enrolled in Sparta High School in April 2019 and was the beneficiary of an individualized education program ("IEP"). *Id.* ¶ 51. Sparta High School is under the purview of the Sparta Township Board of Education ("STBOE"). *See id.* ¶ 26. Thereafter, A.D. disenrolled and reenrolled in Sparta High School several times. *E.g.*, *id.* ¶¶ 58-59. In April of 2021, the STBOE did not allow A.D. to reenroll in the high school because he had already taken and passed the GED exam and been awarded a high school diploma. *See id.* ¶¶ 59-60.

Both Plaintiffs and the STBOE sought administrative review. *Id.* ¶¶ 61, 74. The same Administrative Law Judge ("ALJ") of the New Jersey Office of Administrative Law ("NJOAL") presided over both cases. *Id.* ¶ 65. In each case, the ALJ ruled in favor of the STBOE, finding that A.D.'s entitlement under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400, *et seq.*, to a free appropriate public education ("FAPE") was terminated by his receipt of the diploma. *Id.* ¶¶ 79, 91. Allen-McMillan, as Acting Commissioner of Education, affirmed the ALJ's decision in the matter that was appealable to her. *Id.* ¶ 85. That decision is currently under review by the Appellate Division of the Superior Court of New Jersey. *Id.* at 37 (certification pursuant to L. Civ. R. 11.2).

---

[2] The factual background is taken from Plaintiffs' First Amended Complaint. D.E. 17. When reviewing a motion to dismiss, a court accepts as true all well-pleaded facts in the complaint. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Additionally, the Court considers the records of the administrative proceedings because they were referenced in the First Amended Complaint and are public records. Fed. R. Civ. P. 10(c); *see also Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007).

Plaintiffs initiated the instant suit on November 12, 2021. D.E. 1. They moved for a preliminary injunction on December 11, 2021. D.E. 11. The Court denied Plaintiffs' motion on April 12, 2022. D.E. 61, 62. The Court has also denied motions filed by Plaintiffs to dismiss the STBOE's counterclaim and to sanction the STBOE under Federal Rule of Civil Procedure 11. D.E. 23, 39, 69.

Plaintiffs filed the FAC on January 6, 2022. FAC. They indicate that "A.D. has transferred the authority to make decisions regarding his education to his mother, plaintiff M.N." and that "A.D. brings this action by and through his mother, M.N." *Id.* ¶¶ 23-24. The FAC raises three claims against the State Defendants. First, it claims that the State Defendants have violated Plaintiffs' rights, granted by the IDEA and New Jersey regulations, to an impartial due process hearing before the NJOAL. *Id.* ¶¶ 112-25 (Count III). Second, it claims that Allen-McMillan is liable under 42 U.S.C. § 1983 for damages caused by her violation of the IDEA. *Id.* ¶¶ 126-39 (Count IV). Third, it seeks a declaratory judgment that A.D. remains eligible to receive a FAPE, that his GED is insufficient under the IDEA, and that he should have been eligible to reenroll in Sparta High School. *Id.* ¶¶ 140-54 (Count V). The State Defendants responded with the instant motion. D.E. 50.

## II.   STANDARD OF REVIEW

### A. Federal Rule of Civil Procedure 12(b)(1)

In deciding a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, a court must first determine whether the party presents a facial or factual attack because that distinction determines how the pleading is reviewed. *See Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). "A facial attack concerns an alleged pleading deficiency whereas a factual attack concerns the actual failure of a plaintiff's claims to comport factually with the

3

jurisdictional prerequisites." *Young v. United States*, 152 F. Supp. 3d 337, 345 (D.N.J. 2015). When a defendant does "not challenge the validity of any of the Plaintiffs' factual claims as part of its motion, it has brought . . . a facial challenge." *In re Horizon Healthcare Servs. Data Breach Litig.*, 846 F.3d 625, 632 (3d Cir. 2017).

The State Defendants assert the defenses of lack of standing and sovereign immunity through their motion to dismiss "before [they] filed any answer to the Complaint or otherwise presented competing facts[,]" which renders it a facial attack. *Const. Party v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014). As a result, "the court must only consider the allegations of the complaint and documents referenced therein . . . in the light most favorable to the plaintiff." *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000).

### B. Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a complaint that fails "to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). For a complaint to survive dismissal under Rule 12(b)(6), it must contain sufficient factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Further, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016). In evaluating the sufficiency of a complaint, district courts must separate the factual and legal elements. *Fowler*, 578 F.3d at 210-211. Restatements of the elements of a claim are legal conclusions, and therefore, are not entitled to a presumption of truth. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011). The Court, however,

4

"must accept all of the complaint's well-pleaded facts as true." *Fowler*, 578 F.3d at 210. Even if plausibly pled, however, a complaint will not withstand a motion to dismiss if the facts alleged do not state "a legally cognizable cause of action." *Turner v. J.P. Morgan Chase & Co.*, No. 14-7148, 2015 WL 12826480, at *2 (D.N.J. Jan. 23, 2015).

### III.     ANALYSIS

#### A. Article III Standing

The State Defendants first argue that M.N. lacks standing, which goes to the Court's subject matter jurisdiction. S.D. Br. at 8-11. The Constitution provides that "judicial Power" extends to "Cases" and "Controversies[.]" U.S. Const. art. III, § 2. To meet the case-or-controversy requirement, a plaintiff must show that he has standing to sue. *See Raines v. Byrd*, 521 U.S. 811, 818 (1997) (citation omitted). To establish Article III standing, a plaintiff "must demonstrate '(1) an injury-in-fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision.'" *Finkelman v. Nat'l Football League*, 810 F.3d 187, 193 (3d Cir. 2016) (quoting *Neale v. Volvo Cars of N. Am., LLC,* 794 F.3d 353, 358-59 (3d Cir. 2015)). An injury-in-fact requires a plaintiff to show that she suffered "an invasion of a legally protected interest" that is "concrete and particularized[.]" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). A particularized injury means that it "must affect the plaintiff in a personal and individual way." *Id.* at 560 n.1. A concrete injury refers to one that actually exists; one that is real and not abstract. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016). In addition, "[t]he injury must be concrete in both a qualitative and temporal sense[.]" *Kamal v. J. Crew Grp., Inc.*, 918 F.3d 102, 110 (3d Cir. 2019) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)).

The State Defendants argue that M.N. lacks standing because Plaintiffs have not proven that she is A.D.'s legal guardian and A.D. is an adult. S.D. Br. at 8. Plaintiffs disagree and also argue that M.N. has suffered injuries herself by paying for A.D.'s education when he should have been educated for free under the IDEA. Plf. Opp'n at 11. The State Defendants respond that no allegations in the FAC support this argument. The Court does not reach either argument because it finds Plaintiffs' reliance on *Winkelman ex rel. Winkelman v. Parma City School District*, 550 U.S. 516 (2007), to be dispositive.

In *Winkelman*, the parents of a child covered by the IDEA could not agree with the child's school over his IEP. 550 U.S. at 519-20. The parents sought to appeal to a federal district court the outcome of the administrative proceedings. *Id.* at 520. The issue before the Supreme Court was whether the parents, "either on their own behalf or as representatives of the child," could proceed *pro se*. *Id.* The *Winkelman* Court considered whether the IDEA gives "to parents rights of their own that can be vindicated in court proceedings, or alternatively, whether the Act allows them, in their status as parents, to represent their child in court proceedings." *Id.*

The Court in *Winkelman* found that the IDEA affords "parents independent, enforceable rights[.]" *Id.* at 526. In doing so, the Supreme Court rejected the argument that the IDEA "contemplat[es] parental involvement only to the extent that parents represent their child's interests." *Id.* at 527. The *Winkelman* Court found this position to be inconsistent with the statute, which explicitly provides that one of its purposes is "to ensure that the rights of children with disabilities *and parents of such children* are protected." *Id.* at 528 (emphasis added) (quoting 20 U.S.C. § 1400(d)(1)(B)). The Court read "the statute's references to parents' rights to mean what they say: that IDEA includes provisions conveying rights to parents as well as to children." *Id.* at

6

529. The IDEA, according to the Court in *Winkelman*, thus affords parents an actionable stake in the substantive rights it affords their children. *Id.* at 531.

The Supreme Court further rejected the contention that a parent can sue to enforce the IDEA only when he or she has incurred an expense educating a child who should have received a free education. *Id.* at 532. The Court criticized this notion because it decentralizes the quality of the education given to the child and would allow only the child to vindicate his or her IDEA rights absent the parent's financial injury. *Id.* at 532-33. The Court in *Winkelman* found that that approach could lead to injustice and was contrary to the will of Congress. *Id.* at 533. The Supreme Court concluded that the "IDEA grants parents independent, enforceable rights. These rights, which are not limited to certain procedural and reimbursement-related matters, encompass the entitlement to a free appropriate public education for the parents' child." *Id.*

In light of *Winkleman*, this Court agrees with Plaintiffs that M.N., as A.D.'s parent, has standing to vindicate rights under the IDEA. In reply, the State Defendants assert that the case is distinguishable because the Winkelmans paid the costs of their child's private-school education while the administrative and appellate process played out, S.D. Rep. at 3, but this requirement was expressly rejected by the Supreme Court as a necessary prerequisite for parents to bring suit under the IDEA.

Accordingly, the Court holds that M.N. has standing. The State Defendants' motion is denied on these grounds.

### B. Abstention—*Pullman & Burford*

Next, the State Defendants argue that the abstention doctrines of *Railroad Commission of Texas v. Pullman*, 312 U.S. 496 (1941), and *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943), counsel in favor of this Court declining jurisdiction. S.D. Br. at 11. The Court considers each in turn.

For *Pullman* abstention to apply, three "exceptional circumstances" must be present: (1) "there must be uncertain issues of state law underlying the federal constitutional claims"; (2) "the state law issues must be amenable to a state court interpretation which could obviate the need to adjudicate or substantially narrow the scope of the federal constitutional claim"; and (3) "an erroneous construction of state law by the federal court would disrupt important state policies." *Planned Parenthood of Cent. N.J. v. Farmer*, 220 F.3d 127, 149 (3d Cir. 2000) (cleaned up).

The State Defendants claim that all three criteria are satisfied. S.D. Br. at 13. Plaintiffs respond that the FAC does not raise a question of federal constitutional law. Plf. Opp'n at 13. Instead, according to Plaintiffs, their claim is statutory. *Id.* The Court agrees. This matter turns on the IDEA—a statute—and the applicable federal and state regulations. *Id.* The absence of a federal constitutional issue makes abstention under *Pullman* inappropriate. *Propper v. Clark*, 337 U.S. 472, 489-90 (1949). In reply, the State Defendants highlight the portions of the FAC that cite the Supremacy Clause, arguing that this raises a constitutional issue that can justify *Pullman* abstention. S.D. Rep. at 3-4. But "Supremacy [C]lause claims essentially involve federal policy and 'the federal courts are particularly appropriate bodies for the application of preemption principles.'" *United Servs. Auto. Ass'n v. Muir*, 792 F.2d 356, 363 (3d Cir. 1986) (quoting *Kennecott Corp. v. Smith*, 637 F.2d 181, 185 (3d Cir. 1980)). This case does not raise a federal constitutional issue that calls for *Pullman* abstention. *See id.* at 363-64 (explaining that a preemption analysis is fundamentally a question of statutory interpretation).

Abstaining pursuant to "*Burford* . . . is proper when questions of state law in which the state has expressed a desire to establish a coherent policy with respect to a matter of substantial public concern are presented." *Nat'l City Mortg. Co. v. Stephen*, 647 F.3d 78, 83 (3d Cir. 2011).

"Generally, *Burford* abstention is justified where a complex regulatory scheme is administered by a specialized state tribunal having exclusive jurisdiction." *Muir*, 792 F.2d at 364. In conducting a *Burford* inquiry, the Third Circuit has found that a court must first consider "whether 'timely and adequate state-court review' is available." *Gov't Emps. Ins. Co. v. Tri Cnty. Neurology & Rehab. LLC*, 721 F. App'x 118, 121 (3d Cir. 2018) (quoting *Riley v. Simmons*, 45 F.3d 764, 771 (3d Cir. 1995)). If it is available, a court must then determine if the case

> (1) implicates a regulatory scheme that "involves a matter of substantial public concern;" (2) "whether it is the sort of complex, technical regulatory scheme to which the *Burford* abstention doctrine usually is applied;" and (3) "whether federal review of a party's claims would interfere with the state's efforts to establish and maintain a coherent regulatory policy."

*Gov't Emps. Ins. Co.*, 721 F. App'x at 121-22 (quoting *Chiropractic Am. v. LaVecchia*, 180 F.3d 99, 105 (3d Cir. 1999)). "Importantly, to trigger *Burford* abstention, an action must challenge a state's regulatory scheme, rather than actions taken under color of the scheme." *Gov't Emps. Ins. Co.*, 721 F. App'x at 122.

The State Defendants posit that Plaintiff have adequate review in the New Jersey administrative apparatus and courts. S.D. Br. at 14. They then argue that "New Jersey's high school diploma scheme" is a matter of substantial concern to the State of New Jersey. *Id.* at 15. Plaintiffs counter that the IDEA itself grants Plaintiffs a right of review in federal court. Plf. Opp'n at 12-13 (quoting 20 U.S.C. §§ 1415(i)(2)(A), 1415(i)(3)(A)). They argue that the proceedings in the Appellate Division address a different issue than this case does and that New Jersey's interest in regulating high school diplomas is subordinate to the federal interests advanced by the IDEA. *Id.* at 16-17.

Assuming for the sake of argument that adequate state court review is available, the Court will not abstain under *Burford*. Of the factors discussed above, the Court finds the third

9

determinative: "whether federal review of a party's claims would interfere with the state's efforts to establish and maintain a coherent regulatory policy." *Gov't Emps. Ins. Co.*, 721 F. App'x at 122 (quoting *LaVecchia*, 180 F.3d at 105). As Plaintiffs point out, their ultimate claim is that a state regulation was applied to A.D. in a way that deprived him of a *federal* statutory right. Although the states are entrusted with administering the IDEA in the first instance, to receive federal funding, they must "ensure that any State rules, regulations, and policies" are consistent with the IDEA. 20 U.S.C. § 1407(a)(1).

Further, there is no "specialized state tribunal having *exclusive* jurisdiction." *Muir*, 792 F.2d at 364 (emphasis added). Rather, the IDEA itself opens the door to the federal courthouse and invites in those unsatisfied with the results of the outcome of a due process hearing conducted by state authorities. 20 U.S.C. § 1415(i)(2)(A); *see also id.* § 1415(i)(3)(A). Congress, evidently, did not believe that federal review of state action under color of the IDEA was an unwarranted interference with the state educational system. The Court will not abstain under *Burford*.

### C. Allen-McMillan's Liability under the IDEA

The State Defendants argue that state actors cannot be individually liable under the IDEA. S.D. Br. at 15-16 (citing, *inter alia*, *Taylor v. Altoona Area Sch. Dist.*, 513 F. Supp. 2d 540, 553 (W.D. Pa. 2007)). Plaintiffs counter that the State Defendants are collaterally estopped from arguing that Allen-McMillan should be dismissed in her official capacity because Judge Hillman, in another IDEA case—*M.D. v. Vineland City Board of Education*, No. 19-cv-12154, 2022 WL 844423 (D.N.J. March 21, 2022)—denied a motion to dismiss that raised the same argument. Plf. Opp'n at 17-19. The State Defendants counter that Judge Hillman's decision was not a "final judgment" as that phrase is used by courts applying collateral estoppel. S.D. Rep. at 6.

"Collateral estoppel prevents the re-litigation of a factual or legal issue that was litigated in an earlier proceeding." *Doe v. Hesketh*, 828 F.3d 159, 171 (3d Cir. 2016). That doctrine is properly applied when

> "(1) the identical issue was decided in a prior adjudication; (2) there was a final judgment on the merits; (3) the party against whom the bar is asserted was a party or in privity with a party to the prior adjudication; and (4) the party against whom the bar is asserted had a full and fair opportunity to litigate the issue in question."

*Id.* (quoting *Del. River Port Auth. v. Fraternal Order of Police*, 290 F.3d 567, 573 n.10 (3d Cir. 2002)). Although the State Defendants urge a strict reading of the second requirement, the Third Circuit has explained that "'[f]inality' for purposes of issue preclusion is a more 'pliant' concept than it would be in other contexts." *Dyndul v. Dyndul*, 620 F.2d 409, 412 (3d Cir. 1980) (footnote omitted). Entry of a final judgment is not necessary. *In re Brown*, 951 F.2d 564, 569 (3d Cir. 1991). Indeed, "[t]here is no bright-line rule regarding what constitutes a 'final judgment' for issue preclusion." *Free Speech Coalition, Inc. v. Att'y Gen. of U.S.*, 677 F.3d 519, 541 (3d Cir. 2012). Instead, all that is required is a "prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect." *Brown*, 951 F.2d at 569. "Factors that courts consider when determining whether the prior determination was sufficiently firm include: whether the parties were fully heard, whether a reasoned opinion was filed, and whether that decision could have been, or actually was, appealed." *Free Speech Coalition*, 677 F.3d at 541 (internal quotation marks and citation omitted). "A denial of a motion to dismiss can be sufficiently 'final' for purposes of issue preclusion." *In re Geo Specialty Chems. Ltd.*, 577 B.R. 142, 188 (Bankr. D.N.J. 2017).

The Court does not find Judge Hillman's decision to be sufficiently firm to be afforded preclusive effect. To be sure, the parties were fully heard, and a reasoned opinion was filed. But

11

Judge Hillman's decision recognized that courts are split on this issue. *M.D.*, 2022 WL 844423, at *7. Additionally, the opinion contemplated that the claims against the interim commissioner of the NJDOE "may . . . turn out to be duplicative in this matter," leaving the door open to a possible later dismissal. *Id.* As a result, Judge Hillman's decision does not appear to be the kind that is typically afforded preclusive effect.

But the Court does find Judge Hillman's decision persuasive, although it is not binding authority. As a result, the Court will not dismiss Allen-McMillan in her official capacity at this stage. It is not apparent, before discovery is complete, that claims against Allen-McMillan (and any resulting injunctive relief) would be duplicative vis-a-vis the NJDOE. The Court denies the State Defendants' motion on this ground.

### D. Failure to State a Claim

The State Defendants maintain that Plaintiffs cannot state an IDEA claim because the underlying administrative decisions correctly concluded that A.D.'s diploma is "a 'regular high school diploma' under 34 C.F.R. § 300.102[.]" *See* S.D. Br. at 17. Plaintiffs criticize the State Defendants for asserting "a legal conclusion that this Court has not yet reached at this pleading stage." Plf. Opp'n at 22.

The Court notes that the substance of this part of the motion is an attack on the merits of the IDEA claim. In the preliminary injunction opinion,[3] the Court found that Plaintiffs were likely to succeed on the merits and that A.D.'s diploma, awarded solely on the basis of passing the GED exam, is not a "regular high school diploma" as contemplated by the Code of Federal Regulations. *E.g.*, D.E. 61 at 19. At a minimum, Plaintiffs have stated a plausible claim under the IDEA.

---

[3] The State Defendants filed this motion before the Court issued its opinion regarding the preliminary injunction. *Compare* D.E. 50, *with* D.E. 61.

**E. Plaintiffs' 42 U.S.C. § 1983 Claim**

Turning to Plaintiffs' Section 1983 claim, the State Defendants assert that Allen-McMillan is immune from suit under the Eleventh Amendment and, independently, urge the Court to dismiss Plaintiffs' claim.  S.D. Br. at 21-22.  The Court considers each position in turn.

The Eleventh Amendment provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI; s*ee also Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 99-100 (1984).  Further, that immunity extends to "entities that are considered arms of the state" such as state agencies, state departments, and state officials acting in their official capacities.  *See MCI Telecomm. Corp. v. Bell Atl. Pa.*, 271 F.3d 491, 503 (3d Cir. 2001); *see also Kentucky v. Graham*, 473 U.S. 159, 169 (1985); *Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524, 545 (3d Cir. 2007).  There are three exceptions to Eleventh Amendment immunity: "(1) abrogation by an Act of Congress, (2) waiver by state consent to suit; and (3) suits against individual state officials for prospective relief to remedy an ongoing violation of federal law."  *M.A. ex rel. E.S. v. State-Operated Sch. Dist.*, 344 F.3d 335, 345 (3d Cir. 2003); *see also Ex parte Young*, 209 U.S. 123 (1908).  As a result, the Court finds that Plaintiffs' 1983 claim must be dismissed against Allen-McMillan in her official capacity except for potentially prospective injunctive relief.

The State Defendants next contend that Plaintiffs cannot state a claim under 42 U.S.C. § 1983 against Allen-McMillan for an IDEA violation because IDEA rights cannot be vindicated through Section 1983.  S.D. Br. at 24-25.  The State Defendants rely primarily on the Third Circuit's holding in *A.W. v. Jersey City Public Schools*, 486 F.3d 791 (3d Cir. 2007) (en banc).  *Id.*

13

In *A.W.*, the plaintiff sued two NJDOE officials under Section 1983 for violating his IDEA rights. 486 F.3d at 793. The Third Circuit found that the claim was improper. *Id.* at 802-04. The Third Circuit framed the inquiry as "whether there is an express, private means of redress in the IDEA itself, which, absent some textual indication to the contrary, would indicate that Congress did not intend to leave open a more expansive remedy under § 1983." *Id.* at 802. Examining the plain language of the statute, the *A.W.* court concluded that the statute does provide such an avenue to obtain redress. *Id.* According to the Third Circuit, that "means that a § 1983 action is not available to remedy violations of IDEA-created rights, absent some 'textual indication, express or implicit, that the [statutory] remedy is to complement, rather than supplant, § 1983.'" *Id.* (alteration in original) (quoting *Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 122 (2005)).

A.W. invoked 20 U.S.C. § 1415(l)[4] as containing such an indication, but the Third Circuit was not persuaded. *Id.* at 803. Instead, the court in *A.W.* read that subsection as akin to a savings clause that preserved preexisting civil rights claims from the otherwise broad reach of the IDEA's "comprehensive . . . remedial scheme." *Id.* The Third Circuit added that the Supreme Court has cited "the IDEA as an example of a statutory enforcement scheme that precludes a § 1983 remedy." *Id.* (citing *Rancho Palos Verdes*, 544 U.S. at 121; *Blessing v. Freestone*, 520 U.S. 329, 347-48

---

[4] 20 U.S.C. § 1415(l) provides as follows:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990, title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

20 U.S.C. § 1415(l).

(1997); *Wright v. Roanoke Redevelopment. & Hous. Auth.*, 479 U.S. 418, 423-24, 427(1987)). Finally, the *A.W.* court highlighted 20 U.S.C. § 1415(b)(6), which "includes a judicial remedy for violations of any right 'relating to the identification, evaluation, or educational placement of [a] child, or the provision of a free appropriate public education to such child.'" *Id.* (alteration in original) (quoting 20 U.S.C. § 1415(b)(6)). The Third Circuit thus ruled that a plaintiff may not use Section 1983 to vindicate IDEA rights. *Id.*

In light of *A.W.*, the Court agrees with the State Defendants that Plaintiffs cannot maintain an action against Allen-McMillan pursuant to Section 1983 for violations of IDEA rights. And the FAC does not plausibly plead a violation of some other federal right traditionally enforceable under Section 1983. Plaintiffs label their claim "Violation of Rights and Procedural Safeguards Guaranteed by the IDEA pursuant to 42 U.S.C. § 1983 Against Commissioner Allen-McMillan[.]" FAC at 28. The allegations of the count refer almost exclusively to the IDEA and do not cite to or directly implicate any constitutional right. At best, Plaintiffs asks the Court to "[f]ind[] that Defendants have violated IDEA, §504 of the Rehabilitation Act of 1973 ('§504'), and 42 U.S.C. § 1983, as applicable[,]" but the allegations do not actually speak to the Rehabilitation Act, which in any event is not a constitutional provision. In the absence of plausible allegations that Allen-McMillan is violating Plaintiffs' rights other than those granted by the IDEA, the Court finds that Plaintiffs have failed to state a claim.

Plaintiffs again urge that the State Defendants are collaterally estopped by *M.D.* Plf. Opp'n at 23-24. Judge Hillman found that the complaint in *M.D.* had plausibly alleged a violation of the Fourteenth Amendment, thereby enabling the plaintiff to maintain claims under Section 1983. *M.D.*, 2022 WL 844423, at *9. The FAC does not have comparable allegations. Thus, in addition

15

to not being sufficiently final for collateral estoppel purposes, *M.D.* also contained materially different allegations. The State Defendants motion to dismiss for failure to state a claim is granted.

### F. Declaratory Judgment

Finally, the State Defendants ask the Court to dismiss Plaintiffs' claim for a declaratory judgment because a party cannot advance a stand-alone claim for declaratory relief as "an independent cause of action." S.D. Br. at 25.

"The Declaratory Judgment Act allows any court of the United States to 'declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.'" *Giftboxcenter, LLC v. Petbox, Inc.*, No. 15-4390, 2018 WL 734664, at *4 (D.N.J. Feb. 5, 2018) (quoting 28 U.S.C. § 2201(a)). "The Declaratory Judgment Act is a procedural vehicle that creates a form of relief; it does not create a cause of action courts may be compelled to enforce." *In re AZEK Building Prods., Inc.*, 82 F. Supp. 3d 608, 624-25 (D.N.J. 2015). "To state it differently, the [Act] is not itself an independent cause of action sufficient to invoke the court's federal-question jurisdiction; the availability of relief under the [Act] 'presupposes the existence of a judicially remediable right.'" *Argen v. Kessler*, No. 18-963, 2019 WL 2067639, at *3 (D.N.J. May 10, 2019) (quoting *Schilling v. Rogers*, 363 U.S. 666, 677 (1960)).

It appears that the State Defendants' argument hinges on the success on the remainder of their motion—that is, the request for declaratory relief would "stand alone" only if the Court were to dismiss the rest of the action. The Court has already decided that Plaintiffs' IDEA claim is viable. As a result, the Court will not at this juncture limit the potential remedies Plaintiffs may be awarded.

## IV.     CONCLUSION

For the foregoing reasons, the State Defendants' motion is granted in part and denied in part. Plaintiffs' 1983 claim is dismissed. The motion is otherwise denied. An appropriate Order accompanies this Opinion.

Dated: August 23, 2022

_____<br>
John Michael Vazquez, U.S.D.J.