## JOHN RUE & ASSOCIATES, LLC

A PRIVATE PUBLIC INTEREST LAW FIRM
P.O. BOX 5150
PHILLIPSBURG, NJ 08865-9998
(862) 283-3155 (main)
(973) 860-0869 (facsimile)

John D. Rue†
—
Krista L. Haley
Donald A. Soutar§
—
Lisa M. Quartarolo
Francis X. Geier
Saran Q. Edwards
Kenneth R. Walk

EXHIBIT A

Johanna G. Burke*
Jonathan S. Corchnoy*⊗§
Matthew P. Crimmel*§†Δ
Carolina T. Curbelo*
Jordan B. Dascal*†
Lynne D. Feldman*
Rami M. Salim†
Wayne Pollock*§

April 22, 2021

## OF-COUNSEL AGREEMENT

WHEREAS, John Rue ("Rue") and JOHN RUE & ASSOCIATES LLC ("JR&A") and Robert C. Thurston ("Thurston") and THURSTON LAW OFFICES LLC ("TLO" and, collectively with Rue, JR&A, and Thurston, TLO, the "Parties") wish to formalize their extant close professional relationship, and

THEREFORE, the Parties hereby enter into this agreement (the "Agreement") to govern the terms of collaborative and shared work thereby.

1. **Continuity of Both Law Firms.** Thurston will continue to practice law with TLO. TLO will continue to maintain malpractice insurance on Thurston's practice therewith, which shall (in part) cover any work Thurston may perform in collaboration with JR&A. TLO shall also continue to provide Thurston with office space, access to legal research resources (e.g., Lexis or Westlaw, as Thurston requires), computer hardware and software, telephone service, administrative support (as needed), and all other ordinary expenses associated with the practice of law. The same shall be true as to Rue and JR&A. Accordingly, no Party shall look to any other to provide any of these services.

2. **Conflicts.**

   A. <u>Representations</u>. Each Firm represents that its primary practice focus is civil rights law, in which the clients are all natural persons, and the adverse parties are public entities (or occasionally, as to JR&A's practice, private schools) with no individual parties named (in their personal capacity) as defendants. Accordingly, the Firms believe that the likelihood of an ethical conflict arising by imputation, except in the exceptional case where a Firm is (a) representing an institutional client or (b) representing a natural person (not a public servant, named only in their official capacity) who is likely to become legally adverse to another natural person, is extremely low.

   B. <u>Conflicts Procedure</u>. In light of the above, the Firms agree to the following procedure regarding conflicts.

*Bene facere bonum ~ Doing well by doing good*

*   Of-Counsel to the Firm

    i.    <u>General Practice</u>.  In the ordinary course, the Firms will not exchange client information prior to engaging a new client.

    ii.    <u>Exception</u>.  In the event that either Firm intends either to (a) engage a client who is not a natural person, **or** (b) represent a client who is a natural person, but who is reasonably likely to become legally adverse to another natural person:

    a)  The Firm that intends to become so engaged (the "Engaging Firm") will notify the principal of the other Firm, and provide the following information: (a) the client's name; and (ii) the name of all potentially adverse parties;

    b)  The other Firm will, within twenty-four hours, notify the Engaging Firm if an ethical conflict is identified.

    c)  If so, the Engaging Firm may either (i) decline to enter into the engagement, (ii) obtain informed consent for a conflict waiver from both clients (with or without an ethical screen), or (iii) sever this Of-Counsel Agreement, so long as severance can be accomplished without prejudice to any client of either Firm, and in compliance of the New Jersey Rules of Professional Conduct and paragraph 8 of this Agreement, *infra*.

    iii.    <u>Possible Errors</u>.  The Firms, after careful consideration, believe that pursuant to these procedures, under the specific factual circumstances described herein, there is no material risk that an ethical conflict will arise without the opportunity for the Firms to act to avoid it.  In the event that one does so arise, however, the Firms agree to act immediately to cure the conflict, without prejudice to any client, regardless of any possible prejudice to either Firm.  Such steps shall include, but not be limited to, those described in paragraph ii(c), above.

3. **Titles and Use of Firm Names.**  Either Firm may, in its discretion, and with the prior written agreement of the other Firm, list the Principal to the other firm as "of-counsel" on marketing materials, including (but not limited to) inclusion of a picture and bio on the Firm's website, and listing the attorney on the Firm's letterhead.  All such references shall indicate the "of-counsel" nature of the relationship, so as not to confuse the reader into believing that an employment relationship or partnership exists.  Similarly, attorneys employed by any Party may be listed on any other Party's letterhead or website, with prior written permission of the attorney and the Firm employing that attorney; such written permission may be requested and provided by email.

4. **Informal Collaboration**.  Either Firm may call upon the other to informally collaborate on any legal issue.  No compensation will be provided absent the initiation of a formal collaboration, which, pursuant to ¶ 7 below, can only be effected in writing.

5. **Informal Support**.  Any Party to this Agreement may request occasional (i.e., not regular) informal professional support from any other Party, e.g., conference room space, administrative assistance, etc.  Such requests shall not be unreasonably denied (provided that satisfying the request would not impose an undue burden on the recipient of the request), and the informal support shall be provided as a courtesy, i.e., without compensation.

6. **Formal Collaboration.** Pursuant to this agreement, either Firm may request that the other perform legal services for a client, with the client's informed consent. If both Firms agree, they will do so in writing (which may be by email) as to each specific case. As to any such collaboration, the Firm on whose letterhead the engagement agreement is written shall be deemed "Lead Counsel" on that case, with the other Firm designated as the "Supporting Counsel." Because of the impact on settlement discussions of multiple actions, where more than one case is pending or contemplated, only one Lead Counsel will be generally be designated per client (even if multiple cases are pending or contemplated on behalf of that client).

7. **Fee Sharing**. Fees shall be shared between the Firms on the following terms:

   A. **Hourly Fees**: Supporting Counsel shall receive from Lead Counsel 50% of all fees actually collected associated with Supporting Counsel's work, payable on a quarterly basis. This shall apply to both client paid fees, and prevailing party fees.

      i. Lead Counsel shall have sole and absolute discretion, after considering the views of all attorneys working on the case, (i) to compromise collections (with either clients or adversaries), (ii) as to the assignment to specific attorneys to any and all legal tasks associated with the case, and (iii) regarding questions of legal strategy.

      ii. Notwithstanding any fee concessions made pursuant to the foregoing, each timekeeper on each case shall be compensated proportionally to the work performed, as compared to the fees collected, without regard to any write-offs agreed to by Lead Counsel, or any discounts imposed by courts. That is, any reductions in fees shall be shared proportionally as between all timekeepers, even if certain hours are designated as the basis or reason for the same.

   B. **Flat Fees**. Flat fees are divided, at the end of a representation, between the timekeepers, after deduction of a 40% Firm Override (intended to cover overhead and profit). The baseline "share" of a flat fee is for a junior attorney, defined as an attorney with between 0-5 years of experience. Senior attorneys, defined as those with more than five years of experience, receive two shares for every share paid to a junior attorney. And non-attorney time (including paralegals and law clerks) is valued at 50% of junior attorney time, and paid directly to the Firm employing the paralegal or law clerk.

   C. **Referrals**. At the time of a referral, the Firms shall choose between the following two alternatives:

      i. Where one Firm (the "Referring Firm") refers to the other (the "Receiving Firm") an entire matter: (i) the Receiving Firm shall be Lead Counsel, and the Referring Firm shall be Supporting Counsel; and (ii) the Referring Firm, in addition to any other fees to which it is entitled under this Agreement, shall receive an additional 15% of any court-ordered fees, or any fees paid by the defendant in anticipation of a court order, or any fees paid by the client in order to facilitate settlement.

      ii. In the alternative, if the Firms are confident that they will work together on a particular matter, then the Receiving Firm shall still be Lead Counsel, and the

3

Referring Firm shall be Supporting Counsel.  But in lieu of the 15% referral fee, the Lead Counsel shall provide to the Receiving Firm 100% of any fees collected associated with the legal services that any attorney at the Referring Firm performed related to the matter (instead of the 50% share specified above).

D. **Fees on Fees**.  Notwithstanding any other part of this agreement, work performed on fee applications, i.e., post-judgment on the merits and addressing only fees (not appeals of the merits), shall be compensated at the lower rate of 1/3 to the Firm performing the work, and 2/3 to the Firm that served as lead counsel in obtaining the judgment on the merits.  This different ratio is intended to adjust the payment to incorporate the fact that, after obtaining judgment on the merits, the right to payment (in some amount) is no longer speculative.

8. **Termination**.  Either Party may terminate this agreement at any time, so long as termination can be accomplished without prejudice to any client of either Firm, and is otherwise compliant with the New Jersey Rules of Professional Conduct and any other ethical rules governing any specific case on which the Parties are collaborating, including (where required) obtaining leave of court. Each Firm's obligation to share fees shall survive termination of the Agreement.

9. **Most Favored Nation**.  In the event any Party to this Agreement subsequently enters into an of-counsel relationship with a third party (a "Third Party Agreement"), whether that third party be another firm or individual lawyer, that Party will disclose Third Party Agreement to all other Parties to this Agreement.  To the extent that the Third Party Agreement contains terms involving the sharing of fees that are more favorable than those contained in this Agreement, the Party entering into the Third Party Agreement will agree to modify the terms of this Agreement to bring them into alignment with the Third Party Agreement.  Nothing in this paragraph, however, shall impede the Parties from agreeing to exceptions to the general fee sharing terms of this agreement ("Exceptions"), on a case-by-case basis, providing that the different terms are adopted with the purpose and intent of incorporating contemplation of case-specific risks, burdens and potential benefits.  Such Exceptions (whether agreed between the Parties, or between either of the Parties and a third party) shall not be a violation of this Most Favored Nation provision, so long as the Exceptions are neither routine nor adopted with the purpose, intent and effect of generally undermining the purpose of this Most Favored Nation provision.

Agreed to and Signed by:

_John Rue_   April 22, 2021
John Rue              Date
On his own behalf and
On behalf of
John Rue & Associates LLC

_[signature]_        4/23/2021
Robert C. Thurston        Date
On his own behalf and
On behalf of
Thurston Law Offices LLC

4

# JOHN RUE & ASSOCIATES, LLC

A PRIVATE PUBLIC INTEREST LAW FIRM
40 S FULLERTON AVE., STE. 29
MONTCLAIR, NJ 07042
(862) 283-3155 (main)
(973) 860-0869 (facsimile)

John D. Rue[†]

—

Krista L. Haley
Donald A. Soutar[§]

—

Francis X. Geier
Saran Q. Edwards

Johanna G. Burke[*]
Jonathan S. Corchnoy[*⊗§]
Matthew P. Crimmel[*§†Δ]
Carolina T. Curbelo[*]
Jordan B. Dascal[*†]
Lynne D. Feldman[*]
Robert Thurston[*]
Rami M. Salim[†]
Wayne Pollock[*§]

GROUP EXHIBIT B

December 2, 2021

## CO-COUNSEL AGREEMENT

WHEREAS, John Rue ("Rue") and JOHN RUE & ASSOCIATES ("JR&A" or the "Firm") and Robert C. Thurston ("Thurston") and the Thurston Law Offices LLC ( TLO" and, collectively with Rue, JR&A, and Thurston and TLO, the "Parties") executed an of-counsel agreement as of April 22, 2021; and

WHEREAS, the Parties amended that agreement to excise the "Most Favored Nations" ("MFN") clause, permitting separate agreements with similarly situated firms on terms appropriate to the specific collaboration; and

WHEREAS, JR&A wishes to utilize the services of TLO in the role of Co-Counsel in numerous cases; and

WHEREAS, TLO has already begun work on some such cases; and

WHEREAS, JR&A intends to utilize the services of TLO on additional cases in the future;

THEREFORE, the Parties hereby enter into this Co-Counsel Agreement (the "Agreement") to govern the terms of their collaboration as an omnibus agreement for all cases not heretofore executed.

1. **Pre-Appointment**: JR&A has formed a subjective opinion that all cases have strong merits arguments in support of the claims, and that the clients are not so unreasonable as to cause concern about their attorneys' compliance with the ethical Rules.

2. **Co-Counsel Compensation**. Co-Counsel shall be compensated as follows, with aggregate "points" assigned to each case, by the Parties' subsequent agreement about the classification of each case:

   - Category A: "Pro bono" cases, accepted without payment by the client. JR&A represents that (i) in JR&A's subjective judgment, no facts reasonably in dispute, and (ii) the client's position is legally correct. There shall be 100 "points" assigned to such cases.

---

*Bene facere bonum ~ Doing well by doing good*

[*]    Of-Counsel to the Firm

- Category B Cases: "Legacy" client payment cases. JR&A has accepted client payment at some point prior to November 1, 2021, and represents only that the client's case has legal merit. There shall be 125 "points" assigned to such cases.

- Category C Cases: New client payment cases. JR&A has accepted payment since November 1 2021, and represents only that the client's case has legal merit. TLO shall receive 60% of client paid fees, as a non-refundable prepayment toward a 50% share of any prevailing party fees obtained associated with TLO's work.

- Category D Cases: Fee Applications. Cases in which JR&A has already achieved prevailing party status, such that a fee application is warranted. There shall be 75 "points" assigned to such cases.

3. **Points**. In category A, B, or D, the Parties shall in each case agree how points shall be allocated, between hourly pay (via W2) and percentage of case-ending fees associated with TLO's work. For example:

- In a category A case, the Parties could allocate 50 points to concurrent payment and 50 points to prevailing party fees. So TLO would be paid $50 per billable hour documented, on a W2 basis; as a non-refundable prepayment of 50% of any prevailing party fees obtained associated with the work of TLO (whether by agreement or court order).

- In a category B case, the Parties could allocate 50 points to concurrent payment, and 75 points to prevailing party fees. So TLO would receive $50 per hour, as a non-refundable prepayment of 75% of prevailing party fees associated with TLO's work.

- In a category D case, the Parties may allocate 50 points to concurrent payment, and 25 points to prevailing party fees. So TLO would receive $50 per hour, as a non-refundable prepayment of 25% of prevailing party fees associated with TLO's work.

4. **Current Cases**. The Parties have agreed to the points allocation on all current cases as explained on Exhibit A.

5. **Role of Co-Counsel**.

- Co-Counsel shall generally take the lead in the case through the administrative process, making all appearances in the OAL (or supervising assigned JR&A staff who will make such appearances), participating in all settlement proceedings prior to any appeals, and primary responsibility for drafting all court submissions.

- Co-Counsel, or assigned JR&A staff as determined by the Parties, shall be the primary client contact.

- Unless JR&A decides otherwise in a particular case, Co-Counsel shall use his/her own letterhead in the OAL.

- However, at the beginning of the case, JR&A will identify itself to defendant's attorney, indicating its role as co-counsel in the matter, and outlining JR&A standard policies regarding attorneys' fee waivers.

- JR&A will take the lead in the case on any federal appeals, including the use of JR&A letterhead in court filings.  Co-Counsel will continue to manage the day-to-day activities of the case, including primary responsibility for drafting all court submissions.

- TLO shall provide a draft of all court submissions to JR&A three (3) days prior to the relevant deadline, for JR&A's review and comment.  Any differences or disagreements shall be resolved collaboratively between JR&A and Co-Counsel.  If disagreements cannot be resolved by collaboration, then the firm signing the submission shall have the final decision.

- The allocation of responsibilities as between the Parties may be modified by written agreement in a particular case, which agreement may be by email.

6. **JR&A Support and Oversight**

- During the pendency of the case, JR&A shall provide Co-Counsel with support by junior attorneys and staff, as needed (by Co-Counsel) and as available (at JR&A).

- Practical support (printing, logistics, filing, etc.) will be provided on a case-by-case basis, as needed (by Co-Counsel) and as available (at JR&A).

- The case file shall be maintained on JR&A's SharePoint folder system.

- *Co-Counsel shall attend regular meetings to discuss case status.*  Such meetings shall be convened by Zoom, and shall occur approximately twice per month.

- JR&A will advance any routine expenses (filing fees, postage, etc.).  Expenses shall be recovered out of any post-judgment award of fees and costs before any attorneys' fees are calculated.

7. **Settlement**.

- No settlements will be recommended to the client absent JR&A's approval.

- JR&A routinely offers to settle special education disputes with a waiver of attorneys' fees, if the substantive settlement terms can be agreed upon at the initial settlement conference in the OAL, and finalized by signed contract (subject to school board approval and entry by court order) within two weeks thereafter.

- After that point, JR&A does not waive attorneys' fees unless compensated by the client for the waived fees.  Clients are made aware of this policy during intake, and have agreed to accept any consequences of this policy to their settlement position.

- JR&A reserves sole and absolute discretion with regard to any waiver (in whole or in part) of attorneys' fees. But all such decisions are made only after full consultation with all attorneys who have a material stake in the outcome.

8. **Termination of Co-Counsel Relationship in a Particular Case.**

- Co-Counsel agrees to remain on the case throughout the administrative process, unless doing so would require a breach of Co-Counsel's ethical obligations. After the decision in the OAL is issued, and up to thirty days thereafter, Co-Counsel may withdraw, without prejudice.

    o   In the event of a breach of this provision, Co-Counsel shall return to JR&A all monies paid related to this case, and shall waive all rights to prevailing party fees in the case.

- Similarly, if Co-Counsel does not withdraw after the administrative process is complete, Co-Counsel agrees to remain on the case throughout its pendency in the trial court on appeal. Again, after a final decision is issued from the trial court, Co-Counsel may withdraw without prejudice. The same rule applies to any further appeals or remands.

- At the conclusion of a proceeding at any level (e.g., OAL, DNJ, or Third Circuit), if the case continues but Co-Counsel withdraws, any fees accrued shall be deemed vested.

9. **Survival of Terms**. With the exception of (i) the MFN, which has been abandoned by consent of the Parties, and (ii) the quantum of fee sharing, no part of this Agreement alters any aspect of the previously executed of-counsel agreement between the Parties.

Agreed to and Signed by:

_____     _____            _____     12/2/2021
John Rue                    Date             Robert C. Thurston            Date
On behalf of                                 On behalf of
John Rue & Associates                        Thurston Law Offices LLC

4

**EXHIBIT A**
**JRA – TLO CO-COUNSEL OMNIBUS**

| Client / Case Name / Docket # | Category | Concurrent Pmts. | Prevailing Party Fees |
|---|---|---|---|
| REDACTED | A | 50 | 50 |
| | D | 50 | 25 |
| | D | 50 | 25 |
| | A | 50 | 50 |
| | A | 50 | 50 |
| | A | 50 | 50 |

| | | | |
|---|---|---|---|
| REDACTED<br>*M.N. o/b/o A.D. v. Sparta Twp. BOE and NJDOE*, USDC DNJ Civil No. 2:21-cv-19977-JMV-JSA (Judge Vasquez) | A | 50 | 50 |
| | | | |

Concurrent payments are either the percentage of client paid fees in (e.g. 60% of retainer fees) or hourly payment (e.g. $50/hour) depending on Category assignment

Prevailing party fees are strictly a % of the recovery of fees from settlement or an Order resulting from a fee petition

*Currently assigned Wright cases handled under separate agreement which is incorporated herein only for reference purposes to track all assigned cases from JRA to TLO, but shall remain separate for purposes of payment; only new Wright cases shall be subject to this Agreement

JRA and TLO shall add to this table newly assigned cases as they occur and after agreement as to category and points in the respective columns.

# JOHN RUE & ASSOCIATES, LLC

A PRIVATE PUBLIC INTEREST LAW FIRM
100 OVERLOOK CENTER, 2ND FLOOR, #9211
PRINCETON, NJ 08540
(862) 283-3155 (main)
(973) 860-0869 (facsimile)

John D. Rue[†]
—
Krista L. Rue
—
Francis X. Geier
Saran Q. Edwards

Johanna G. Burke[*]
Jonathan S. Corchnoy[*⊗§]
Matthew P. Crimmel[*§†∆]
Carolina T. Curbelo[*]
Jordan B. Dascal[*†]
Lynne D. Feldman[*]
Robert Thurston[*]
Rami M. Salim[†]
Wayne Pollock[*§]

July 6, 2022

## ADDENDUM TO OF-COUNSEL AGREEMENT

WHEREAS John Rue ("Rue") and John Rue & Associates, LLC ("JR&A" or the "Firm") and Robert C. Thurston, Esq. ("Thurston"), and Thurston Law Offices, LLC (the "TLO Firm" and, collectively with Rue, JR&A, and Thurston, the "Parties") executed an of-counsel agreement as of December 2, 2021; and

WHEREAS JR&A wishes, from time to time, to utilize the services of Thurston in the role of co-counsel, on cases in which prevailing party fees are anticipated; and

WHEREAS JR&A may periodically lack the finances to pay Thurston for services rendered in his role as co-counsel as contemplated in the December 2, 2021 co-counsel agreement; and

WHEREAS JR&A has paid Thurston for services rendered through April 2022; and

WHEREAS Thurston has submitted invoices for services rendered for May 2022 and June 2022 which JRA is currently unable to pay.

THEREFORE, the Parties hereby enter into this Addendum (the "Addendum") to modify the compensation terms of the co-counsel collaborations.

1. **Co-Counsel Compensation**.

- Thurston shall submit an invoice to JR&A by the 5th day of each month for services rendered the month proceeding.  Payment shall be due no later than the 25th of the month.

- If payment is timely made (at $50 per hour), then upon collection of prevailing party fees, JR&A and TLO will divide the fees obtained associated with Thurston's work, 50% to TLO (less moneys already paid) and the remainder to JR&A.

---

*Bene facere bonum ~ Doing well by doing good*

*    Of-Counsel to the Firm                    §    Licensed in Pennsylvania as well as New Jersey
⊗   Licensed in Florida as well as New Jersey    †    Licensed in New York as well as New Jersey
∆   Licensed in West Virginia as well as New Jersey    ◊    Licensed in Florida only

- <mark>If JR&A is unable timely to pay the amount owed, JR&A shall inform Thurston no later than the 25th day of that month.  In such circumstances, , if and when such fees are collected, Thurston will be ultimately entitled to 100% of all fees associated with his work for the legal services performed during the specific month in question.</mark>

- **Cases.** Currently, <mark>TLO has taken the lead on the following matters</mark>[1]:

  - REDACTED

  - 

  - REDAC -*M.N. o/b/o A.D. v. Sparta Twp. BOE and NJDOE*, USDC DNJ Civil No. 2:21-cv-19977-JMV-JSA (Judge Vasquez).

  - REDAC (EDU Appeal) *Board of Education of the Township of Sparta, v. M.N., obo A.D.,* A-000472-21[2].

2. **Survival of Terms**. With the exception of the compensation terms, which has been revised by consent of the Parties, no part of this Addendum alters any aspect of the previously executed of-counsel agreement between the Parties.

Agreed to and Signed by:

_____    _____          _____    8 July 2022
John Rue                   Date             Robert C. Thurston, Esq.      Date
On behalf of                                On behalf of
John Rue & Associates                       Thurston Law Offices, LLC

---

[1] Thurston is open to the possibility of collaborating on future matters.

[2] Thurston was also co-counsel in several REDACTED ), but has since withdrawn from all such cases. Those representations were governed by separate agreements.  Despite his withdrawal, Thurston remains entitled to his share of any prevailing party fees that may be collected as related to these matters, as provided by those contracts, as may have been modified in writing by the Parties. Thurston recognizes that the recovery in these cases is particularly uncertain, considering JR&A's current fee dispute with the clients.

# JOHN RUE & ASSOCIATES, LLC

### A PRIVATE PUBLIC INTEREST LAW FIRM
100 OVERLOOK CENTER, 2ND FLOOR, #9211
PRINCETON, NJ 08540
(862) 283-3155 (main)
(973) 860-0869 (facsimile)

John D. Rue[†]

—

Krista Haley Rue[§]
Saran Q. Edwards[§]

—

Francis X. Geier

Johanna G. Burke[*]
Jonathan S. Corchnoy[*⊗§]
Matthew P. Crimmel[*§†Δ]
Carolina T. Curbelo[*]
Jordan B. Dascal[*†]
Lynne D. Feldman[*]
Rami M. Salim[†]
Wayne Pollock[*§]

EXHIBIT C

June 18, 2023

Robert Thurston
Thurston Law Offices
*Via email and certified mail*

RE:    **Of-Counsel and Co-Counsel Agreements**

Dear Mr. Thurston:

On April 22, 2021, John Rue & Associates, LLC ("JRA") and Thurston Law Office ("TLO") entered into an amendment of our pre-existing Of Counsel Agreement, governing the relationship between our firms and your handling of certain cases for JRA clients. While that relationship was mutually beneficial for a time, JRA has concluded that this time has come to an end. Over the past several months, we have sensed a breakdown of our relationship and, earlier this week, you missed an important deadline, which may prejudice a client's rights.

REDACTED

I have consulted with M.N. and, in an abundance of caution to ensure her right to the counsel of her choice, I told her that JRA would have no objection if she chose to transition to your firm. She does not wish to do so. Accordingly, please terminate your appearance on all dockets related to this client at once. JRA will now file a motion for leave to file an untimely notice in the Supreme Court.

By this letter, JRA terminates its of-counsel agreement with Thurston Law Offices TLO. This includes but is not limited to TLO's appearance in *M.A. v. Wall Township Board of Education,* Civil Action No. 20-cv-05218 and *M.N., et al. v. Sparta Township Board of Education,* Civil Action No. 21:cv-19977; and *Bd. Of Edu., Twp. Of Sparta v. M.N.* (App. Div. dkt #A-0742-21). Notably, **your right to payment for work already performed in these cases survives this**

REDACTED

*Bene facere bonum ~ Doing well by doing good*

| | |
|---|---|
| * Of-Counsel to the Firm | § Licensed in Pennsylvania as well as New Jersey |
| ⊗ Licensed in Florida as well as New Jersey | † Licensed in New York as well as New Jersey |
| Δ Licensed in West Virginia as well as New Jersey | ◊ Licensed in Florida only |

**termination**.  Additionally, the Second Revised Costs and Fees Agreement related to *C.P. individually and on behalf of F.P., a minor child, et al. v. New Jersey Department of Education,* Case No. 1:19-cv-12807, **is unaffected by this termination**, as is any right to payment arising therefrom.  In sum, all right of TLO to fees for work performed prior to the date of this letter is unaffected by this termination.

Please do not further contact JRA's clients in *M.A. v. Wall*, *M.N. v. Sparta,* or any other JRA case on which you have worked without an independent engagement agreement between TLO and the client.  Please also immediately terminate your appearances on the dockets in all such actions.

Your immediate compliance with all aspects of this demand will be appreciated.

Sincerely,

*John Rue*

John Rue
Principal
cc:     Krista Rue
        Saran Edwards

2

SYLLABUS    EXHIBIT D

This syllabus is not part of the Court's opinion.  It has been prepared by the Office of the Clerk for the convenience of the reader.  It has been neither reviewed nor approved by the Court and may not summarize all portions of the opinion.

**Board of Education of the Township of Sparta v. M.N.** **(A-16-23) (088378)**

**Argued March 12, 2024 -- Decided August 7, 2024**

**WAINER APTER, J., writing for a unanimous Court.**

In this appeal, the Court considers whether, under the Individuals with Disabilities Education Act (IDEA), a student with disabilities who received a State-issued diploma based on passing the General Education Development test (GED) is entitled to re-enroll in his local public high school to receive a free appropriate public education (FAPE).

When he was fifteen years old, A.D. began attending Sparta High School.  He had been designated as having a disability under the IDEA, and Sparta accepted his individualized education program from his previous school.  In January 2019, Sparta informed A.D. that he was in danger of failing several classes.  After a period of home instruction in March 2019, A.D.'s parents withdrew him from Sparta High School.  A.D. then took the GED and passed, and he received a State-issued high school diploma in April 2019.  That same month, A.D. re-enrolled at Sparta High School and again began receiving home instruction.

After periods of home instruction, in-person attendance, and further withdrawals from the high school, A.D.'s mother, M.N., tried to re-enroll A.D. in May 2021.  A.D. was eighteen years old at the time.  Sparta denied the request, citing A.D.'s receipt of a State-issued high school diploma in April 2019.

M.N. requested a due process hearing with the New Jersey Department of Education (DOE).  The Commissioner of the DOE (Commissioner) transferred the matter to the Office of Administrative Law (OAL).  The Administrative Law Judge (ALJ) determined that the State-issued diploma A.D. received was a "regular high school diploma" that was "fully aligned with State standards" under 34 C.F.R. § 300.102(a)(3)(iv).  The ALJ concluded A.D. was no longer entitled to a FAPE.

M.N. appealed the ALJ's decision to the Commissioner.  The Commissioner concurred with the ALJ that "A.D.'s diploma is a 'regular high school diploma' that is fully aligned with State standards" and that "A.D. is no longer entitled to a free education in Sparta or any other New Jersey school district."

1

The Appellate Division affirmed.  The Court granted M.N.'s petition for certification, limited to the question of whether the Appellate Division erred in holding that a State-issued high school diploma based on passing the GED is a "regular high school diploma" under the IDEA and its implementing regulations. See 256 N.J. 65 (2023).

**HELD:**  A New Jersey State-issued diploma awarded based on passing the GED is not a "regular high school diploma" under 34 C.F.R. § 300.102(a)(3)(iv).  Therefore, a student who receives such a State-issued diploma remains entitled to receive a free appropriate public education under the IDEA.

1.  In the IDEA, Congress codified several purposes, including "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A).  The IDEA provides federal funds to States in exchange for a commitment:  to furnish a free appropriate public education to all children with certain physical or intellectual disabilities.  Once a state accepts IDEA funds, eligible students with disabilities in that state acquire an enforceable substantive right to receive a FAPE.  (pp. 14-16)

2.  The obligation to provide a FAPE applies "to all children with disabilities residing in the State between the ages of 3 and 21, inclusive."  20 U.S.C. § 1412(a)(1)(A).  Under the IDEA's implementing regulations, however, "[t]he obligation to make FAPE available to all children with disabilities does not apply with respect to . . . [c]hildren with disabilities who have graduated from high school with a regular high school diploma."  34 C.F.R. § 300.102(a)(3)(i).  Students with disabilities "who have graduated from high school but have not been awarded a regular high school diploma" remain eligible to receive a FAPE.  Id. at (ii).  The term "regular high school diploma" "means the standard high school diploma awarded to the preponderance of students in the State that is fully aligned with State standards, or a higher diploma"; it "does not include a recognized equivalent of a diploma, such as a general equivalency diploma."  Id. at (iv).  (p. 17)

3.  New Jersey statutes and regulations recognize two types of high school diplomas: State-endorsed diplomas and State-issued diplomas.  The DOE defines a "State-endorsed diploma" as "a locally-issued document awarded to an exiting student indicating successful completion of high school graduation requirements."  N.J.A.C. 6A:8-1.3.  State-issued diplomas, on the other hand, are issued not by local school districts, but by the Commissioner, and they do not require students to meet the same graduation requirements.  Pursuant to N.J.S.A. 18A:50A-1, State-issued diplomas are awarded by the DOE upon "[d]emonstration of the appropriate level of academic competency," including by "passage of the Tests of General Educational

2

Development (GED) of the American Council on Education."  DOE regulations define a "State-issued high school diploma" as "a high school diploma provided by the [DOE] to persons 16 years of age or older and no longer enrolled in school to document the attainment of academic skills and knowledge equivalent to a high school education."  N.J.A.C. 6A:20-1.2.  (pp. 18-20)

4.  The Court holds that a State-issued diploma is not a "regular high school diploma" for purposes of the IDEA implementing regulations.  Therefore, receipt of a State-issued diploma does not terminate this State's obligation to provide a free appropriate public education to a student eligible to receive one.  Based on a concession by the Commissioner as well as statistics, it is a State-endorsed, rather than a State-issued, diploma that is "the standard high school diploma awarded to the preponderance of students in the State that is fully aligned with State standards." See 34 C.F.R. § 300.102(a)(3)(iv).  The Court rejects the argument that both a State-endorsed and a State-issued diploma are "the standard high school diploma awarded to the preponderance of students in the State" because both the Legislature and the DOE distinguish between State-issued and State-endorsed diplomas and because the phrase "the standard high school diploma" is singular.  Even if that interpretation were not correct, the last sentence of the federal regulation specifies that "[a] regular high school diploma does not include a recognized equivalent of a diploma, such as a general equivalency diploma, certificate of completion, certificate of attendance, or similar lesser credential."  Ibid. (emphasis added).  The Court explains why it rejects the Commissioner's argument that this sentence does not apply to a diploma awarded upon passing the GED and notes that, in other contexts, the Commissioner has expressly conceded that a State-issued diploma awarded upon passing the GED is a "general equivalency diploma" and not a "regular high school diploma" under 34 C.F.R. § 300.102(a)(3)(iv).  (pp. 21-27)

5.  The Court explains why the Commissioner's decision in B.A. & J.H. ex rel. Minor Child M.A.A. v. Board of Education of Somerville does not help Sparta or the DOE here and notes that, in interpreting and applying the words of federal and state statutes and regulations in this case, it does not "wade into those areas of educational standards or policy which belong in the hands of educators," as Sparta argues.  Instead, it simply enforces the educational standards and policies that have been enacted by Congress and the New Jersey Legislature and promulgated by the United States Department of Education and the Commissioner.  (pp. 27-30)

      **REVERSED.**

**CHIEF JUSTICE RABNER and JUSTICES PATTERSON, SOLOMON, PIERRE-LOUIS, FASCIALE, and NORIEGA join in JUSTICE WAINER APTER's opinion.**

3

SUPREME COURT OF NEW JERSEY
A-16 September Term 2023
088378

Board of Education of
the Township of Sparta,
Sussex County,

Petitioner-Respondent,

v.

M.N., on behalf of A.D.,

Respondent-Appellant.

On certification to the Superior Court,
Appellate Division.

| Argued | Decided |
|---|---|
| March 12, 2024 | August 7, 2024 |

Krista Haley Rue argued the cause for appellant (John
Rue & Associates, attorneys; John Rue, on the briefs).

Katherine A. Gilfillan argued the cause for respondent
Board of Education of the Township of Sparta (Schenck,
Price, Smith & King, attorneys; Katherine A. Gilfillan
and Catherine Popso O'Hern, on the brief).

Matthew Lynch, Deputy Attorney General, argued the
cause for respondent Commissioner of the Department of
Education (Matthew J. Platkin, Attorney General,
attorney; Donna Arons, Assistant Attorney General, of
counsel, and Sadia Ahsanuddin, Deputy Attorney
General, on the brief).

1

Christian R. Martinez argued the cause for amicus curiae Disability Rights New Jersey (Pashman Stein Walder Hayden, attorneys; Christian R. Martinez and CJ Griffin, on the brief).

JUSTICE WAINER APTER delivered the opinion of the Court.

In this case, we are asked to decide whether, under the Individuals with Disabilities Education Act (IDEA), a student with disabilities who received a State-issued diploma based on passing the General Education Development test (GED) is entitled to re-enroll in his local public high school to receive a free appropriate public education (FAPE).

The federal regulations implementing the IDEA state that a school district's obligation to provide a free appropriate public education does not apply to "[c]hildren with disabilities who have graduated from high school with a regular high school diploma." 34 C.F.R. § 300.102(a)(3)(i). Students with disabilities "who have graduated from high school but have not been awarded a regular high school diploma," however, remain eligible to receive a free appropriate public education. Id. at (ii). The regulations define "regular high school diploma" as "the standard high school diploma awarded to the preponderance of students in the State that is fully aligned with State standards, or a higher diploma." Id. at (iv). They then further specify that "[a]

2

regular high school diploma does not include a recognized equivalent of a diploma, such as a general equivalency diploma." Ibid.

We hold that a New Jersey State-issued diploma awarded based on passing the GED is not a "regular high school diploma" under 34 C.F.R. § 300.102(a)(3)(iv). Therefore, a student who receives such a State-issued diploma remains entitled to receive a free appropriate public education under the IDEA. We therefore reverse the judgment of the Appellate Division.

I.

A.

In September 2018, when he was fifteen years old, A.D. transferred to and enrolled in the Sparta Township Public Schools, run by the Sparta Township Board of Education (together, Sparta), for his sophomore year.[1] At his previous school, A.D. was designated as having a disability under the IDEA and received special education services. When A.D. began attending Sparta High School, Sparta accepted his individualized education program (IEP), dated April 18, 2018, from his previous school.

In January 2019, Sparta informed A.D. that he was in danger of failing several classes. On or around March 11, 2019, Sparta implemented temporary home instruction for A.D. through a combination of online classes and in-

---

[1] We use initials to protect A.D.'s identity.

3

person tutoring.  Two weeks later, A.D.'s parents withdrew him from Sparta High School.

A.D. then took the GED and passed, achieving the "Statewide standard score" established pursuant to N.J.A.C. 6A:8-5.2(c).  On April 29, 2019, A.D. thus received a State-issued high school diploma.  That same month, A.D. re-enrolled at Sparta High School and again began receiving home instruction.

On May 22, 2019, the vice principal of the high school, Michael Lauricella, informed A.D.'s parents that A.D. "ha[d] met New Jersey graduation requirements as the GED diploma serves as an equivalent to one received in a New Jersey high school."  Lauricella further advised that "[d]istrict services, including protections under the [IDEA] and home instruction services, cease upon receipt of a diploma" and that A.D.'s home instruction services would therefore be "discontinued effective immediately."

A.D.'s parents objected, and A.D. was permitted to continue receiving services, including home instruction, for the remainder of the 2018-2019 school year.  A.D. attended Sparta High School, in person, at the start of the 2019-2020 school year as a high school junior.  By February 2020, A.D. was again failing to complete his schoolwork, and the school district notified him that he was in danger of losing credit in four classes.

4

In March 2020, Sparta stopped in-person instruction due to the COVID-19 pandemic.  A.D. was issued a computer for remote learning.  However, he did not attend remote classes or complete required assignments, and he earned no academic credit for the 2019-2020 school year.  On June 8, 2020, M.N., A.D.'s mother, again withdrew A.D. from the high school, checking off "entering the workforce" as the reason for his withdrawal.

In September 2020, M.N. began the process of re-enrolling A.D. at Sparta High School.  However, A.D. did not attend school that fall, and instead enlisted in the United States Army.  A.D. was medically discharged from the army on December 16, 2020.

In May 2021, after in-person learning resumed at Sparta High School, M.N. again tried to re-enroll A.D.; he was eighteen years old at the time. Sparta denied the request, citing A.D.'s receipt of a State-issued high school diploma in April 2019.

## B.

M.N., pro se, filed a parental request for a due process hearing with the New Jersey Department of Education (DOE) Office of Special Education Policy and Dispute Resolution, arguing that A.D. had only obtained a diploma based on passing the GED and requesting that her son be allowed to re-enroll in high school "in order for him to obtain [a] regular high school diploma."

5

The Commissioner of the DOE (Commissioner) transferred the matter to the Office of Administrative Law (OAL).

Sparta then filed a Petition for Declaratory Ruling with the DOE Office of Controversies and Disputes, seeking a declaration that it was not obligated to re-enroll A.D. and that A.D.'s receipt of a State-issued diploma "foreclose[d] A.D.'s right to receive special education and related services from the District under both the IDEA and N.J.S.A. 18A:46-1.1 et seq. and the concomitant regulations." The Commissioner denied this request and transferred the matter to OAL.

The Administrative Law Judge (ALJ) granted Sparta's motion for summary decision, determining that the State-issued diploma A.D. received was "not merely . . . a GED" but was a "regular high school diploma" that was "fully aligned with State standards" under 34 C.F.R. § 300.102(a)(3)(iv). Therefore, the ALJ concluded, A.D. was no longer entitled to a FAPE. In reaching this conclusion, the ALJ relied on the Commissioner's decision in B.A. & J.H. ex rel. Minor Child M.A.A. v. Board of Education of Somerville, Commissioner Decision No. 201-09 (June 22, 2009). The ALJ then held a hearing on M.N.'s due process petition and dismissed the petition with prejudice.

6

M.N. appealed the ALJ's decision on Sparta's petition to the Commissioner.  The Commissioner concurred with the ALJ that "A.D.'s diploma is a 'regular high school diploma' that is fully aligned with State standards and, therefore A.D. is no longer entitled to a free education in Sparta or any other New Jersey school district."  According to the Commissioner, "'through its acceptance of alternative measures' to obtain a diploma, 'particularly the GED program,' 'the State has . . . recognized that means other than course/credit/assessment completion . . . [can] satisfy the statutory and constitutional mandate and warrant issuance of a State-endorsed diploma so as to end a student's entitlement to'" a FAPE.  (quoting B.A. & J.H. and citing N.J.A.C. 6A:8-5.1(a)).

The Commissioner further found that under N.J.A.C. 6A:8-5.2, there is "no distinction" between a State-endorsed diploma and "a State-issued diploma, such that both diplomas demonstrate that the student has completed an education that is fully aligned with State standards."  The State Board of Education, the Commissioner concluded, "has recognized that students may complete their education in non-traditional ways," and a "State-issued diploma simply reflects such an alternate pathway" -- it is "in no way a lesser

7

credential."  The Commissioner therefore adopted the ALJ's decision on

Sparta's petition as final.[2]

C.

M.N. appealed the Commissioner's decision to the Appellate Division,

arguing that the "ALJ and NJDOE erred by ignoring the federal regulation

---

[2]  The ALJ's decision on M.N.'s request for a due process hearing could only be appealed to the Superior Court of New Jersey or a federal district court. See 20 U.S.C. § 1415(i)(2)(A); 34 C.F.R. § 300.514; N.J.A.C. 1:6A-18.3. M.N. therefore filed suit in federal court requesting, among other things, relief declaring that a State-issued diploma based on passing the GED is not a "regular high school diploma" under the IDEA, injunctive relief allowing A.D. to re-enroll at Sparta, and attorney's fees and costs.  M.N. also moved for a preliminary injunction.  In an unpublished opinion, the United States District Court for the District of New Jersey denied the motion, finding M.N. could not demonstrate irreparable harm because of the "availability of compensatory education," which places children with disabilities "in the same position they would have occupied but for the school district's violations of IDEA." (quoting Ferren C. v. Sch. Dist. of Phila., 612 F.3d 712, 718 (3d Cir. 2010)). However, the court stated that it "[did] not find the ALJ or Commissioner's decisions persuasive because each failed to analyze the full text of 34 C.F.R. § 300.102(a)(3)(iv)."  According to the district court, although A.D.'s State-issued diploma met New Jersey's standards, the ALJ and the Commissioner "overlooked the last sentence of" 34 C.F.R. § 300.102(a)(3)(iv), "which indicates that a regular high school diploma does not include a general equivalency diploma or similar lesser credential."  M.N. and A.D., the district court explained, had a likelihood of success on the merits because "a high school diploma based solely on passing a GED exam does not constitute a regular high school diploma under 34 C.F.R. § 300.102(a)(3)(iv)," and "A.D. [was] still entitled to a FAPE notwithstanding his [S]tate-issued diploma."

8

regarding regular high school diplomas for students eligible under [the] IDEA"
and that their decisions were thus "at odds" with the IDEA.[3]

The Appellate Division affirmed, concluding that there was "no basis to
undo DOE's policy determination."  According to the Appellate Division, "[a]t
the direction of the Legislature, the DOE promulgated regulations . . . to
establish graduation standards for public high school students."  In doing so,
"[t]he DOE . . . concluded as a matter of education policy that students who
are not enrolled in school and achieve a passing score on the GED shall be
awarded a high school diploma.  That specific policy determination by the
DOE represents the alignment with state standards required by 34 C.F.R.
§ 300.102(a)(3)(iv)."  The Appellate Division therefore reasoned that Sparta
was no longer required to provide A.D. with a FAPE.

D.

We granted M.N.'s petition for certification, limited to the question of
whether the Appellate Division erred in holding that a State-issued high school
diploma based on passing the GED is a "regular high school diploma" under

---

[3]  Sparta is thus incorrect in asserting that the Appellate Division was not
"asked to interpret a federal statute or regulation."  In her opening brief to the
Appellate Division, M.N. quoted the text of 34 C.F.R. § 300.102(a)(3) in full
and argued that the "ALJ and Commissioner's decisions [were] plainly at
odds" with the text of the regulation.

9

the IDEA and its implementing regulations.  See 256 N.J. 65 (2023).  We granted leave to Disability Rights New Jersey (DRNJ) to appear as amicus curiae.

II.

M.N., on behalf of A.D., argues that "[t]he decision to deny A.D. reenrollment into Sparta High School, based solely on his obtaining a GED, directly conflicts with federal law and thus[] cannot stand."  In her briefing, M.N. states that "an irrevocable conflict exists between" N.J.A.C. 6A:8-5.2(c) and 34 C.F.R. § 300.102(a)(3)(iv), such that N.J.A.C. 6A:8-5.2(c) is preempted by the Supremacy Clause of the United States Constitution.  At oral argument, however, M.N. clarified that this Court need not reach preemption if it finds that the State-issued diploma A.D. received is not a "regular high school diploma" under 34 C.F.R. § 300.102(a)(3)(iv).  According to M.N., the diploma A.D. received "was nothing more than a general equivalency diploma under a different name."  In addition, M.N. asserts, it is "irrefutable" that a State-issued diploma is not received by "the preponderance of New Jersey high school students."  It is thus not a "regular high school diploma" under 34 C.F.R. § 300.102(a)(3)(iv), M.N. maintains, and A.D. remains entitled to a FAPE.  M.N. cautions that affirming the Appellate Division's decision would mean that "New Jersey students -- like A.D. -- who have disabilities but who

10

have passed the GED, will be prevented from" obtaining a FAPE "by school districts eager to limit their enrollment and expenses, in flagrant violation of the IDEA."

Focusing on the plain language of 34 C.F.R. § 300.102(a)(3)(iv), DRNJ contends that "State-issued diplomas are not regular high school diplomas."  In DRNJ's view, that does not mean there is a conflict between N.J.A.C. 6A:8-5.2(c) and 34 C.F.R. § 300.102(a)(3).  Instead, DRNJ explains, "both provisions can be applied harmoniously" by "recogniz[ing] and effectuat[ing]" the "critical distinction between receipt of a State-endorsed diploma and a State-issued diploma" under New Jersey statutes and regulations.  According to DRNJ, that distinction was a deliberate legislative choice -- "[i]f the Legislature intended for a passing score on the GED exam to result in the issuance of a State-endorsed diploma, it could have expressly provided for that."  DRNJ likewise agrees with M.N. that if this Court were to find that a State-issued diploma is a "regular high school diploma" under the IDEA, it would permit "district boards of education[] to push children with disabilities to take the GED exam instead of completing high school."

Sparta maintains that "the explicit language of the IDEA clearly demonstrates Congress' intention to allow the states to continue to . . . control the substantive content of the education imparted to their citizens including

11

those standards which constitute graduation credentials which fully align with the State's academic standards." Sparta emphasizes that New Jersey is entitled to set its own substantive academic standards for applicants to obtain high school diplomas, and the IDEA does not interfere with that right. Turning to the plain language of 34 C.F.R. § 300.102(a)(3), Sparta asserts that the definition of a regular high school diploma "contemplates an alternative high school diploma that is fully aligned with the State's academic standards." According to Sparta, a State-issued high school diploma is just that: "aligned with the academic standards expected of all students." Therefore, in Sparta's view, "[t]his is not a case of federal preemption," and "the language of the State's statute and the federal regulation are not at odds."

Like Sparta, the Commissioner emphasizes that federal law "broadly defers to state law to develop . . . challenging state academic standards." Although the Commissioner concedes that State-issued diplomas and State-endorsed diplomas are "separate and distinct" under New Jersey law, he agrees with Sparta that the "awarded to the preponderance of students" language in 34 C.F.R. § 300.102(a)(3)(iv) includes State-issued high school diplomas because such diplomas are also "fully aligned with state standards." "[I]nterpreting the federal regulation . . . to categorically exclude State-issued diplomas" from the definition of "regular high school diplomas," the Commissioner asserts, would

12

frustrate the State's "important policy goal of assigning the same value to State-issued high school diplomas as State-endorsed ones so that students who need to obtain diplomas via that alternative path have the same employment, educational, and life opportunities as those who are capable of attaining diplomas from a specific school district."

III.

A.

Our review of administrative decisions is limited. We review only "(1) whether . . . the agency follow[ed] the law; (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been" reached. Allstars Auto Grp., Inc. v. N.J. Motor Vehicle Comm'n, 234 N.J. 150, 157 (2018) (quoting In re Stallworth, 208 N.J. 182, 194 (2011)).

This case concerns "whether . . . the agency follow[ed] the law." Ibid. In answering that question, we review a state agency's interpretation of a federal statute or regulation de novo, owing no deference to "a state agency's

13

interpretation of federal law."  G.C. v. Div. of Med. Assistance & Health

Servs., 249 N.J. 20, 45 (2021).[4]

B.

Congress enacted the Education for All Handicapped Children Act of

1975 (EAHCA), to "assure that all handicapped children have available to

them . . .  a free appropriate public education which emphasizes special

education and related services designed to meet their unique needs."  Pub. L.

No. 94-142, § 3(c), 89 Stat. 773, 775.  Nearly thirty years later, Congress

found that "the educational needs of millions of children with disabilities were

[still] not being fully met," partly because of "low expectations."  20 U.S.C.

§ 1400(c)(2), (4).  It therefore made several changes to the law, and renamed it

the Individuals with Disabilities Education Act (IDEA).

---

[4]  The Appellate Division therefore erred when it stated that "[i]t is well settled
that we defer to the DOE's expertise in interpreting federal . . . statutes and
regulations within its implementing and enforcing responsibility."  We note
that since the Appellate Division issued its decision, the United States
Supreme Court held, in Loper Bright Enterprises v. Raimondo, that federal
courts "may not defer" to a federal agency's interpretation of a federal statute
even if the statute is ambiguous.  603 U.S. ___, 144 S. Ct. 2244, 2273 (2024).
Although Loper Bright is not binding on this Court and we do not rely on it
here, the Appellate Division did not explain why it was correct to defer to a
state agency's interpretation of a non-ambiguous federal regulation that the
state agency did not promulgate.  No such deference is appropriate under our
caselaw.

14

In the IDEA, Congress found that "[i]mproving educational results for children with disabilities is an essential element of our national policy of ensuring equality of opportunity, full participation, independent living, and economic self-sufficiency for individuals with disabilities." Id. at (c)(1). "[T]he education of children with disabilities can be made more effective," Congress declared, by "having high expectations . . . and ensuring their access to the general education curriculum in the regular classroom, to the maximum extent possible." Id. at (c)(5)(A). Congress additionally explained that although states and local school districts "are primarily responsible for providing an education for all children with disabilities," the federal government should "have a supporting role in assisting State and local efforts to educate children with disabilities in order to improve results for such children and to ensure equal protection of the law." Id. at (c)(6). Congress therefore codified several purposes, including "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." Id. at (d)(1)(A).

Congress enacted the IDEA pursuant to its power under the Spending Clause of the United States Constitution. Arlington Cent. Sch. Dist. Bd. of

15

Educ. v. Murphy, 548 U.S. 291, 295 (2006).  "[L]egislation enacted pursuant to the spending power is much in the nature of a contract" -- recipients of federal funds agree "to be bound by federally imposed conditions."  Id. at 296 (alteration in original) (internal quotation marks omitted) (quoting Pennhurst State Sch. & Hosp. v. Halderman, 451 U.S. 1, 17 (1981)).  The IDEA thus provides "federal funds to States in exchange for a commitment:  to furnish a 'free appropriate public education' . . . to all children with certain physical or intellectual disabilities."  Fry v. Napoleon Cmty. Schs., 580 U.S. 154, 158 (2017) (quoting 20 U.S.C. § 1412(a)(1)(A)).  Once a state accepts IDEA funds, eligible students with disabilities in that state acquire an "enforceable substantive right" to receive a FAPE.  Smith v. Robinson, 468 U.S. 992, 1010 (1984); accord Fry, 580 U.S. at 158.

In providing a FAPE, a state must, "[t]o the maximum extent appropriate," ensure that students with disabilities are educated in the "least restrictive environment" -- i.e., "with children who are not disabled."  20 U.S.C. § 1412(a)(5)(A).  The IDEA also requires that "special classes, separate schooling, or other removal of children with disabilities from the regular educational environment occurs only when" required by "the nature or severity of the disability of a child."  Ibid.

16

C.

The obligation to provide a FAPE applies generally "to all children with disabilities residing in the State between the ages of 3 and 21, inclusive." Id. at (1)(A). Under the IDEA's implementing regulations, however, "[t]he obligation to make FAPE available to all children with disabilities does not apply with respect to . . . [c]hildren with disabilities who have graduated from high school with a regular high school diploma." 34 C.F.R. § 300.102(a)(3)(i). Students with disabilities "who have graduated from high school but have not been awarded a regular high school diploma" remain eligible to receive a FAPE. Id. at (ii).

The term "regular high school diploma"

> means the standard high school diploma awarded to the preponderance of students in the State that is fully aligned with State standards, or a higher diploma, except that a regular high school diploma shall not be aligned to the alternate academic achievement standards described in section 1111(b)(1)(E) of the [Elementary and Secondary Education Act,] ESEA. A regular high school diploma does not include a recognized equivalent of a diploma, such as a general equivalency diploma, certificate of completion, certificate of attendance, or similar lesser credential.
>
> [Id. at (iv).][5]

---

[5] "[S]ection 1111(b)(1)(E) of the ESEA" refers to a provision codified as 20 U.S.C. § 6311(b)(1)(E), enacted by the Every Student Succeeds Act (ESSA). The ESSA reauthorized and amended the ESEA in 2015 and continues to

17

D.

New Jersey statutes and regulations recognize two types of high school diplomas:  State-<u>endorsed</u> diplomas and State-<u>issued</u> diplomas.

A "State-endorsed high school diploma" is awarded by "[d]istrict boards of education."  N.J.A.C. 6A:8-5.2(a).  "All students who meet State and local graduation requirements shall receive a State endorsed diploma . . . ."  N.J.S.A. 18A:7C-4.  "[S]tudents not meeting these standards" may not receive a State-endorsed diploma.  <u>Ibid.</u>  The DOE thus defines a "State-endorsed diploma" as "a locally-issued document awarded to an exiting student indicating successful completion of high school graduation requirements."  N.J.A.C. 6A:8-1.3.

The DOE prescribes that "local graduation requirements," which must be met for a student to receive a State-endorsed diploma, must "prepare students for success in post-secondary degree programs, careers, and civic life in the 21st century."  N.J.A.C. 6A:8-5.1(a).  They must include, among other things:  (1) "not fewer than 120 credits in courses designed to meet all of the [New Jersey Student Learning Standards]"; (2) "[l]ocal student attendance requirements"; (3) "[a]ny other requirements established by the district board of education"; and (4) demonstration of "proficiency by achieving a passing

---

govern general education policy for students from preschool through twelfth grade.  Every Student Succeeds Act, Pub. L. No. 114-95, 129 Stat. 1802 (2015).

18

score on the [English language arts] and mathematics components of the State

graduation proficiency test" or an approved alternative proficiency assessment.

Ibid.  In the alternative, "[t]hrough the IEP process . . . district boards of

education may specify alternate requirements for a State-endorsed diploma for

individual students with disabilities."  Id. at (c).

State-issued diplomas, on the other hand, are issued not by local school

districts, but by the Commissioner, and they do not require students to meet

these same graduation requirements.

Pursuant to N.J.S.A. 18A:50A-1,

> [a] State-issued high school diploma shall be provided
> by the New Jersey Department of Education to persons
> 16 years of age or older and no longer enrolled in school
> to document the attainment of academic skills and
> knowledge equivalent to a high school education.
> Demonstration of the appropriate level of academic
> competency for receipt of the State-issued high school
> diploma shall include, but need not be limited to,
> passage of the Tests of General Educational
> Development (GED) of the American Council on
> Education.[6]

---

[6]  The "GED Testing Service" is a joint venture between the American Council
on Education and a private company called Pearson, "modeled to represent a
public-private partnership."  It has offered the GED "as a high school
equivalency assessment" since 1942.  See GED Testing Service®, Am.
Council on Educ., https://www.acenet.edu/National-Guide/Pages/
Organization.aspx?oid=20099b28-9016-e811-810f-5065f38bf0e1 (last visited
July 9, 2024).

19

DOE regulations then set forth two separate paths to a State-issued diploma. "[T]he Commissioner shall award a State-issued high school diploma" "to individuals age 16 or older who are no longer enrolled in school": (1) "based on achieving the Statewide standard score[7] on the General Education Development test (GED) or other adult education assessments"; or (2) "based on official transcripts showing at least 30 general education credits leading to a degree at an accredited institution of higher education." N.J.A.C. 6A:8-5.2(c), (d). In both circumstances, a "State-issued high school diploma" is defined as "a high school diploma provided by the [DOE] to persons 16 years of age or older and no longer enrolled in school to document the attainment of academic skills and knowledge equivalent to a high school education." N.J.A.C. 6A:20-1.2.

IV.

With this background in mind, we hold that a State-issued diploma is not a "regular high school diploma" for purposes of the IDEA implementing regulations. Therefore, receipt of a State-issued diploma does not terminate

---

[7] When A.D. received his State-issued diploma, the "Statewide standard score" for passage of the GED was "the minimum passing standard set by the respective test vendor [the American Council on Education] and accepted by resolution of the State Board of Education." N.J.A.C. 6A:20-1.4(a)(1)(i) (2013).

20

this State's obligation to provide a free appropriate public education to a student eligible to receive one.

A.

The IDEA regulations are clear -- a regular high school diploma is "the standard high school diploma awarded to the preponderance of students in the State that is fully aligned with State standards, or a higher diploma."  34 C.F.R. § 300.102(a)(3)(iv).

At oral argument, Sparta maintained that there is no evidence in the record as to whether a State-issued or a State-endorsed high school diploma is "awarded to the preponderance of students in the State."  But the Commissioner conceded that "without a doubt . . . more than a preponderance, probably the vast majority of students obtain high school diplomas in this State that are State-endorsed high school diplomas from local [school] districts."

The data support that concession.  In 2022, out of all New Jersey students who entered high school four years earlier, 91.1% graduated and earned a State-endorsed high school diploma by completing local graduation requirements; 3.8% were still enrolled in high school; and 5.1% had dropped out or were no longer enrolled in school.  See Dep't of Educ., NJ School Performance Report:  Graduation/Postsecondary (Graduation/Postsecondary Report), https://rc.doe.state.nj.us/2021-2022/state/detail/

21

postsecondary?lang=EN (last visited July 9, 2024).  In contrast, in that same year, a total of 1,050 students in New Jersey earned a State-issued diploma by passing the GED.  See Dep't of Educ., New Jersey Adult Education:  Reports, https://www.nj.gov/education/adulted/resources/reports/ (last visited July 9, 2024).  Thus, under 34 C.F.R. § 300.102(a)(3)(iv), it is a State-endorsed, rather than a State-issued, diploma that is "the standard high school diploma awarded to the preponderance of students in the State that is fully aligned with State standards."

Both Sparta and the Commissioner argue that the phrase "that is fully aligned with State standards," is a "restrictive clause that must be read into the preceding part of the phrase."  Therefore, according to the Commissioner and Sparta, both a State-endorsed and a State-issued diploma are "the standard high school diploma awarded to the preponderance of students in the State."

That argument ignores the deliberate choice of our Legislature and the DOE, both in statute and regulation, to distinguish between State-issued and State-endorsed diplomas.  And it overlooks that the phrase "the standard high school diploma" is singular.  See, e.g., Niz-Chavez v. Garland, 593 U.S. 155, 166 (2021) ("[T]he law seems to speak of the charging document as a discrete thing, using a definite article with a singular noun ('the notice').");  Sun Co., Inc. v. Zoning Bd. of Adjustment of Avalon, 286 N.J. Super. 440, 447 (App.

22

Div. 1996) ("[W]e are satisfied that the use in Avalon's ordinance of the singular article 'the' modifying the term 'principal use' reflects an intent that there be but one principal use on the property."). Grammatically, both types of diplomas, which the Commissioner and Sparta agree are distinct for purposes of state law, cannot be "the standard high school diploma awarded to the preponderance of students in the State that is fully aligned with State standards." Only a State-endorsed diploma meets that requirement.

Even if that interpretation were not correct, the last sentence of the federal regulation specifies that "[a] regular high school diploma does not include a recognized equivalent of a diploma, such as a general equivalency diploma, certificate of completion, certificate of attendance, or similar lesser credential." 34 C.F.R. § 300.102(a)(3)(iv) (emphasis added). When a State-issued diploma is awarded "based on achieving the Statewide standard score on the General Education Development test (GED)," N.J.A.C. 6A:8-5.2(c), it is precisely the type of "general equivalency diploma" that does not qualify as a "regular high school diploma" under 34 C.F.R. § 300.102(a)(3)(iv).

For the first time at oral argument, the Commissioner asserted that the words "general equivalency diploma" in the federal regulation cannot refer to a diploma received after passing the GED because of an amendment to the regulation in 2017. Prior to 2017, 34 C.F.R. § 300.102(a)(3)(iv) stated that a

23

regular high school diploma "does not include an alternative degree that is not fully aligned with the State's academic standards, <u>such as a certificate or a general educational development credential (GED)</u>."  34 C.F.R. § 300.102(a)(3)(iv) (2006) (emphasis added).  In 2017, the United States Department of Education amended the regulation to read as it currently does, seeking to "incorporate the definition of 'regular high school diploma' currently included in section 8101(43) of the ESEA . . . to ensure that 'regular high school diploma' has the same meaning under the IDEA and the ESEA, and the definition is consistently applied under both programs."  Assistance to States for the Education of Children with Disabilities, 82 Fed. Reg. 29755, 29756 (June 30, 2017).[8]

---

[8]  As earlier noted, the ESEA was reauthorized as the ESSA in 2015.  Today, the ESSA provides that a "regular high school diploma"

> (A) means the standard high school diploma awarded to the preponderance of students in the State that is fully aligned with State standards, or a higher diploma, except that a regular high school diploma shall not be aligned to the alternate academic achievement standards described in section 6311(b)(1)(E) of this title; and

> (B) does not include a recognized equivalent of a diploma, such as a general equivalency diploma, certificate of completion, certificate of attendance, or similar lesser credential.

[20 U.S.C. § 7801(43).]

In the Commissioner's view, because the regulation was changed from "a regular high school diploma does not include an alternative degree that is not fully aligned with the State's academic standards, such as a certificate or a general educational development credential (GED)" to "[a] regular high school diploma does not include a recognized equivalent of a diploma, such as a general equivalency diploma," a general equivalency diploma cannot be a diploma awarded based upon passing the GED.

Generally, we will not consider arguments, like this one, that are raised for the first time at oral argument, and were never mentioned to the ALJ, the Commissioner, the Appellate Division, or even in briefing to this Court. See, e.g., State v. Legette, 227 N.J. 460, 467 n.1 (2017) (declining to consider an argument raised "for the first time on appeal"); J.K. v. N.J. State Parole Bd., 247 N.J. 120, 138 n.6 (2021) (declining to consider arguments that were raised before neither the New Jersey State Parole Board nor the Appellate Division).

Even if we were to reach the DOE's belated assertion, we would find it meritless. There is no evidence in the administrative record to suggest that in seeking to align definitions between the IDEA and the ESSA, the United States Department of Education sought to substantively change a student's rights under the IDEA, such that where a student who obtained a State-issued diploma based on passing the GED previously remained entitled to enroll in

25

high school to obtain a regular high school diploma, the amendment extinguished that right.

Indeed, the Commissioner has expressly conceded in other contexts that a State-issued diploma awarded upon passing the GED is a "general equivalency diploma" and not a "regular high school diploma" under 34 C.F.R. § 300.102(a)(3)(iv) and the ESSA.  Under the ESSA, states that submit their high school graduation rates to the United States Department of Education "shall not include any student awarded a recognized equivalent of a diploma, such as a general equivalency diploma, certificate of completion, certificate of attendance, or similar lesser credential" among those students "who earned a regular high school diploma."  20 U.S.C. § 7801(23)(A)(ii)(II), (25)(A)(ii)(II) (emphasis added).  If the Commissioner believed that a State-issued diploma awarded upon passing the GED was not a "general equivalency diploma," and was instead a "regular high school diploma" under the definition set forth in 34 C.F.R. § 300.102(a)(3)(iv) and the ESSA, the DOE should report students who obtain a State-issued diploma after passing the GED among those who "earned a regular high school diploma."  It does not.

Instead, the DOE's own website reports that only "students who received a [S]tate-endorsed diploma" are included in graduation rates.  See

26

Graduation/Postsecondary Report.  The DOE's own reporting thus contradicts its litigation position in this case.

B.

We offer two additional comments.  The ALJ, the Commissioner, and the Appellate Division all treated State-issued and State-endorsed high school diplomas interchangeably, relying on language from the Commissioner's previous decision in B.A. & J.H.  The relevant passage from B.A. & J.H. reads:

> [A] State-endorsed high [school] diploma -- the credential signifying attainment of the skills and knowledge deemed necessary by the State of New Jersey for its students to be successful in their careers and daily lives -- can be earned not only by completing the specific course, credit and assessment requirements of N.J.A.C. 6A:8-5.1(a), but also by demonstrating academic skills and knowledge equivalent to such requirements through alternative means, specifically, . . . by achieving the required scores on the General Educational Development (GED) test of the American Council on Education, N.J.A.C. 6A:8-5.2(c); N.J.A.C. 6:30-1.3.
>
> [Commissioner Decision No. 201-09, at *3 (emphases added).]

At the time of the Commissioner's decision in B.A. & J.H., in June 2009, that statement was correct.  Today, it is not.

N.J.A.C. 6A:8-5.2(c) then provided that the Commissioner would award a "State-endorsed high school diploma based on achieving the Statewide

27

standard scores for passage of the [GED], to individuals age [sixteen] or older who are no longer enrolled in school and have not achieved a high school credential." The following month, the regulation was amended, explicitly replacing the words "State-endorsed high school diploma" with "State-issued high school diploma." See 41 N.J. Reg. 1302(a) (April 6, 2009). Students who are not enrolled in school can thus no longer be awarded a State-endorsed high school diploma by "achieving the Statewide standard score" on the GED. Instead, the State, through its statutes and regulations, now recognizes differences between a State-endorsed and a State-issued high school diploma, and it allows for only a State-issued diploma based on passage of the GED.

Again, contrary to its litigation position in this case, the DOE has acknowledged as much in the past. As DRNJ points out, the State Board of Education has previously explained that a "State-issued diploma represents something different than the State-endorsed diploma" because a recipient of a State-issued diploma "is not considered a graduate of a New Jersey high school." Bd. of Educ., State Board of Education Comment/Response Form, Revised Qualifying Scores for State-Issued High School Diplomas 2 (Mar. 4, 2020). The Board further stated that "[i]ndividuals who take a high school equivalency assessment have not met all of the State and local high school

28

graduation requirements needed for a State-endorsed diploma." Ibid. B.A. & J.H. thus does not help Sparta or the DOE here.

Finally, Sparta has repeatedly insisted that "this case invites the [C]ourt to substitute its ideas or ideals of educational policy for those to whom the [L]egislature has entrusted that task," and to become an "arbiter[] of curricular standards and assessments," judging "the quality of the actual diploma/education received." That is incorrect.

This case requires us to interpret and apply the plain language of federal and state statutes and regulations. That falls comfortably within a core judicial duty: construing the words of laws that the Legislature enacts and regulations that administrative agencies promulgate. See Goulding v. NJ Friendship House, Inc., 245 N.J. 157, 167 (2021) ("[C]ourts remain the 'final authorities' on issues of statutory construction and [need not] 'stamp' their approval of the administrative interpretation" (alteration in original) (quoting Koch v. Dir., Div. of Tax'n, 157 N.J. 1, 8 (1999))); Lourdes Med. Ctr. of Burlington Cnty. v. Bd. of Rev., 197 N.J. 339, 364 (2009) ("[A court's] duty is to construe and apply the statute as enacted." (quoting DiProspero v. Penn, 183 N.J. 477, 492 (2005))).

Despite Sparta's assertion, in interpreting and applying the words of federal and state statutes and regulations, we do not "wade into those areas of

29

educational standards or policy which belong in the hands of educators" -- we simply enforce the educational standards and policies that have been enacted by Congress and the New Jersey Legislature and promulgated by the United States Department of Education and the Commissioner.

V.

In obtaining a State-issued diploma based on passing the GED, A.D. obtained a degree documenting "the attainment of academic skills and knowledge equivalent to a high school education."  See N.J.S.A. 18A:50A-1. He did not, however, obtain a "regular high school diploma" under 34 C.F.R. § 300.102(a)(3).  A.D. therefore remains entitled to receive a free appropriate public education, and Sparta remains required, under the IDEA, to provide him with one.

Accordingly, we reverse the judgment of the Appellate Division.

CHIEF JUSTICE RABNER and JUSTICES PATTERSON, SOLOMON, PIERRE-LOUIS, FASCIALE, and NORIEGA join in JUSTICE WAINER APTER's opinion.

30

EXHIBIT E

# SUMMARY OF FEES AND COSTS AT CURRENT RATES

| Billing - TLO | | | | | | |
|---|---|---|---|---|---|---|
| Invoice # | Invoice Date | Rate | Hours | Amt. | Costs | Total |
| 2221 | 01/03/2022 | 585.0 | 15.2 | $8,892.00 | $0.00 | $8,892.00 |
| 2222 | 01/03/2022 | 585.0 | 0.0 | $0.00 | $18.10 | $18.10 |
| 2244 | 02/06/2022 | 585.0 | 33.6 | $19,656.00 | $0.00 | $19,656.00 |
| 2245 | 02/06/2022 | 585.0 | 0.0 | $0.00 | $3.52 | $3.52 |
| 2266 | 03/01/2022 | 585.0 | 28.4 | $16,614.00 | $0.00 | $16,614.00 |
| 2283 | 04/03/2022 | 585.0 | 36.8 | $21,528.00 | $0.00 | $21,528.00 |
| 2284 | 04/05/2022 | 585.0 | 0.0 | $0.00 | $4.32 | $4.32 |
| 2291 | 04/05/2022 | 585.0 | 0.0 | $0.00 | $48.20 | $48.20 |
| 2301 | 05/02/2022 | 585.0 | 28.6 | $16,731.00 | $0.00 | $16,731.00 |
| 2318 | 06/02/2022 | 585.0 | 34.4 | $20,124.00 | $0.00 | $20,124.00 |
| 2319 | 06/02/2022 | 585.0 | 0.0 | $0.00 | $5.92 | $5.92 |
| 2331 | 07/05/2022 | 585.0 | 4.2 | $2,457.00 | $0.00 | $2,457.00 |
| 2344 | 08/03/2022 | 585.0 | 6.4 | $3,744.00 | $0.00 | $3,744.00 |
| 2353 | 09/12/2022 | 585.0 | 33.2 | $19,422.00 | $0.00 | $19,422.00 |
| 2363 | 09/28/2022 | 585.0 | 1.0 | $585.00 | $0.00 | $585.00 |
| 2382 | 11/03/2022 | 585.0 | 2.9 | $1,696.50 | $0.00 | $1,696.50 |
| 2392 | 12/05/2022 | 585.0 | 12.2 | $7,137.00 | $0.00 | $7,137.00 |
| 2393 | 12/05/2022 | 585.0 | 0.0 | $0.00 | $2.64 | $2.64 |
| 2411 | 02/05/2023 | 585.0 | 12.7 | $7,429.50 | $0.00 | $7,429.50 |
| 2418 | 02/28/2023 | 585.0 | 8.0 | $4,680.00 | $0.00 | $4,680.00 |
| 2419 | 02/28/2023 | 585.0 | 0.0 | $0.00 | $3.90 | $3.90 |
| 2427 | 04/04/2023 | 585.0 | 0.5 | $292.50 | $0.00 | $292.50 |
| 2450 | 06/01/2023 | 585.0 | 2.1 | $1,228.50 | $0.00 | $1,228.50 |
| TOTALS | | | 260.2 | $152,217.00 | $86.60 | $152,303.60 |



Thurston Law Offices LLC
100 Springdale Rd A3
PMB 287
Cherry Hill NJ 08003

# Invoice

| Date | Invoice # |
|------|-----------|
| 1/3/2022 | 2221 |

| Bill To |
|---------|
| M Nikolaeva
c/o JOHN RUE & ASSOCIATES
1 Fairview Ave, Ste 14
Phillipsburg, NJ 08865-1230 |

| Due Date |
|----------|
| 1/3/2022 |

| Project | |
|---------|---|

| Service Date | Description | Time | Amount |
|---|---|---|---|
| 12/18/2021 | Review draft OSC and supporting papers; legal analysis and discussion re same; | 1.2 | 630.00 |
| 12/20/2021 | Amend and supplement Application for OSC and PI and supporting papers; | 1.4 | 735.00 |
| 12/20/2021 | Multiple email exchanges and strategy discussion re OSC and PI and modifying supporting papers for filing and analysis of new matter (for TLO); | 0.5 | 262.50 |
| 12/21/2021 | Amend and supplement Application for OSC and PI and supporting papers; prepare for final and filing; file and serve via ECF and mail; | 7.8 | 4,095.00 |
| 12/21/2021 | Prepare letter to Judge Vasquez re courtesy copies of OSC motion; | 0.1 | 52.50 |
| 12/21/2021 | Receive and review via ECF Appearance of DAG Bohn for State Defendants; | 0.2 | 105.00 |
| 12/21/2021 | Prepare Appearance of Counsel; file and serve via ECF; | 0.2 | 105.00 |
| 12/22/2021 | Receive and review via ECF Appearance of counsel for STBOE; | 0.2 | 105.00 |
| 12/22/2021 | Multiple email correspondence with co-counsel and STBOE counsel re status of case and representation and notice of status conf call with Judge Vasquez; | 0.5 | 262.50 |
| 12/22/2021 | Receive and review via ECF Appearance of DAG Fichera for State Defendants; | 0.2 | 105.00 |
| 12/22/2021 | Receive and review via ECF Text Order re status call on OSC scheduled for 12/23; multiple emails and correspondence to ensure notice to all parties as per Court Order and status of case; | 0.8 | 420.00 |
| 12/23/2021 | Legal analysis and strategy discussions with co-counsel re parallel state court appeal and federal case and impact of each; | 0.6 | 315.00 |
| 12/23/2021 | Prepare for and participate in status conference call with Judge Vasquez re briefing schedule on OSC and parties potential motions; preparation call to discuss strategy with AF; | 1 | 525.00 |
| 12/23/2021 | Receive and review via ECF Minute Entry re status conference with Judge Vasquez; | 0.1 | 0.00 |
| 12/23/2021 | Receive and review via email correspondence exchanged with client re status of case and transfer of file to TLO; | 0.2 | 105.00 |
| 12/27/2021 | Receive and review via ECF Text Order from Judge Vasquez re OSC briefing and hearing 2/10/2022; | 0.2 | 105.00 |

| | **Total** | **$7,927.50** |



Thurston Law Offices LLC
100 Springdale Rd A3
PMB 287
Cherry Hill NJ 08003

# Invoice

| Date | Invoice # |
|------|-----------|
| 1/3/2022 | 2222 |

| Bill To |
|---------|
| M Nikolaeva
c/o JOHN RUE & ASSOCIATES
1 Fairview Ave, Ste 14
Phillipsburg, NJ 08865-1230 |

| Due Date |
|----------|
| 1/3/2022 |

| Project | |
|---------|--|

| Service Date | Description | Time | Amount |
|--------------|-------------|------|--------|
| 12/22/2021 | Postage to Judge Vasquez courtesy copies of OSC | | 9.30 |
| 12/22/2021 | Postage to STBOE service of OSC | | 8.80 |
| | Total Reimbursable Expenses | | 18.10 |

| | **Total** | **$18.10** |

# UNITED STATES
# POSTAL SERVICE.

VOORHEES
504 CENTENNIAL BLVD
VOORHEES, NJ 08043-9998
(800)275-8777

12/22/2021                          10:05 AM

- - - - - - - - - - - - - - - - - - - - - - - - - - -

| Product | Qty | Unit Price | Price |
|---------|-----|------------|-------|
| Priority Mail® 2-Day  1 | | | $9.30 |
| Newark, NJ  07101 | | | |
| Weight: 2 lb 3.30 oz | | | |
| Expected Delivery Date | | | |
| Mon 12/27/2021 | | | |
| Tracking #: | | | |
| 9505 5065 6751 1356 2893 91 | | | |
| Insurance | | | $0.00 |
| Up to $50.00 included | | | |
| Total | | | $9.30 |
| | | | |
| Priority Mail® 2-Day  1 | | | $8.80 |
| Sparta, NJ  07871 | | | |
| Weight: 1 lb 1.90 oz | | | |
| Expected Delivery Date | | | |
| Mon 12/27/2021 | | | |
| Tracking #: | | | |
| 9505 5065 6751 1356 2899 14 | | | |
| Insurance | | | $0.00 |
| Up to $50.00 included | | | |
| Total | | | $8.80 |
| | | | |
| First-Class Mail®     1 | | | $2.76 |
| Large Envelope | | | |
| Nashville, TN  37207 | | | |
| Weight: 8.20 oz | | | |
| Estimated Delivery Date | | | |
| Mon 12/27/2021 | | | |

- - - - - - - - - - - - - - - - - - - - - - - - - - -

Grand Total:                        $20.86

- - - - - - - - - - - - - - - - - - - - - - - - - - -

Debit Card Remitted                 $20.86
    Card Name: VISA
    Account #: XXXXXXXXXXXX1417
    Approval #: 090428
    Transaction #: 016604
    Receipt #: 016604
    AID: A0000000980840            Chip
    AL: US DEBIT
    PIN: Not Required

- - - - - - - - - - - - - - - - - - - - - - - - - - -



Thurston Law Offices LLC
100 Springdale Rd A3
PMB 287
Cherry Hill NJ 08003

# Invoice

| Date | Invoice # |
|---|---|
| 2/6/2022 | 2244 |

| Bill To |
|---|
| M Nikolaeva<br>c/o JOHN RUE & ASSOCIATES<br>1 Fairview Ave, Ste 14<br>Phillipsburg, NJ 08865-1230 |

| Due Date |
|---|
| 2/6/2022 |

| Project | |
|---|---|
| | |

| Service Date | Description | Time | Amount |
|---|---|---|---|
| 1/2/2022 | Correspondence to client re status call and update; | 0.1 | 52.50 |
| 1/3/2022 | Review file and prepare status report to JRA and file with next steps items; | 0.5 | 262.50 |
| 1/3/2022 | Legal research and strategy discussion on Younger Abstention Doctrine in anticipation of OSC opposition; | 0.3 | 157.50 |
| 1/4/2022 | Strategy and legal analysis discussion in anticipation of OSC opposition brief and issues to be presented; | 0.4 | 210.00 |
| 1/5/2022 | Correspondence exchange with clients re status meeting and update; | 0.1 | 52.50 |
| 1/5/2022 | Further legal research and strategy discussion on Younger Abstention Doctrine in anticipation of OSC opposition; legal analysis re same; | 0.5 | 262.50 |
| 1/5/2022 | Prepare for and participate in strategy discussion and legal analysis re NJ appellate division case and legal advice on steps to take to preserve rights and amend federal case; | 1.1 | 577.50 |
| 1/5/2022 | Begin preparation of First Amended Complaint; | 1.8 | 945.00 |
| 1/5/2022 | File review and legal analysis re status of cases and necessary tasks and legal research re same; | 0.5 | 262.50 |
| 1/5/2022 | Legal research and strategy discussion re OSC, App Div case, motion to stay, and related legal issues in federal case, including abstention argument; legal analysis re same in preparation for various briefs; | 1.2 | 630.00 |
| 1/6/2022 | Amend and supplement First Amended Complaint; prepare for final; file and serve via ECF; | 2.3 | 1,207.50 |
| 1/6/2022 | Prepare Appearance in NJ App Div case; file and serve via eCourts; | 0.3 | 157.50 |
| 1/6/2022 | Prepare Motion to Stay in NJ App Div case; file and serve via eCourts; | 0.8 | 420.00 |
| 1/6/2022 | Prepare and send correspondence to STBOE and State Defendants' counsel re proposed compromise re NJ App Div case in light of First Amended Complaint in federal action; | 0.4 | 210.00 |
| 1/6/2022 | Prepare for and participate in client call re status of both federal and state appellate cases and legal advice re same; | 0.4 | 210.00 |

| | **Total** |
|---|---|
| | |



Thurston Law Offices LLC
100 Springdale Rd A3
PMB 287
Cherry Hill NJ 08003

# Invoice

| Date | Invoice # |
|------|-----------|
| 2/6/2022 | 2244 |

| Bill To |
|---------|
| M Nikolaeva<br>c/o JOHN RUE & ASSOCIATES<br>1 Fairview Ave, Ste 14<br>Phillipsburg, NJ 08865-1230 |

| Due Date |
|----------|
| 2/6/2022 |

| Project | |
|---------|--|

| Service Date | Description | Time | Amount |
|--------------|-------------|------|--------|
| 1/6/2022 | Receive and review via email correspondence from DAG Bohn re state defendants' legal position on staying App Div case in light of motions pending and OSC in federal court; | 0.1 | 52.50 |
| 1/7/2022 | Strategy conference and legal advice re appellate case filings; | 0.3 | 157.50 |
| 1/10/2022 | Multiple correspondence exchange and strategy discussion re App Div Motion to Stay and Appearance of TLO; | 0.4 | 210.00 |
| 1/11/2022 | Receive and review via ECF State Defendants' application for extension of time to answer or otherwise plead and supporting documents; legal analysis re same; | 0.3 | 157.50 |
| 1/11/2022 | Receive and review email from State Defendants' counsel re refusal to agree to settlement of App Div case; | 0.1 | 52.50 |
| 1/12/2022 | Correspondence exchange with State Defendants' counsel re App Div case and motion to stay; | 0.2 | 105.00 |
| 1/16/2022 | Email exchange and strategy discussion with co-counsel re status of case and anticipated opposition briefs to OSC; | 0.1 | 52.50 |
| 1/16/2022 | Receive and review via email notice from appellate eCourts of filing of opposition to motion to stay but cannot access document; | 0.1 | 52.50 |
| 1/18/2022 | Email to co-counsel re access to opposition to motion to stay in App Div case; | 0.1 | 52.50 |
| 1/18/2022 | Email exchange with co-counsel re status of App Div motion to stay and opposition filed; | 0.1 | 0.00 |
| 1/19/2022 | Receive and review via ECF Text Order from Clerk granting ext of time to State Defendants to plead; | 0.1 | 52.50 |
| 1/19/2022 | Receive and review via eCourts oppositions to Motion to Stay filed by Commissioner and Sparta in App Div case; legal analysis re same; | 1.9 | 997.50 |
| 1/20/2022 | Strategy discussion re filing reply in support of Motion to Stay App Div case; | 0.2 | 105.00 |
| 1/20/2022 | Strategy discussion re service on NJDOE and Commissioner and moot now that DAGs have entered appearance; | 0.2 | 105.00 |
| 1/20/2022 | Strategy discussion and correspondence exchange re reply to Motion to Stay in App Div case and preparation for filing same; | 0.3 | 157.50 |
| 1/21/2022 | Receive and review Order in App Div case denying motion to stay appeal; legal analysis re same; | 0.2 | 105.00 |

| | **Total** | |
|--|-----------|--|



Thurston Law Offices LLC
100 Springdale Rd A3
PMB 287
Cherry Hill NJ 08003

# Invoice

| Date | Invoice # |
|---|---|
| 2/6/2022 | 2244 |

| Bill To |
|---|
| M Nikolaeva<br>c/o JOHN RUE & ASSOCIATES<br>1 Fairview Ave, Ste 14<br>Phillipsburg, NJ 08865-1230 |

| Due Date |
|---|
| 2/6/2022 |

| Project | |
|---|---|
| | |

| Service Date | Description | Time | Amount |
|---|---|---|---|
| 1/24/2022 | Receive and review via ECF STBOE's Answer to Amended Complaint and Counterclaim; legal analysis re same; | 1.1 | 577.50 |
| 1/24/2022 | Receive and review via ECF State Defendants' opposition to OSC; legal analysis re same; | 1.2 | 630.00 |
| 1/24/2022 | Strategy discussion and legal analysis re deadlines in App Div case and whether briefing schedule has been set by court; | 0.3 | 157.50 |
| 1/25/2022 | Receive and review via ECF Sparta's Opposition to Motion for OSC in federal case; legal analysis re same; | 1.4 | 735.00 |
| 1/25/2022 | Strategy discussion and legal analysis to colleague to prepare draft Reply brief in support of OSC motion in federal court; | 0.9 | 472.50 |
| 1/25/2022 | Legal research and begin drafts of Answer to Counterclaim and Motion to Dismiss for alternative pleading; | 1.7 | 892.50 |
| 1/25/2022 | Lengthy strategy discussions and correspondence exchanged re legal advice on Sparta's counterclaim and responses thereto; legal research re same; | 1.3 | 682.50 |
| 1/25/2022 | Multiple strategy correspondence and discussion re appellate record and deadlines for App Div case and legal advice re same; | 0.6 | 315.00 |
| 1/25/2022 | Strategy discussion and legal analysis re potential sanctions motion and Safe Harbor letter to Sparta counsel re counterclaim; | 0.5 | 262.50 |
| 1/25/2022 | Review file and documents to verify status of appeal in App Div case and docket entries; | 0.4 | 210.00 |
| 1/26/2022 | Correspondence exchange with State Defendants' counsel re ext time to respond to Amended Complaint; | 0.2 | 105.00 |
| 1/26/2022 | Strategy discussions and legal analysis re standing of school districts to seek reimbursement of taxpayer money for attendance; | 0.3 | 157.50 |
| 1/26/2022 | Further analysis and research on appellate record requirements and procedures for state agency; | 0.3 | 157.50 |
| 1/26/2022 | Strategy discussion and legal analysis re App Div case, sanctions motion, motion to dismiss counterclaim in federal case, and reply on OSC; | 0.8 | 420.00 |
| 1/26/2022 | Legal research re standing of school districts to seek reimbursement of taxpayer money for attendance in preparation of motion to dismiss; | 0.4 | 210.00 |
| 1/27/2022 | Strategy discussion and legal advice re oral argument on OSC; | 0.2 | 105.00 |

| | **Total** |
|---|---|
| | |



Thurston Law Offices LLC
100 Springdale Rd A3
PMB 287
Cherry Hill NJ 08003

# Invoice

| Date | Invoice # |
|---|---|
| 2/6/2022 | 2244 |

| Bill To |
|---|
| M Nikolaeva<br>c/o JOHN RUE & ASSOCIATES<br>1 Fairview Ave, Ste 14<br>Phillipsburg, NJ 08865-1230 |

| Due Date |
|---|
| 2/6/2022 |

| Project | |
|---|---|

| Service Date | Description | Time | Amount |
|---|---|---|---|
| 1/27/2022 | Correspondence exchange with State Defendants' counsel re consent for ext of time to answer Amended Complaint; | 0.1 | 52.50 |
| 1/27/2022 | Strategy discussion and legal analysis re briefing schedule in App Div and notification of NJDOE of late submission; | 0.6 | 315.00 |
| 1/28/2022 | Further strategy discussion and legal analysis re briefing schedule in App Div and notification of NJDOE of late submission; | 0.4 | 210.00 |
| 1/28/2022 | Legal analysis and strategy discussion re status of App Div case and case items list not filed by NJDOE and timing of appellate briefs; | 0.4 | 210.00 |
| 1/28/2022 | Receive and review via ECF letter application from State Defendants for ext of time to respond to complaint; | 0.3 | 157.50 |
| 1/29/2022 | Prepare Motion to Dismiss for lack of jurisdiction; additional legal research re same; finalize and prepare for filing and service via ECF and email; | 2.3 | 1,207.50 |
| 1/29/2022 | Prepare Motion for Rule 11 Sanctions and Safe Harbor letter to STBOE counsel; serve via email and regular mail but not file; | 1.8 | 945.00 |
| 1/29/2022 | Receive and review correspondence from STBOE counsel re Safe Harbor Letter as "threat"; | 0.1 | 52.50 |
| 1/30/2022 | Legal analysis and strategy advice re case items list not filed by NJDOE and timing of appellate briefs in App Div case; | 0.2 | 105.00 |
| 1/31/2022 | Further strategy discussion and legal analysis of burden of notifying clerk re filing of items list from underlying proceedings triggering briefing schedule; | 0.3 | 157.50 |
| 1/31/2022 | Internal strategy discussion and legal analysis re motion to dismiss counterclaim; | 0.2 | 105.00 |

| | Total | $17,640.00 |
|---|---|---|



Thurston Law Offices LLC
100 Springdale Rd A3
PMB 287
Cherry Hill NJ 08003

# Invoice

| Date | Invoice # |
| --- | --- |
| 2/6/2022 | 2245 |

| Bill To |
| --- |
| M Nikolaeva<br>c/o JOHN RUE & ASSOCIATES<br>1 Fairview Ave, Ste 14<br>Phillipsburg, NJ 08865-1230 |

| Due Date |
| --- |
| 2/6/2022 |

| Project | |
| --- | --- |

| Service Date | Description | Time | Amount |
| --- | --- | --- | --- |
| 1/31/2022 | Sanctions Safe Harbor letter | | 3.52 |

| | Total | $3.52 |
| --- | --- | --- |



Thurston Law Offices LLC
100 Springdale Rd A3
PMB 287
Cherry Hill NJ 08003

# Invoice

| Date | Invoice # |
|------|-----------|
| 3/1/2022 | 2266 |

| Bill To |
|---------|
| M Nikolaeva<br>c/o JOHN RUE & ASSOCIATES<br>1 Fairview Ave, Ste 14<br>Phillipsburg, NJ 08865-1230 |

| Due Date |
|----------|
| 3/1/2022 |

| Project | |
|---------|---|

| Service Date | Description | Time | Amount |
|--------------|-------------|------|--------|
| 2/1/2022 | Receive and review via ECF Order granting state defendants ext of time to answer complaint; legal analysis re same; | 0.1 | 52.50 |
| 2/1/2022 | Receive and review via ECF notice of motion date from clerk; legal analysis re same; | 0.1 | 52.50 |
| 2/2/2022 | Receive and review via ECF Notice of Appearance of Barbosa for STBOE; | 0.1 | 52.50 |
| 2/4/2022 | Review file and prepare status report; | 0.7 | 367.50 |
| 2/4/2022 | Receive and review draft Reply brief in support of OSC; legal analysis re same; legal research re same; begin amending and supplementing draft; | 1.1 | 577.50 |
| 2/6/2022 | Amend and supplement draft Reply brief in support of OSC; | 1.3 | 682.50 |
| 2/7/2022 | Amend and supplement Reply brief; strategy discussion and legal analysis and advice with co-counsel re same; | 3.6 | 1,890.00 |
| 2/7/2022 | Multiple correspondence internally and wit STBOE counsel re extension of time to file Reply brief and hearing scheduled for 2/10; | 0.6 | 315.00 |
| 2/7/2022 | Receive and review via ECF multiple letter filings with Court re adjournment; | 0.4 | 210.00 |
| 2/8/2022 | Receive and review via ECF Letter from co-counsel to Judge Allen withdrawing letters requesting extension of time and that Reply brief was filed timely; | 0.2 | 105.00 |
| 2/8/2022 | Receive and review via ECF Plaintiffs' Reply in support of motion for OSC; | 0.4 | 0.00 |
| 2/8/2022 | Additional strategy discussion and legal analysis of obligations in App Div case and legal advice on actions to be taken; | 0.5 | 262.50 |
| 2/8/2022 | Begin preparation for oral argument on OSC motion; strategy discussion and legal analysis and advice re same; | 0.9 | 472.50 |
| 2/9/2022 | Strategy discussion and legal analysis of contact with clerk of App Div re NJDOE obligation to provide list of items; | 0.3 | 157.50 |
| 2/10/2022 | Prepare for and participate in motion hearing before Judge Vazquez on OSC via telephone; | 1.8 | 945.00 |
| 2/10/2022 | Strategy discussion and legal analysis post-oral argument on motion and supplemental briefing; | 0.4 | 210.00 |
| 2/10/2022 | Prepare correspondence to all counsel re meet and confer on proposed supplemental briefing and hearing schedule; | 0.2 | 105.00 |

| | **Total** |
|---|---|



Thurston Law Offices LLC
100 Springdale Rd A3
PMB 287
Cherry Hill NJ 08003

# Invoice

| Date | Invoice # |
|------|-----------|
| 3/1/2022 | 2266 |

| Bill To |
|---------|
| M Nikolaeva<br>c/o JOHN RUE & ASSOCIATES<br>1 Fairview Ave, Ste 14<br>Phillipsburg, NJ 08865-1230 |

| Due Date |
|----------|
| 3/1/2022 |

| Project | |
|---------|---|

| Service Date | Description | Time | Amount |
|---|---|---|---|
| 2/10/2022 | Receive and review via ECF Text Order from Judge Vazquez re supplemental briefing schedule; | 0.1 | 52.50 |
| 2/10/2022 | Receive and review via ECF minute entry re oral argument held; | 0.1 | 0.00 |
| 2/10/2022 | Receive and review correspondence via email from State Defendants' counsel re supplemental briefing schedule proposal and meet and confer; | 0.1 | 52.50 |
| 2/11/2022 | Receive and review correspondence exchange with client re status of pending motions and pleadings; | 0.1 | 52.50 |
| 2/14/2022 | Receive and review via email correspondence from counsel re briefing schedule and ext time to respond to complaint; | 0.1 | 52.50 |
| 2/14/2022 | Multiple correspondence exchanges re supplemental briefing schedule on OSC motion; receive and review via ECF letter from State Defendants' counsel to Judge Vazquez re same; | 0.3 | 157.50 |
| 2/15/2022 | Receive and review via ECF Order text by Judge Vazquez approving supplemental briefing schedule; legal analysis re same; | 0.2 | 105.00 |
| 2/16/2022 | Receive and review via email correspondence from State Defendants' counsel requesting ext time to respond to complaint; | 0.1 | 52.50 |
| 2/17/2022 | Correspondence exchange via email with clients re updated status report on OSC motion hearing and supplemental briefing and issues of concern expressed by Judge Vazquez with legal advice and analysis; | 0.4 | 210.00 |
| 2/17/2022 | Receive and review via ECF letter application from State Defendants to Judges re ext time to respond to complaint and proposed order; legal analysis re same; | 0.3 | 157.50 |
| 2/17/2022 | Receive and review via ECF Order granting State Defendants ext time to respond to complaint; | 0.1 | 52.50 |
| 2/17/2022 | Receive and review via email lengthy correspondence from client re additional information that may be helpful for supplemental briefing; legal analysis re same and forward to colleague re same for drafting; | 0.3 | 157.50 |
| 2/22/2022 | Strategy discussion and legal analysis re supplemental briefing on irreparable harm issue; | 0.4 | 210.00 |
| 2/23/2022 | Receive and review via ECF STBOE's opposition to MTD counterclaim; legal analysis re same; | 1.3 | 682.50 |

| | **Total** | |
|---|---|---|



Thurston Law Offices LLC
100 Springdale Rd A3
PMB 287
Cherry Hill NJ 08003

# Invoice

| Date | Invoice # |
| --- | --- |
| 3/1/2022 | 2266 |

| Bill To |
| --- |
| M Nikolaeva
c/o JOHN RUE & ASSOCIATES
1 Fairview Ave, Ste 14
Phillipsburg, NJ 08865-1230 |

| Due Date |
| --- |
| 3/1/2022 |

| Project | |
| --- | --- |

| Service Date | Description | Time | Amount |
| --- | --- | --- | --- |
| 2/23/2022 | Legal research and begin draft of Reply in support of Motion to Dismiss Counterclaim; legal analysis and send to co-counsel for comment; | 3.7 | 1,942.50 |
| 2/23/2022 | Legal analysis discussion re motion for sanctions against STBOE's counsel for filing counterclaim; | 0.3 | 157.50 |
| 2/24/2022 | Supplemental legal research and amend and supplement draft of Reply in support of Motion to Dismiss Counterclaim; legal analysis and send to co-counsel for comment; | 1.4 | 735.00 |
| 2/25/2022 | Amend and supplement Motion for Rule 11 Sanctions; prepare Certification of RCT re Safe Harbor Rule; prepare for final; file and serve via ECF; prepare courtesy copies and cover letter to Judge Vazquez; | 1.3 | 682.50 |
| 2/25/2022 | Amend and supplement Reply brief in support of Motion to Dismiss Counterclaim; prepare for final; file and serve via ECF; prepare courtesy copies and cover letter to Judge Vazquez; | 0.8 | 420.00 |
| 2/26/2022 | Begin draft Supplemental Brief on irreparable harm issue as instructed by Judge Vasquez;  legal research re same; | 0.5 | 262.50 |
| 2/27/2022 | Continue draft Supplemental Brief on irreparable harm issue as instructed by Judge Vasquez; | 0.8 | 420.00 |
| 2/28/2022 | Amend and supplement draft Supplemental Brief on irreparable harm issue as instructed by Judge Vasquez; additional legal research re same; prepare Certification of M.N. re same; email to co-counsel for legal analysis and strategy discussion; | 1.9 | 997.50 |
| 2/28/2022 | Strategy discussion and legal analysis re amendments to supplemental briefing on irreparable harm issue; | 0.4 | 210.00 |
| 2/28/2022 | Review file and prepare status report for file and JRA for strategy discussion; | 0.7 | 367.50 |

| | Total | $14,647.50 |
| --- | --- | --- |



Thurston Law Offices LLC
100 Springdale Rd A3
PMB 287
Cherry Hill NJ 08003

# Invoice

| Date | Invoice # |
|------|-----------|
| 4/3/2022 | 2283 |

| Bill To |
|---------|
| M Nikolaeva
c/o JOHN RUE & ASSOCIATES
1 Fairview Ave, Ste 14
Phillipsburg, NJ 08865-1230 |

| Due Date |
|----------|
| 4/3/2022 |

| Project | |
|---------|--|

| Service Date | Description | Time | Amount |
|--------------|-------------|------|--------|
| 3/1/2022 | Strategy discussion and legal analysis of supplemental briefing and legal advice re additional issues to present; amend and supplement supplemental brief and certification of M.N.; correspondence exchange with client re certification; prepare supplemental submissions for final; file and serve via ECF; | 1.2 | 630.00 |
| 3/2/2022 | Receive and review via ECF State Defendants' Supplemental Brief on OSC motion on issue of GED diplomas; legal analysis re same; | 0.7 | 367.50 |
| 3/2/2022 | Strategy discussion and legal analysis re reply brief to State Defendants' Supplemental Brief on OSC motion on issue of GED diplomas with legal advice; | 0.4 | 210.00 |
| 3/2/2022 | Multiple correspondence exchanges with counsel re hearing schedule and adjournment request by State Defendants; legal analysis re same; | 0.4 | 210.00 |
| 3/3/2022 | Receive and review via ECF Letter from State Defendants' counsel to Judge Vasquez re motion hearing; legal analysis re same; | 0.2 | 105.00 |
| 3/7/2022 | Telephone call to Judge Vasquez's chambers re adjournment of oral argument on supplemental briefing issues; | 0.1 | 52.50 |
| 3/7/2022 | Receive and review via ECF STBOE's and counsel's opposition to Motion for Sanctions; legal analysis re same; | 1.3 | 682.50 |
| 3/8/2022 | Prepare Supplemental Reply Brief for final and filing; file and serve via ECF; | 1 | 525.00 |
| 3/8/2022 | Correspondence exchange with clients re status of OSC motion, hearing, and next steps; | 0.1 | 52.50 |
| 3/8/2022 | Correspondence exchange with Judge Vasquez chambers re phone hearing scheduled for 3/30; | 0.1 | 52.50 |
| 3/8/2022 | Receive and review via ECF Text Order from Judge Vasquez setting hearing on OSC motion and supplemental briefs for 3/30; docket same and legal analysis; | 0.1 | 52.50 |
| 3/8/2022 | Receive and review via ECF State Defendants' supplemental reply briefing on injunctive relief / irreparable harm; legal analysis re same and strategy development for oral argument; | 0.7 | 367.50 |
| 3/9/2022 | Strategy and legal discussion re STBOE's supplemental brief on injunctive relief; | 0.3 | 157.50 |

| | **Total** |
|--|-----------|



Thurston Law Offices LLC
100 Springdale Rd A3
PMB 287
Cherry Hill NJ 08003

# Invoice

| Date | Invoice # |
|------|-----------|
| 4/3/2022 | 2283 |

| Bill To |
|---------|
| M Nikolaeva<br>c/o JOHN RUE & ASSOCIATES<br>1 Fairview Ave, Ste 14<br>Phillipsburg, NJ 08865-1230 |

| Due Date |
|----------|
| 4/3/2022 |

| Project | |
|---------|--|

| Service Date | Description | Time | Amount |
|---|---|---|---|
| 3/9/2022 | Receive and review via ECF STBOE's supplemental briefing on injunctive relief / irreparable harm; legal analysis re same and strategy development for oral argument; | 0.8 | 420.00 |
| 3/9/2022 | Begin draft of Motion for Leave to File Sur-Reply to STBOE's Supplemental Brief; begin draft of Sur-Reply as exhibit for filing if motion granted; | 2.7 | 1,417.50 |
| 3/9/2022 | Legal research and file review re evidence to rebut STBOE's supplemental brief; correspondence exchange and strategy discussion with co-counsel re same; | 1.8 | 945.00 |
| 3/9/2022 | Receive and review correspondence via email from client re legal advice on pending supplemental briefs; | 0.1 | 52.50 |
| 3/10/2022 | Finalize draft of Motion for Leave to File Sur-Reply to STBOE's Supplemental Brief and proposed Sur-Reply as exhibit ; file and serve same via ECF; | 1.3 | 682.50 |
| 3/11/2022 | Begin draft reply in support of motion for rule 11 sanctions; legal research re same; | 1.6 | 840.00 |
| 3/13/2022 | Amend and supplement draft reply in support of motion for rule 11 sanctions; email to co-counsel for review; | 1.5 | 787.50 |
| 3/14/2022 | Receive and review Scheduling Order from App Div; legal analysis re same; | 0.3 | 157.50 |
| 3/14/2022 | Finalize reply in support of motion for rule 11 sanctions and prepare for filing; file and serve same via ECF; prepare courtesy copies and cover letter to Judge Vasquez; | 0.4 | 210.00 |
| 3/15/2022 | Receive and review via ECF State Defendants motion to dismiss; legal analysis re same; | 2.3 | 1,207.50 |
| 3/16/2022 | Prepare Rule 7.1 letter to clerk to adjourn motion date of State Defendants MTD; file and serve same via ECF; | 0.3 | 157.50 |
| 3/17/2022 | Receive and review via ECF Order granting adjournment of State Defendants Motion to Dismiss for one motion cycle; legal analysis re same; | 0.2 | 105.00 |
| 3/17/2022 | Strategy discussion and legal analysis of 3rd Circuit decision in M.W. case on Judge Vasquez's ruling on injunctive relief herein; | 0.3 | 157.50 |
| 3/18/2022 | Strategy discussion and legal analysis re supplemental oral argument before Judge Vasquez; | 0.3 | 157.50 |

| | **Total** | |
|--|--|--|



Thurston Law Offices LLC
100 Springdale Rd A3
PMB 287
Cherry Hill NJ 08003

# Invoice

| Date | Invoice # |
|------|-----------|
| 4/3/2022 | 2283 |

| Bill To |
|---------|
| M Nikolaeva
c/o JOHN RUE & ASSOCIATES
1 Fairview Ave, Ste 14
Phillipsburg, NJ 08865-1230 |

| Due Date |
|----------|
| 4/3/2022 |

| Project | |
|---------|--|

| Service Date | Description | Time | Amount |
|--------------|-------------|------|--------|
| 3/18/2022 | Review file and prepare status report; | 0.5 | 262.50 |
| 3/22/2022 | Receive and review via ECF STBOE's objection / opposition to Motion for Leave to File Sur-Reply; legal analysis re same; strategy discussion with co-counsel re same; | 0.5 | 262.50 |
| 3/23/2022 | Strategy discussion and legal analysis re oral arguments on OSC motion and supplemental briefing; preparation for same; | 0.4 | 210.00 |
| 3/24/2022 | Strategy discussion and legal analysis in preparation for oral argument on supplemental briefing to be held 3/30; | 0.6 | 315.00 |
| 3/25/2022 | Begin draft of Opposition to State Defendants' Motion to Dismiss; legal research re same; | 1.1 | 577.50 |
| 3/27/2022 | Continue draft of Opposition to State Defendants' Motion to Dismiss; legal research re same; | 0.9 | 472.50 |
| 3/28/2022 | Continue draft of Opposition to State Defendants' Motion to Dismiss; legal research re same; | 1.3 | 682.50 |
| 3/29/2022 | Continue draft of Opposition to State Defendants' Motion to Dismiss; legal research re same; | 2.2 | 1,155.00 |
| 3/30/2022 | Prepare for and participate in motion hearing via telephone with Judge Vazquez on OSC / injunctive relief; | 1.6 | 840.00 |
| 3/30/2022 | Strategy discussion and legal analysis following motion hearing with Judge Vazquez on OSC motion and legal advice re next steps; | 1.5 | 787.50 |
| 3/30/2022 | Continue draft of Opposition to State Defendants' Motion to Dismiss; | 1.7 | 892.50 |
| 3/31/2022 | Telephone conference with clients re 3/30 motion hearing with Judge Vazquez on OSC motion and strategy discussion and legal advice re next steps; | 0.4 | 210.00 |
| 3/31/2022 | Strategy discussion and legal analysis re appearance and briefing in Appellate Division case; | 0.2 | 105.00 |
| 3/31/2022 | Continue draft of Opposition to State Defendants' Motion to Dismiss; amend portions in light of collateral estoppel from MD and other related cases; | 3.4 | 1,785.00 |

| | Total | $19,320.00 |
|--|-------|------------|



Thurston Law Offices LLC
100 Springdale Rd A3
PMB 287
Cherry Hill NJ 08003

# Invoice

| Date | Invoice # |
|---|---|
| 4/3/2022 | 2284 |

**Bill To**

M Nikolaeva
c/o JOHN RUE & ASSOCIATES
1 Fairview Ave, Ste 14
Phillipsburg, NJ 08865-1230

| Due Date |
|---|
| 4/3/2022 |

| Project | |
|---|---|
| | |

| Service Date | Description | Time | Amount |
|---|---|---|---|
| 2/25/2022 | Courtesy copies to judge | | 2.56 |
| 3/15/2022 | Courtesy copies | | 1.76 |
| | Total Reimbursable Expenses | | 4.32 |

| | **Total** | **$4.32** |
|---|---|---|



**UNITED STATES POSTAL SERVICE**

VOORHEES
504 CENTENNIAL BLVD
VOORHEES, NJ 08043-9998
(800)275-8777

02/25/2022                                    04:52 PM
------------------------------------------------
Product              Qty      Unit       Price
                              Price
------------------------------------------------
First-Class Mail®     1                   **$2.56**
Large Envelope
    Newark, NJ  07101
    Weight: 7.50 oz
    Estimated Delivery Date
        Mon 02/28/2022
------------------------------------------------
Grand Total:                              **$2.56**
------------------------------------------------
Debit Card Remitted                       **$2.56**
    Card Name: VISA
    Account #: XXXXXXXXXXXX1417
    Approval #: 055226
    Transaction #: 017379
    Receipt #: 017379
    AID: A0000000980840                     Chip
    AL: US DEBIT
    PIN: Not Required
------------------------------------------------

***********************************
USPS is experiencing unprecedented volume
      increases and limited employee
      availability due to the impacts of
COVID-19. We appreciate your patience.
***********************************

Preview your Mail
Track your Packages
Sign up for FREE @
https://informeddelivery.usps.com

All sales final on stamps and postage.
Refunds for guaranteed services only.
Thank you for your business.

Tell us about your experience.
Go to: https://postalexperience.com/ssk
or scan this code with your mobile device,

------------------------------------------------

UFN: 334050-9550
Receipt #: 840-10800378-1-4725853-1
Clerk: 00

# UNITED STATES
# POSTAL SERVICE.

VOORHEES
504 CENTENNIAL BLVD
VOORHEES, NJ 08043-9998
(800)275-8777

03/15/2022                                09:34 AM

--------------------------------------------------

Product              Qty        Unit      Price
                                Price
--------------------------------------------------

First-Class Mail®      1                  $1.76
Large Envelope
    Newark, NJ   07101
    Weight: 3.70 oz
    Estimated Delivery Date
    Thu 03/17/2022

# REDACTED

# REDACTED

# REDACTED

# REDACTED

# REDACTED

--------------------------------------------------
Grand Total:                              $8.44
--------------------------------------------------
Debit Card Remitted                       $8.44
    Card Name: VISA
    Account #: XXXXXXXXXXXX1417
    Approval #: 083302
    Transaction #: 017549
    Receipt #: 017549
    AID: A0000000980840              Chip
    AL: US DEBIT
    PIN: Not Required
--------------------------------------------------

*****************************************
    Every household in the U.S. is now
    eligible to receive a second set
          of 4 free test kits.
       Go to www.covidtests.gov
*****************************************


*****************************************
USPS is experiencing unprecedented volume
       increases and limited employee
     availability due to the impacts of
   COVID-19. We appreciate your patience.
*****************************************


            Preview your Mail
           Track your Packages
           Sign up for FREE @
       https://informeddelivery.usps.com

    All sales final on stamps and postage.
    Refunds for guaranteed services only.
          Thank you for your business.


        Tell us about your experience.
    Go to: https://postalexperience.com/ssk
   or scan this code with your mobile device,

--------------------------------------------------

UFN: 334050-9550
Receipt #: 840-10800378-1-4767790-1
Clerk: 00



Thurston Law Offices LLC
100 Springdale Rd A3
PMB 287
Cherry Hill NJ 08003

# Invoice

| Date | Invoice # |
|---|---|
| 4/5/2022 | 2291 |

| Bill To |
|---|
| M Nikolaeva<br>c/o JOHN RUE & ASSOCIATES<br>1 Fairview Ave, Ste 14<br>Phillipsburg, NJ 08865-1230 |

| Due Date |
|---|
| 4/5/2022 |

| Project | |
|---|---|

| Service Date | Description | Time | Amount |
|---|---|---|---|
| 4/4/2022 | Printing courtesy copies of cases for Judge Vazquez | | 36.74 |
| 4/5/2022 | Courtesy copies to Judge Vazquez | | 9.90 |
| 4/5/2022 | Rule 11 Safe Harbor letter and motion to Gilfillan | | 1.56 |
| | Total Reimbursable Expenses | | 48.20 |

| | Total | $48.20 |
|---|---|---|

**FedEx Office.**

FedEx Office
13155 Noel Road, Suite 1600
Dallas, Texas 75240
1-800-488-3705

Order Date: 04/04/2022       Branch: 0819
Order Time: 15:15:05         Register: 2
Pickup Date: 04/04/2022
Pickup Time: 18:30
Team Member: Matthew B.

PICK UP ORDER

0819027C91

---

Customer: Robert Thurston

---

Total Order                    36.74
Total Paid Online              36.74

Sub-Total                       0.00
Balance Due                     0.00

---

PICK UP ORDER

0819027C91

---

Thank you for visiting

FedEx Office
Make It. Print It. Pack It. Ship It.
fedex.com/office

Customer Copy

---

# UNITED STATES
# POSTAL SERVICE.

VOORHEES
504 CENTENNIAL BLVD
VOORHEES, NJ 08043-9998
(800)275-8777

| 04/05/2022 | | | 12:54 PM |

---

| Product | Qty | Unit Price | Price |
| --- | --- | --- | --- |

---

| Priority Mail® 2-Day | 1 | | $9.90 |
| Newark, NJ   07101 | | | |
| Weight: 2 lb 5.74 oz | | | |
| Expected Delivery Date | | | |
| Fri 04/08/2022 | | | |
| Tracking #: | | | |
| 9505 5065 6751 2095 3120 55 | | | |
| Insurance | | | $0.00 |
| Up to $50.00 included | | | |
| Total | | | $9.90 |
| | | | |
| First-Class Mail® | 1 | | $1.56 |
| Large Envelope | | | |
| Florham Park, NJ   07932 | | | |
| Weight: 2.60 oz | | | |
| Estimated Delivery Date | | | |
| Thu 04/07/2022 | | | |
| | | | |
| First-Class Mail® | 1 | | $2.36 |
| Large Envelope | | | |
| Ringwood, NJ   07456 | | | |
| Weight: 6.20 oz | | | |
| Estimated Delivery Date | | | |
| Thu 04/07/2022 | | | |

---

| Grand Total: | | | $13.82 |

---

| Debit Card Remitted | | | $13.82 |
| Card Name: VISA | | | |
| Account #: XXXXXXXXXXXX1417 | | | |
| Approval #: 015342 | | | |
| Transaction #: 017734 | | | |
| Receipt #: 017734 | | | |
| AID: A0000000980840 | | | Chip |
| AL: US DEBIT | | | |
| PIN: Verified | | | |

---

```
************************************
  Every household in the U.S. is now
   eligible to receive a second set
          of 4 free test kits.
        Go to www.covidtests.gov
************************************
```

Text your tracking number to 28777 (2USPS)
to get the latest status. Standard Message
and Data rates may apply. You may also
visit www.usps.com USPS Tracking or call
1-800-222-1811.

Save this receipt as evidence of
insurance. For information on filing an
insurance claim go to
https://www.usps.com/help/claims.htm
or call 1-800-222-1811

Preview your Mail
Track your Packages
Sign up for FREE @
https://informeddelivery.usps.com

All sales final on stamps and postage.
Refunds for guaranteed services only.
Thank you for your business.

Tell us about your experience.
Go to: https://postalexperience.com/ssk
or scan this code with your mobile device,

---

UFN: 334050-9550
Receipt #: 840-10800378-1-4817137-1
Clerk: 00



Thurston Law Offices LLC
100 Springdale Rd A3
PMB 287
Cherry Hill NJ 08003

# Invoice

| Date | Invoice # |
|---|---|
| 5/2/2022 | 2301 |

| Bill To |
|---|
| M Nikolaeva
c/o JOHN RUE & ASSOCIATES
1 Fairview Ave, Ste 14
Phillipsburg, NJ 08865-1230 |

| Due Date |
|---|
| 5/2/2022 |

| Project | |
|---|---|
| | |

| Service Date | Description | Time | Amount |
|---|---|---|---|
| 4/1/2022 | Prepare letter to NJOSEP requesting transfer of administrative record to federal court; file and serve same via email and ECF; | 0.2 | 105.00 |
| 4/1/2022 | Continue draft of Opposition to State Defendants' Motion to Dismiss; amend portions in light of collateral estoppel from MD and other related cases; email to co-counsel for review; | 2.5 | 1,312.50 |
| 4/1/2022 | Prepare letter to OSEP requesting transcript from OAL hearing; serve via email to OSEP; | 0.1 | 52.50 |
| 4/4/2022 | Amend and supplement Opposition to State Defendants' MTD and exhibits of cases by Judge Hillman; prepare final; file and serve via ECF; | 2.1 | 1,102.50 |
| 4/4/2022 | Receive and review draft proposed Notice of Assignment as co-counsel in App Div case; | 0.1 | 52.50 |
| 4/5/2022 | Strategy discussion, legal research and analysis re untimely Rule 12(b)(6) motions and response thereto; | 1.2 | 630.00 |
| 4/5/2022 | Receive and review via ECF STBOE's Cross-Motion to Dismiss; legal analysis re same; | 1.7 | 892.50 |
| 4/5/2022 | Legal research re untimely Rule 12(b)(6) motions filed after Answer is filed; legal analysis re same; strategy discussion and email exchange with co-counsel re violation of the rule as STBOE filed motion after filing Answer; | 0.8 | 420.00 |
| 4/5/2022 | Prepare draft Second Motion for Rule 11 Sanctions against STBOE and counsel for filing untimely 12(b)(6) motion and Safe Harbor letter; serve via email and regular mail; | 1 | 525.00 |
| 4/5/2022 | Prepare cover letter and courtesy copies to Judge Vazquez re Plaintiffs' opposition to State Defendants' MTD; | 0.2 | 105.00 |
| 4/5/2022 | Legal research and analysis re STBOE's cross-MTD as untimely and conversion to motion on the pleadings; begin strategy discussion and legal analysis re response and opposition to Cross-Motion; | 2.1 | 1,102.50 |
| 4/6/2022 | Additional strategy discussion and legal analysis re response to STBOE's Cross-Motion to Dismiss; prepare Rule 7.1 application for ext time; file and serve same via ECF; | 1.1 | 577.50 |
| 4/6/2022 | Begin draft of response / opposition to STBOE's Cross-Motion to Dismiss; | 1.3 | 682.50 |

| | **Total** | |
|---|---|---|
| | | |

Page 1



Thurston Law Offices LLC
100 Springdale Rd A3
PMB 287
Cherry Hill NJ 08003

# Invoice

| Date | Invoice # |
|------|-----------|
| 5/2/2022 | 2301 |

| Bill To |
|---------|
| M Nikolaeva
c/o JOHN RUE & ASSOCIATES
1 Fairview Ave, Ste 14
Phillipsburg, NJ 08865-1230 |

| Due Date |
|----------|
| 5/2/2022 |

| Project | |
|---------|--|

| Service Date | Description | Time | Amount |
|---|---|---|---|
| 4/6/2022 | Receive and review via ECF Clerk notice changing motion hearing date on STBOE's Cross-MTD from Plaintiffs' request for ext time; | 0.1 | 52.50 |
| 4/8/2022 | Numerous correspondence re appellate division appearance and briefing schedule; | 0.3 | 157.50 |
| 4/11/2022 | Strategy discussion and legal analysis re appellate division opening brief; | 0.2 | 105.00 |
| 4/11/2022 | Begin draft of Opening Brief using form for format; legal research and analysis re issues to present; | 1.6 | 840.00 |
| 4/11/2022 | Continue draft opposition to State Defendants' MTD; correspondence to co-counsel re strategy and legal analysis of draft; | 2.9 | 1,522.50 |
| 4/11/2022 | Receive and review via ECF State Defendants' reply in support of MTD; legal analysis re same; | 0.6 | 315.00 |
| 4/12/2022 | Receive and review via ECF Opinion from Judge Vazquez on OSC motion; legal analysis re same; strategy discussion and legal advice re same with co-counsel; email exchange with clients re same and legal advice; | 1.4 | 735.00 |
| 4/12/2022 | Receive and review via ECF Order denying preliminary injunction and denying motion for leave to file sur-reply; | 0.1 | 52.50 |
| 4/12/2022 | Continue draft of Opening Brief in App Div case; additional legal research; | 1.8 | 945.00 |
| 4/13/2022 | Supplemental strategy discussion re Judge Vazquez's opinion and potential 3rd Circuit appeal or Rule 12(c) motion; | 0.5 | 262.50 |
| 4/13/2022 | Lengthy correspondence exchange with clients re Judge Vazquez's opinion, legal analysis, and options with strategy; | 0.3 | 157.50 |
| 4/13/2022 | Strategy discussion and legal analysis re comp ed vs. injunctive relief (irreparable harm) issue and statements made by STBOE and State Defendants on record re same; | 0.4 | 210.00 |
| 4/13/2022 | Continue draft of Opening Brief in App Div case; additional legal research; | 1.9 | 997.50 |
| 4/14/2022 | Multiple email exchanges and strategy discussion re request for continuance in App Div case of briefing schedule; | 0.3 | 157.50 |

| | Total | |
|--|-------|--|



Thurston Law Offices LLC
100 Springdale Rd A3
PMB 287
Cherry Hill NJ 08003

# Invoice

| Date | Invoice # |
|------|-----------|
| 5/2/2022 | 2301 |

| Bill To |
|---------|
| M Nikolaeva
c/o JOHN RUE & ASSOCIATES
1 Fairview Ave, Ste 14
Phillipsburg, NJ 08865-1230 |

| Due Date |
|----------|
| 5/2/2022 |

| Project | |
|---------|--|

| Service Date | Description | Time | Amount |
|--------------|-------------|------|--------|
| 4/14/2022 | Conference call with client re strategy and legal advice on proceeding forward and settlement opportunities; legal analysis of potential issues re same; email from client confirming authority on settlement and strategy; | 1.2 | 630.00 |
| 4/15/2022 | Multiple email exchanges re opposition to STBOE's Cross-MTD; | 0.3 | 157.50 |
| 4/25/2022 | Receive and review via ECF STBOE's Amended Notice of Motion of Cross-MTD; legal analysis re same; email exchange with co-counsel re same and legal advice; | 0.3 | 157.50 |

| | **Total** | **$15,015.00** |
|--|-----------|----------------|



Thurston Law Offices LLC
100 Springdale Rd A3
PMB 287
Cherry Hill NJ 08003

# Invoice

| Date | Invoice # |
|------|-----------|
| 6/2/2022 | 2318 |

| Bill To |
|---------|
| M Nikolaeva<br>c/o JOHN RUE & ASSOCIATES<br>1 Fairview Ave, Ste 14<br>Phillipsburg, NJ 08865-1230 |

| Due Date |
|----------|
| 6/2/2022 |

| Project | |
|---------|---|

| Service Date | Description | Time | Amount |
|--------------|-------------|------|--------|
| 5/1/2022 | Correspondence exchange with client re status update and legal advice on online posting; | 0.2 | 105.00 |
| 5/1/2022 | Receive and review via email transcript from 8/24/21 hearing in due process case; legal analysis re same and forward to co-counsel; | 0.8 | 420.00 |
| 5/1/2022 | Receive and review via eCourts multiple filings re continuation of briefing deadlines and status; legal analysis re same; | 0.4 | 210.00 |
| 5/2/2022 | Review proposed changes to draft opposition to STBOE's Cross-MTD; amend and supplement opposition brief; prepare final, file and serve via ECF; | 0.8 | 420.00 |
| 5/5/2022 | Review file and update status report; | 0.4 | 210.00 |
| 5/9/2022 | Receive and review via ECF STBOE's reply in support of cross-motion to dismiss; legal analysis re same; | 1.2 | 630.00 |
| 5/10/2022 | Legal analysis and research re 'race to the courthouse' argument for App Div brief; further supplement opening brief; | 0.8 | 420.00 |
| 5/11/2022 | Strategy discussion and legal analysis re STBOE's persistent positions contrary to law and filing second motion for sanctions; | 0.4 | 210.00 |
| 5/12/2022 | Amend and supplement Second Motion for Rule 11 Sanctions; prepare Cert RCT re service of safe harbor letter; file and serve same via ECF; | 0.5 | 262.50 |
| 5/17/2022 | Amend and supplement Appellants' Opening Brief; legal research re same; | 2.3 | 1,207.50 |
| 5/19/2022 | Amend and supplement Appellants' Opening Brief; legal research re same; | 0.9 | 472.50 |
| 5/20/2022 | Amend and supplement Appellants' Opening Brief; legal research re same; | 2.1 | 1,102.50 |
| 5/22/2022 | Amend and supplement Appellants' Opening Brief; legal research re same; | 1.7 | 892.50 |
| 5/23/2022 | Amend and supplement Appellants' Opening Brief; legal analysis and strategy discussion with co-counsel re same and review of draft; | 2.8 | 1,470.00 |
| 5/23/2022 | Receive and review via ECF STBOE and counsel's opposition to Second Motion for Rule 11 Sanctions; legal analysis re same; | 1.7 | 892.50 |

| | **Total** |
|--|--|



Thurston Law Offices LLC
100 Springdale Rd A3
PMB 287
Cherry Hill NJ 08003

# Invoice

| Date | Invoice # |
|------|-----------|
| 6/2/2022 | 2318 |

| Bill To |
|---------|
| M Nikolaeva<br>c/o JOHN RUE & ASSOCIATES<br>1 Fairview Ave, Ste 14<br>Phillipsburg, NJ 08865-1230 |

| Due Date |
|----------|
| 6/2/2022 |

| Project | |
|---------|---|

| Service Date | Description | Time | Amount |
|---|---|---|---|
| 5/24/2022 | Strategy discussion and legal analysis re final draft of Opening Brief and Appendix in App Div case; prepare final; file and serve via eCourts; | 1.1 | 577.50 |
| 5/24/2022 | Receive and review via eCourts deficiency letter from Clerk of Court re opening brief and appendix in App Div case; legal analysis re same; | 0.4 | 210.00 |
| 5/25/2022 | Receive and review via eCourts Motion to appear as Amicus and proposed brief by NJSBA in App Div case; legal analysis re same; | 2.2 | 1,155.00 |
| 5/25/2022 | Amend and supplement opening brief and appendix in App Div case to cure deficiencies in preparation for re-filing; | 1.4 | 735.00 |
| 5/26/2022 | Strategy discussion and legal analysis re NJSBA motion to appear amicus curaie in App Div case; receive and review motion and brief via eCourts; | 2.3 | 1,207.50 |
| 5/26/2022 | Email exchange with State Defendants' counsel re consent for 30 day extension; | 0.2 | 105.00 |
| 5/26/2022 | Amend and correct Opening Brief and Appendix as per deficiency notice from App Div Clerk; file and serve via eCourts; | 1.9 | 997.50 |
| 5/26/2022 | Receive and review via eCourts notice from App Div clerk that State Defendants' request for extension denied because no consent; | 0.1 | 52.50 |
| 5/26/2022 | Receive and review via eCourts State Defendants' request for extension of time for response brief in App Div case; | 0.3 | 157.50 |
| 5/27/2022 | Amend and correct Appendix as per deficiency notice from App Div Clerk; amend Appellants' Opening Brief to correlate with amended Appendix; file and serve via eCourts; receive notice of accepted amendments; | 2.6 | 1,365.00 |
| 5/27/2022 | Receive and review via eCourts modified briefing schedule; legal analysis re same; | 0.1 | 52.50 |
| 5/27/2022 | Strategy discussion and legal analysis re amicus curaie; multiple exchanges with COPAA amicus committee re request to join App Div case to respond to NJSBA brief; | 0.7 | 367.50 |
| 5/27/2022 | Receive and review via eCourts Clerk Deficiency Letter; legal analysis re curing deficiencies; | 0.3 | 157.50 |

| | **Total** | |
|---|---|---|



Thurston Law Offices LLC
100 Springdale Rd A3
PMB 287
Cherry Hill NJ 08003

# Invoice

| Date | Invoice # |
|---|---|
| 6/2/2022 | 2318 |

| Bill To |
|---|
| M Nikolaeva<br>c/o JOHN RUE & ASSOCIATES<br>1 Fairview Ave, Ste 14<br>Phillipsburg, NJ 08865-1230 |

| Due Date |
|---|
| 6/2/2022 |

| Project | |
|---|---|

| Service Date | Description | Time | Amount |
|---|---|---|---|
| 5/30/2022 | Draft Reply in support of Second Motion for Rule 11 Sanctions; prepare final; file and serve via ECF; prepare courtesy copies and cover letter to Judge Vazquez; | 3.1 | 1,627.50 |
| 5/31/2022 | Receive and review via eCourts letter request from State Defendants for extension of time to file opposition brief in App Div case and new briefing schedule; | 0.3 | 157.50 |
| 5/31/2022 | Receive and review multiple email exchanges with counsel re STBOE request for ext time to file opposition brief in App Div case; receive and review via eCourts letter request and revised schedule from clerk; | 0.4 | 210.00 |

| | Total | $18,060.00 |
|---|---|---|



Thurston Law Offices LLC
100 Springdale Rd A3
PMB 287
Cherry Hill NJ 08003

# Invoice

| Date | Invoice # |
|---|---|
| 6/2/2022 | 2319 |

| Bill To |
|---|
| M Nikolaeva<br>c/o JOHN RUE & ASSOCIATES<br>1 Fairview Ave, Ste 14<br>Phillipsburg, NJ 08865-1230 |

| Due Date |
|---|
| 6/2/2022 |

| Project | |
|---|---|

| Service Date | Description | Time | Amount |
|---|---|---|---|
| 5/4/2022 | Courtesy copy to Judge Vazquez | | 3.16 |
| 5/31/2022 | Courtesy copies to Judge Vazquez | | 2.76 |
| | Total Reimbursable Expenses | | 5.92 |

| | Total | $5.92 |
|---|---|---|



Thurston Law Offices LLC
100 Springdale Rd A3
PMB 287
Cherry Hill NJ 08003

# Invoice

| Date | Invoice # |
|---|---|
| 7/5/2022 | 2331 |

| Bill To |
|---|
| M Nikolaeva
c/o JOHN RUE & ASSOCIATES
1 Fairview Ave, Ste 14
Phillipsburg, NJ 08865-1230 |

| Due Date |
|---|
| 7/5/2022 |

| Project | |
|---|---|

| Service Date | Description | Time | Amount |
|---|---|---|---|
| 6/9/2022 | Email exchanges with COPAA Amicus representative re App Div case and brief; legal analysis re same; | 0.2 | 105.00 |
| 6/10/2022 | Receive and review Order and notices via eCourts re NJSBA amicus acceptance and briefing; | 0.2 | 105.00 |
| 6/13/2022 | Email exchange with potential Amicus and legal strategy; | 0.2 | 105.00 |
| 6/13/2022 | Email exchanges and strategy discussion re amicus briefing; | 0.2 | 105.00 |
| 6/15/2022 | Multiple exchanges re COPAA Amicus in App Div case and strategy discussion; | 0.3 | 157.50 |
| 6/16/2022 | Strategy discussion with co-counsel re Rule 12(c) motion and status of case; | 0.5 | 262.50 |
| 6/16/2022 | Prepare for and participate in conference call with COPAA representatives and co-counsel re Amicus brief in App Div case; legal analysis re same; | 1.1 | 577.50 |
| 6/24/2022 | Strategy discussion and legal analysis re Judge Vazquez denying motions to dismiss Counterclaim and sanctions I and response to Counterclaim; | 0.6 | 315.00 |
| 6/24/2022 | Receive and review via ECF Judge Vazquez's Order and Opinion denying motions to dismiss Counterclaim and sanctions I; legal analysis re same; | 0.9 | 472.50 |

| | Total | $2,205.00 |
|---|---|---|



Thurston Law Offices LLC
100 Springdale Rd A3
PMB 287
Cherry Hill NJ 08003

# Invoice

| Date | Invoice # |
|---|---|
| 8/3/2022 | 2344 |

### Bill To

M Nikolaeva
c/o JOHN RUE & ASSOCIATES
1 Fairview Ave, Ste 14
Phillipsburg, NJ 08865-1230

| Due Date |
|---|
| 8/3/2022 |

| Project | |
|---|---|

| Service Date | Description | Time | Amount |
|---|---|---|---|
| 7/4/2022 | Correspondence to co-counsel with strategy discussion and legal analysis re response to Counterclaim and potential future appeal issues; | 0.4 | 210.00 |
| 7/5/2022 | Strategy discussion and legal analysis re timing of and proper form of motion for judgment in federal case; | 0.4 | 210.00 |
| 7/6/2022 | Prepare Answer to Counterclaim and Affirmative Defenses; file and serve same via ECF; | 1.1 | 577.50 |
| 7/13/2022 | Receive and review via email decision by COPAA not to enter as amicus in App Div case; legal analysis re same; | 0.2 | 105.00 |
| 7/22/2022 | Email exchange with State Defendants' counsel re extension of time request on App Div brief; | 0.2 | 105.00 |
| 7/22/2022 | Email exchanges with State Defendants' counsel re request for another extension of time to file statement in lieu of brief in App Div case; | 0.3 | 157.50 |
| 7/25/2022 | Email to COPAA amicus representative re decision not to enter as amicus in App Div case; | 0.2 | 105.00 |
| 7/25/2022 | Conference call with co-counsel re strategy discussion and pending motion to dismiss and App Div case; | 0.2 | 105.00 |
| 7/26/2022 | Receive and review via eCourts state defendants' motion to ext time to file response brief in App Div case; legal analysis re same; | 0.5 | 262.50 |
| 7/27/2022 | Receive and review via eCourts STBOE's response brief in App Div case; legal analysis re same in preparation for reply brief; | 2.5 | 1,312.50 |
| 7/28/2022 | Receive and review via eCourts notice that STBOE's brief accepted in App Div case and triggering timeline for reply; legal analysis re same; | 0.1 | 52.50 |
| 7/29/2022 | Strategy discussions and legal analysis re STBOE's response brief in App Div case in preparation for reply brief; | 0.3 | 157.50 |

| | **Total** | **$3,360.00** |
|---|---|---|



Thurston Law Offices LLC
100 Springdale Rd A3
PMB 287
Cherry Hill NJ 08003

# Invoice

| Date | Invoice # |
|------|-----------|
| 9/12/2022 | 2353 |

| Bill To |
|---------|
| M Nikolaeva<br>c/o JOHN RUE & ASSOCIATES<br>1 Fairview Ave, Ste 14<br>Phillipsburg, NJ 08865-1230 |

| Due Date |
|----------|
| 9/12/2022 |

| Project | |
|---------|--|

| Service Date | Description | Time | Amount |
|---|---|---|---|
| 8/1/2022 | Begin draft of App Div Reply Brief; legal research re same; | 1.8 | 945.00 |
| 8/2/2022 | Continue draft of App Div Reply Brief; legal research re same; | 2.9 | 1,522.50 |
| 8/3/2022 | Continue draft of App Div Reply Brief; legal research re same; | 1.5 | 787.50 |
| 8/4/2022 | Continue draft of App Div Reply Brief; legal research re same; | 2.6 | 1,365.00 |
| 8/4/2022 | Receive and review via eCourts State Defendants' Statement in Lieu of Opposition Brief in App Div case; legal analysis re same; | 0.8 | 420.00 |
| 8/4/2022 | Receive and review via eCourts notice from Clerk that reply brief is due 8/15; legal analysis re same; | 0.1 | 52.50 |
| 8/5/2022 | Legal research and analysis re STBOE's appellate division argument on standing; strategy discussion re response to same; | 0.8 | 420.00 |
| 8/5/2022 | Prepare lengthy letter to STBOE counsel re STBOE's appellate division argument on standing, violation of RPCs, and demands re same; | 0.4 | 210.00 |
| 8/5/2022 | Email exchanges with STBOE counsel re STBOE's appellate division argument on standing, violation of RPCs, and demands re same; | 0.3 | 157.50 |
| 8/6/2022 | Continue draft of App Div Reply Brief; legal research re same; | 3 | 1,575.00 |
| 8/7/2022 | Continue draft of App Div Reply Brief; legal research re same; | 2.1 | 1,102.50 |
| 8/8/2022 | Continue draft of App Div Reply Brief; legal research re same; | 3.8 | 1,995.00 |
| 8/8/2022 | Receive and review via eCourts Order granting State Defendants' extension of time to file opposition letter; | 0.1 | 52.50 |
| 8/9/2022 | Continue draft of App Div Reply Brief; legal research re same; | 4.4 | 2,310.00 |
| 8/10/2022 | Finalize draft of App Div Reply Brief; legal analysis and discussion with co-counsel re same; prepare final for filing with eCourts and update brief re same; | 3.4 | 1,785.00 |
| 8/10/2022 | Receive and review via eCourts Brief Deficiency Letter from clerk; legal analysis re same; | 0.3 | 157.50 |
| 8/10/2022 | Amend and supplement App Div brief to cure deficiencies; prepare final; file and serve via eCourts; | 1.8 | 945.00 |
| 8/10/2022 | Receive and review notice via eCourts that reply brief in App Div case accepted and requirement to send hard copies; | 0.1 | 52.50 |
| 8/11/2022 | Prepare hard copies for filing with App Div; | 0.4 | 210.00 |
| 8/23/2022 | Receive and review via ECF Opinion and Order from Judge Vazquez denying State Defendants' MTD;  legal analysis re same; | 1.7 | 892.50 |

| | **Total** |
|--|-----------|



Thurston Law Offices LLC
100 Springdale Rd A3
PMB 287
Cherry Hill NJ 08003

# Invoice

| Date | Invoice # |
|---|---|
| 9/12/2022 | 2353 |

| Bill To |
|---|
| M Nikolaeva<br>c/o JOHN RUE & ASSOCIATES<br>1 Fairview Ave, Ste 14<br>Phillipsburg, NJ 08865-1230 |

| Due Date |
|---|
| 9/12/2022 |

| Project | |
|---|---|

| Service Date | Description | Time | Amount |
|---|---|---|---|
| 8/23/2022 | Strategy discussion and legal analysis re Opinion and Order from Judge Vazquez denying State Defendants' MTD; | 0.3 | 157.50 |
| 8/24/2022 | Email exchanges with clients re Opinion and Order from Judge Vazquez denying State Defendants' MTD with strategy discussion and legal advice re same; | 0.3 | 157.50 |
| 8/24/2022 | Receive and review lengthy email from client seeking legal advice on several issues in case; legal analysis re same; | 0.3 | 157.50 |

| | Total | $17,430.00 |
|---|---|---|



Thurston Law Offices LLC
100 Springdale Rd A3
PMB 287
Cherry Hill NJ 08003

# Invoice

| Date | Invoice # |
|------|-----------|
| 9/28/2022 | 2363 |

| Bill To |
|---------|
| M Nikolaeva<br>c/o JOHN RUE & ASSOCIATES<br>1 Fairview Ave, Ste 14<br>Phillipsburg, NJ 08865-1230 |

| Due Date |
|----------|
| 9/28/2022 |

| Project | |
|---------|---|

| Service Date | Description | Time | Amount |
|--------------|-------------|------|--------|
| 9/9/2022 | Email exchange with State Defendants' counsel re extension of time to answer complaint; | 0.2 | 105.00 |
| 9/9/2022 | Receive and review via ECF State Defendants' application for ext time to answer complaint and form order; legal analysis re same; | 0.2 | 105.00 |
| 9/12/2022 | Lengthy email to client re status with legal advice on several issues in case, including denial of NJDOE's motion to dismiss and App Div case; | 0.4 | 210.00 |
| 9/12/2022 | Receive and review via ECF Order from Judge Allen granting State Defendants' ext time to answer complaint; legal analysis re same; | 0.2 | 105.00 |

| | Total | $525.00 |
|---|-------|---------|



Thurston Law Offices LLC
100 Springdale Rd A3
PMB 287
Cherry Hill NJ 08003

# Invoice

| Date | Invoice # |
|------|-----------|
| 11/3/2022 | 2382 |

| Bill To |
|---------|
| M Nikolaeva<br>c/o JOHN RUE & ASSOCIATES<br>1 Fairview Ave, Ste 14<br>Phillipsburg, NJ 08865-1230 |

| Due Date |
|----------|
| 11/3/2022 |

| Project | |
|---------|--|

| Service Date | Description | Time | Amount |
|--------------|-------------|------|--------|
| 10/5/2022 | Strategy discussion and legal analysis re State Defendants' potential position on settlement and request for ext time to answer; prepare for settlement call re same; | 0.5 | 262.50 |
| 10/7/2022 | Receive and review via ECF State Defendants' application for ext time to Answer the complaint and form proposed Order; legal analysis re same; | 0.2 | 105.00 |
| 10/11/2022 | Receive and review via ECF Order from Judge Allen granting State Defendants ext time to answer complaint; legal analysis re same; | 0.1 | 52.50 |
| 10/11/2022 | Strategy discussion and legal analysis re State Defendants' settlement offer and counter-issues to raise, especially non-resolution of NJ App Div case; exchange drafts of email to DAG Bohn re same and settlement demand; | 0.9 | 472.50 |
| 10/19/2022 | Multiple email exchanges with State Defendants' counsel re additional time to answer complaint and reasons therefor and warning of no more extensions with legal analysis; receive and review via ECF State Defendants' letter request for additional time by consent; | 1.1 | 577.50 |
| 10/20/2022 | Receive and review via ECF Order from Judge Allen granting ext time to State Defendants to answer complaint to 11/4/22; legal analysis re same; | 0.1 | 52.50 |

| | **Total** | **$1,522.50** |
|--|-----------|---------------|



Thurston Law Offices LLC
100 Springdale Rd A3
PMB 287
Cherry Hill NJ 08003

# Invoice

| Date | Invoice # |
| --- | --- |
| 12/4/2022 | 2392 |

**Bill To**

M Nikolaeva
c/o JOHN RUE & ASSOCIATES
1 Fairview Ave, Ste 14
Phillipsburg, NJ 08865-1230

| Due Date |
| --- |
| 12/4/2022 |

| Project | |
| --- | --- |

| Service Date | Description | Time | Amount |
| --- | --- | --- | --- |
| 11/2/2022 | Receive and review email from client re status inquiry and seeking legal advice; | 0.1 | 52.50 |
| 11/3/2022 | Strategy discussion and legal analysis re State Defendants' answer and response thereto; work product as to strategy; | 0.4 | 210.00 |
| 11/3/2022 | Receive and review via ECF State Defendants' Answer and Affirmative Defenses to Amended Complaint; legal analysis re same; | 0.6 | 315.00 |
| 11/4/2022 | Receive and review via ECF Order from Judge Allen re initial conference and Rule 26 requirements; legal analysis re same; | 0.8 | 420.00 |
| 11/7/2022 | Receive and review via ECF Order and Opinion from Judge Vazquez re STBOE's motion to dismiss; legal analysis re same and strategy re motion for judgment on the pleadings; | 1.5 | 787.50 |
| 11/8/2022 | Prepare status update to client and legal analysis and advice; send email to client re same; | 0.3 | 157.50 |
| 11/8/2022 | Strategy discussion and legal analysis re Judge Vazquez's decision on STBOE cross-motion to dismiss and motion for judgment on the pleadings; | 0.3 | 157.50 |
| 11/9/2022 | Begin draft motion for judgment on the pleadings, NOM, and proposed order; legal research re same for brief; | 1.6 | 840.00 |
| 11/10/2022 | Amend and supplement draft motion for judgment on the pleadings, NOM, and proposed order; email to co-counsel for review and changes; | 3.1 | 1,627.50 |
| 11/15/2022 | Amend and supplement motion for jgmt on the pleadings and proposed Order; prepare final; file and serve via ECF; prepare courtesy copies for Judge Vazquez; | 1.7 | 892.50 |
| 11/15/2022 | Strategy discussion and legal analysis re draft motion for judgment on the pleadings; | 0.4 | 210.00 |
| 11/17/2022 | Lengthy email exchange with client re status and Rule 12(c) motion with legal advice and strategy discussion; | 0.4 | 210.00 |
| 11/22/2022 | Email exchange with STBOE counsel re adjournment of Rule 12(c) motion; | 0.2 | 105.00 |
| 11/22/2022 | Email exchange with STBOE counsel re adjournment of motion for judgment on the pleadings for 2 cycles; legal analysis re same; | 0.2 | 105.00 |

| | **Total** | |
| --- | --- | --- |



Thurston Law Offices LLC
100 Springdale Rd A3
PMB 287
Cherry Hill NJ 08003

# Invoice

| Date | Invoice # |
|------|-----------|
| 12/4/2022 | 2392 |

| Bill To |
|---------|
| M Nikolaeva<br>c/o JOHN RUE & ASSOCIATES<br>1 Fairview Ave, Ste 14<br>Phillipsburg, NJ 08865-1230 |

| Due Date |
|----------|
| 12/4/2022 |

| Project | |
|---------|---|

| Service Date | Description | Time | Amount |
|--------------|-------------|------|--------|
| 11/23/2022 | Receive and review via ECF letter from STBOE counsel to Judge Vazquez re adjournment of motion for judgment on the pleadings for 2 cycles; legal analysis re same; | 0.3 | 157.50 |
| 11/28/2022 | Receive and review via ECF Order signed by Judge Vazquez granting 2 cycle adjournment of MJP with return date 1/17/23; legal analysis re same; | 0.2 | 105.00 |
| 11/29/2022 | Receive and review via ECF Text Order from Judge Allen adjourning initial conference; legal analysis re same; | 0.1 | 52.50 |

| | **Total** | **$6,405.00** |
|---|---|---|



Thurston Law Offices LLC
100 Springdale Rd A3
PMB 287
Cherry Hill NJ 08003

# Invoice

| Date | Invoice # |
|------|-----------|
| 12/4/2022 | 2393 |

| Bill To |
|---------|
| M Nikolaeva<br>c/o JOHN RUE & ASSOCIATES<br>1 Fairview Ave, Ste 14<br>Phillipsburg, NJ 08865-1230 |

| Due Date |
|----------|
| 12/4/2022 |

| Project | |
|---------|--|

| Service Date | Description | Time | Amount |
|--------------|-------------|------|--------|
| 11/17/2022 | Courtesy copies to Judge Vazquez | | 2.64 |

| | Total | $2.64 |
|--|-------|-------|



Thurston Law Offices LLC
100 Springdale Rd A3
PMB 287
Cherry Hill NJ 08003

# Invoice

| Date | Invoice # |
|------|-----------|
| 2/5/2023 | 2411 |

| Bill To |
|---------|
| M Nikolaeva
c/o JOHN RUE & ASSOCIATES
1 Fairview Ave, Ste 14
Phillipsburg, NJ 08865-1230 |

| Due Date |
|----------|
| 2/5/2023 |

| Project | |
|---------|--|

| Service Date | Description | Time | Amount |
|--------------|-------------|------|--------|
| 12/19/2022 | Receive and review via ECF letter from State Defendants' counsel requesting adjournment of MJP; legal analysis re same | 0.2 | 105.00 |
| 12/21/2022 | Prepare letter to Judge Vazquez opposing application for adjournment of MJP return date; file and serve via ECF | 0.4 | 210.00 |
| 12/21/2022 | Receive and review via ECF Order granting adjournment of MJP | 0.1 | 52.50 |
| 1/22/2023 | Email exchanges with client re status of case and pending motions; | 0.3 | 157.50 |
| 1/23/2023 | Receive and review via ECF State Defendants' opposition to MJP; legal analysis re same; | 1.5 | 787.50 |
| 1/23/2023 | Receive and review via ECF Sparta Twp's opposition to MJP; legal analysis re same; | 1.8 | 945.00 |
| 1/24/2023 | Begin draft combined reply in support of MJP; legal research re same; | 1.6 | 840.00 |
| 1/25/2023 | Continue draft combined reply in support of MJP; supplemental legal research re same; | 1.3 | 682.50 |
| 1/26/2023 | Continue draft combined reply in support of MJP; | 0.7 | 367.50 |
| 1/27/2023 | Continue draft combined reply in support of MJP; | 1.4 | 735.00 |
| 1/28/2023 | Continue draft combined reply in support of MJP; | 0.6 | 315.00 |
| 1/29/2023 | Amend, supplement, and finalize combined reply in support of MJP; file and serve same via ECF; | 2.8 | 1,470.00 |

| | **Total** | **$6,667.50** |
|--|-----------|---------------|



Thurston Law Offices LLC
100 Springdale Rd A3
PMB 287
Cherry Hill NJ 08003

# Invoice

| Date | Invoice # |
|---|---|
| 2/28/2023 | 2418 |

| Bill To |
|---|
| M Nikolaeva
c/o JOHN RUE & ASSOCIATES
1 Fairview Ave, Ste 14
Phillipsburg, NJ 08865-1230 |

| Due Date |
|---|
| 2/28/2023 |

| Project | |
|---|---|
| | |

| Service Date | Description | Time | Amount |
|---|---|---|---|
| 2/21/2023 | Receive and review via ECF Text Order entered by Judge Vazquez administratively terminating MJP until administrative record is filed; legal analysis re same; | 0.2 | 105.00 |
| 2/21/2023 | Strategy discussion with co-counsel re Text Order entered by Judge Vazquez administratively terminating MJP until administrative record is filed; | 0.6 | 315.00 |
| 2/21/2023 | Prepare lengthy email to NJOSEP re Text Order entered by Judge Vazquez administratively terminating MJP until administrative record is filed and prior requests to transmit record to federal court; | 0.4 | 210.00 |
| 2/21/2023 | Multiple email exchanges with all counsel re obtaining administrative record to comply with  Text Order entered by Judge Vazquez; | 0.7 | 367.50 |
| 2/22/2023 | Additional discussion with counsel re obtaining administrative record and preparing index to comply with Text Order entered by Judge Vazquez; | 0.4 | 210.00 |
| 2/23/2023 | Email exchange with client re status report on case; | 0.3 | 157.50 |
| 2/23/2023 | Receive and review via email from Martha Arnold, NJOSEP, administrative record electronically and begin preparation of index for filing; | 1.1 | 577.50 |
| 2/27/2023 | Email exchange with counsel for State Defendants re administrative record provided by NJOSEP and compliance with Judge Vazquez's order, confirmation of receipt; | 0.2 | 105.00 |
| 2/27/2023 | Review administrative record and begin preparation of index; | 2.3 | 1,207.50 |
| 2/28/2023 | Continue review of administrative record and preparation of index; prepare for final; file and serve via ECF; | 1.8 | 945.00 |

| | Total | $4,200.00 |
|---|---|---|



Thurston Law Offices LLC
100 Springdale Rd A3
PMB 287
Cherry Hill NJ 08003

# Invoice

| Date | Invoice # |
|------|-----------|
| 2/28/2023 | 2419 |

| Bill To |
|---------|
| M Nikolaeva<br>c/o JOHN RUE & ASSOCIATES<br>1 Fairview Ave, Ste 14<br>Phillipsburg, NJ 08865-1230 |

| Due Date |
|----------|
| 2/28/2023 |

| Project | |
|---------|--|

| Service Date | Description | Time | Amount |
|--------------|-------------|------|--------|
| 2/3/2023 | Courtesy copies to Judge Vazquez | | 3.90 |

| | Total | $3.90 |
|--|-------|-------|



Thurston Law Offices LLC
100 Springdale Rd A3
PMB 287
Cherry Hill NJ 08003

# Invoice

| Date | Invoice # |
|------|-----------|
| 4/4/2023 | 2427 |

| Bill To |
|---------|
| M Nikolaeva<br>c/o JOHN RUE & ASSOCIATES<br>1 Fairview Ave, Ste 14<br>Phillipsburg, NJ 08865-1230 |

| Due Date |
|----------|
| 4/4/2023 |

| Project | |
|---------|---|

| Service Date | Description | Time | Amount |
|--------------|-------------|------|--------|
| 3/14/2023 | Prepare lengthy correspondence to client re status of case and pending motions with legal analysis and advice; | 0.5 | 262.50 |
| | | **Total** | **$262.50** |

**Thurston Law Offices LLC**
100 Springdale Rd A3
Cherry Hill, NJ  08003 US
+1 8563355291
rthurston@schoolkidslawyer.com
http://schoolkidslawyer.com

# Invoice



| BILL TO |
| --- |
| M Nikolaeva |
| c/o JOHN RUE & ASSOCIATES |
| 1 Fairview Ave, Ste 14 |
| Phillipsburg, NJ  08865-1230 |

| INVOICE # | DATE | TOTAL DUE | DUE DATE | TERMS | ENCLOSED |
| --- | --- | --- | --- | --- | --- |
| 2450 | 06/01/2023 | $1,102.50 | 07/01/2023 | Net 30 | |

| DATE | ACTIVITY | DESCRIPTION | QTY | RATE | AMOUNT |
| --- | --- | --- | --- | --- | --- |
| 05/17/2023 | **525** | Receive and review via ECF Substitution of Attorneys for State Defendants; legal analysis re same; | 0:06 | 525.00 | 52.50 |
| 05/24/2023 | **525** | Receive and review via eCourts Opinion from App Div on pending appeal; legal analysis re same; | 1:06 | 525.00 | 577.50 |
| 05/24/2023 | **525** | Legal research and prepare draft letter to Judge Vazquez re Federal Preemption Doctrine and analysis why the App Div's decision is legal error and should be effectively overturned by the federal court; obtain approval from co-counsel John Rue; file and serve same via ECF; | 0:36 | 525.00 | 315.00 |
| 05/25/2023 | **525** | Lengthy email to clients re App Div decision, letter to Judge Vazquez with legal advice and strategy going forward; | 0:18 | 525.00 | 157.50 |

|  | SUBTOTAL | 1,102.50 |
| --- | --- | --- |
|  | TAX | 0.00 |
|  | TOTAL | 1,102.50 |
|  | BALANCE DUE | **$1,102.50** |