UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

M.N., et al. ,

Plaintiff,

vs.

SPARTA TOWNSHIP BOARD OF EDUCATION, et al.,

Defendant.

Case No. 2:21-cv-19977

Newark, New Jersey

Tuesday, September 10, 2024

. . . . . . . . . . . . . . . .

TRANSCRIPT OF ORAL ARGUMENT AND CONFERENCE
BEFORE THE HONORABLE JESSICA S. ALLEN
UNITED STATES MAGISTRATE JUDGE

APPEARANCES (the parties appeared via teleconference):

For the Plaintiff: KRISTA RUE, ESQ.
John Rue and Associates
100 Overlook Center, 2nd Floor #9211
Princeton, NJ 08540
(862) 283-3155
khaley@johnruelaw.com

For the Sparta Defendants: KATHERINE A. GILFILLAN, ESQ.
Schenck, Price, Smith & King, LLP
351 Sparta Avenue
Sparta, NJ 07871
(973) 631-7857
kag@spsk.com

(APPEARANCES CONTINUED)

Audio Operator:

Transcription Service: KING TRANSCRIPTION SERVICES
3 South Corporate Drive, Suite 203
Riverdale, NJ 07457
(973) 237-6080

Proceedings recorded by electronic sound recording; transcript produced by transcription service.

APPEARANCES (continued):

For the State: RYAN SILVER, ESQ.
Deputy Attorney General

For the intervener: ROBERT THURSTON, ESQ.
Thurston Law Offices, LLC
433 River Road #1315
Highland Park, NJ 08904
(856) 335-5291
rthurston@schoolkidslawyer.com

INDEX

| PROCEEDING | PAGE |
| --- | --- |
| oral argument | 4 |
| motion | 39 |
| case management conference | 40 |
| ARGUMENTS | PAGE |
| by Mr. Thurston | 5, 16 |
| by Ms. Rue | 14, 21 |
| BY THE COURT | PAGE |
| Findings | 22 |
| motion denied | 37 |
| motion to restore granted | 40 |

(Proceedings commence)

THE COURT: All right. We're here on the record in a case called M.N. et al -- it's v. Sparta Township Board of Education, et al.. It's 21-19977. We're here for oral argument on the motion of the Thurston Law Firm to intervene in this case, and we're here for a case management conference. Can I please have appearances of counsel? Let's begin with Plaintiff's counsel.

MS. RUE: Good afternoon, Your Honor. Krista Rue from the Law Firm of John Rue and Associates on behalf of M.N.

THE COURT: Okay. And who do we have for the Defense?

MS. GILFILLAN: Good afternoon, Your Honor. Katherine Gilfillan of the Law Firm of Schenck, Price, Smith and King on behalf of the Sparta Board of Ed.

THE COURT: All right. And thank you, who do we have for the Thurston Law Firm, the interveners?

MR. SILVER: Oh, Your Honor -- I'm sorry. Just -- just to quickly -- Deputy Attorney General Ryan Silver on behalf of the State Defendants.

THE COURT: Oh, sorry.

MR. SILVER: Yes, no problem.

THE COURT: Okay, thank you.

MR. THURSTON: And, Your Honor, Robert Thurston

here on behalf of Thurston Law Offices, LLC.

THE COURT: All right. Thank you. All right. So, I've obviously had a chance to review the -- the respective submissions in connection with the motion to intervene. I note that obviously Mr. Thurston's Law Firm submitted papers in support of the motion, and that the Plaintiffs by way of Ms. Rue had submitted opposition to the motion. I didn't receive anything from any of the defendants. And I should note I guess that the motion is at docket entry number 111.

To be clear though, as I noted in a prior text order, I did not consider the Plaintiff's surreply, docket entry number 120. I had addressed that, as I mentioned, in my August 27, 2024 Order.

I guess I'll ask -- begin with Mr. Thurston. I don't have any questions, but if there's anything you'd like to highlight in your submission, I'll -- I'll certainly hear from Mr. Thurston and then Plaintiff's counsel.

MR. THURSTON: Actually, yeah, I -- I won't -- you know, since you've read the papers I'm not going to bother you with you know all the minutia of detail. There is one case citation I'd like to offer that was not in my moving papers. I've actually -- I discovered it actually today in preparing for this hearing. The case caption is CPR Management S.A., v. Devon Park Bioventures and it's at 19 F.4th 236, 3rd Cir. case, 2021. And I'm going to -- I'd like

to just read a quote to the Court from page 242 of that Decision. And it -- it says this: Rule 24 allows non-parties to ensure their interests in the merits of the case are not adversely affected by litigation conducted without their participation. And that's citing Stallworth v. Monsanto Company, 558 F.2nd 257 at 265, 5th Cir. 1997 case, and also citing to Buckner v. Schaefer, 14 F.3d 593 at -- *1 it's -- there's a WestLaw reference -- 4th Cir. 1993. And that latter case, the Buckner case noted that an important purpose of Rule 24 is the protection of non-parties from adverse judgments entered in their absence. And then to finish the quote from the first case that I cited is when a non-party is denied intervention it loses its ability to protect its interest in the merits of the litigation, and that ability can only be restored by a successful immediate appeal.

So, the -- the -- the bottom line, Judge, is that unless my law firm's interests are protected by being in this case, the concern is is that they're going to -- you know I'm going to lose the opportunity to -- to pursue those -- pursue that claim. And as -- as is clear from the opposing papers filed by John Rue and Associates -- excuse me -- that they clearly are not going to act on -- on Thurston Law Office's interests. And I don't believe the Plaintiffs will either, so there -- you know, under Rule 24 there's no party to the

case currently who's going to help represent TLO's interests or -- or act on my firm's behalf to -- to -- to pay those fees that I think are -- are due in owing. They're -- you know whether you go under a quantum meruit theory or you go under a charging lien -- attorney charging lien theory, it really is irrelevant. It's fees that are owed by the Plaintiffs and they are kind of subject to -- excuse me -- subject to a finding that there are prevailing parties in this case under IDEA. I think that's all pretty much going to happen, and that speaks to the timeliness of the motion.

You know were it to wait for me -- for me to wait until after there's a finding by this court that they're prevailing parties, at that point it might be almost too late; right? So, and -- and John Rue and Associates can pursue their fees through the Plaintiffs as well, so it's not like they're not going to be protected. The only one that's going to protect my firm is me, frankly.

THE COURT: All right. Well, a few things in response, Mr. Thurston. First -- to be clear, I asked if you wanted to highlight anything, not add anything that wasn't in your submission. To the extent that isn't a new case that you're citing -- CPR case -- it looks like it's a 3rd Circuit case from 2021. So, I'm not in the habit of trying to understand cases that are raised for the first time at oral argument. If it was a new case that just came out at the

time you guys finished briefing this motion and the time of this oral argument, that would a different issue. So, again, I -- I -- I am not -- I'm not in a position to say whether or not the cases do or don't cite the proposition to which you're citing them.

That said, even if -- even if they do support those propositions, which apparently sound like to me like more like black letter law and not necessarily dealing with the particular facts of this case, which is a case brought pursuant to really an IDEA case. And, so I'm still not understanding how you need to intervene in this IDEA case -- it's not a breach of conduct, as you mentioned quantum meruit and unjust enrichment, what have you, which were the basis for theories under -- with respect to your claims that arise out of this of counsel agreement and how that's not a collateral or ancillary issue such that you don't have the ability to pursue any rights and claims that you have pursuant to what maybe sounds like at best a breach of contract claim in other venues, like State Court. I'm not understanding why you need to intervene in this case in order to preserve whatever claims you have arising out of -- an of counsel agreement between two lawyers that are representing the Plaintiff.

MR. THURSTON: So -- yeah. Thank you, Your Honor. Let me kind of address that. So as these cases normally

proceed -- so an IDEA case proceeds to the administrative hearing, the OAL, and then you know goes -- if a -- if a party is not happy, they proceed to appeal that. So, this is actually an -- an appeal of an IDEA Decision.

THE COURT: Right.

MR. THURSTON: And -- so under IDEA -- so there's -- we know there's Federal Court jurisdiction, that clear, under 20 U.S.C. 1415(i)(3) -- and that's (i)(3)(A) I believe. I cited that in my papers.

The -- the other part of this is the attorney's fees that are given under federal statute to a prevailing party, okay. And, so under --

THE COURT: Right, so -- sorry to interrupt you. Isn't it to the prevailing party, which would be the litigant, which here would be if they win, the -- the -- the parent on behalf of the child, not the lawyers.

MR. THURSTON: That's right. That's right, Your Honor.

THE COURT: Okay.

MR. THURSTON: And that's a hundred percent an important point because a contract between my firm and John Rue and Associates is almost irrelevant to that. And -- and since I don't -- since I was fired by John Rue and Associates, I no longer have the ability to work with the Plaintiffs to make sure that I'm repaid for my -- my fees.

So the point is that under the prevailing fee -- a party fees claim under IDEA, since I did a large amount of work on this case, both in the Appellate Division in New Jersey, as well as in this very court when -- when Judge Vazquez was presiding over this case -- and if you can look through the papers you'll see my name on a lot of the papers in this case.

THE COURT: I know you were involved for a year and a half --

MR. THURSTON: So, I did a lot of work for --

THE COURT: Yep, I saw. You were -- you --

MR. THURSTON: What's that?

THE COURT: You were involved in this case for a good year and a half or so. I understand.

MR. THURSTON: Right, and -- and in fact one of the -- one of the key decisions that came out early in the case by Judge Vazquez was that we filed a motion for injunctive relief, and he found that while we didn't meet the irreparable harm standard, we did meet the likelihood of -- of success standard. And that was from three different oral arguments that I had before Judge Vazquez.

The point being, Your Honor, is is that I've earned -- I've done the work. I've earned the fees on this case. But how am I going to get those fees if I'm -- if I'm excluded from this case? The only option and the only thing

that that contract with John Rue and Associates says is that they will pursue prevailing party fees if -- you know on behalf of the Plaintiffs. And, you know which would include my fees.

However, as Your Honor can tell from the opposition papers and the other papers that I've filed, there's clearly an -- an animosity that exists there. How can I feel secure that John Rue and Associates -- Plaintiffs via John Rue and Associates will pursue my fees -- reimbursement of my fees on behalf of my firm? I -- I feel very insecure in that, and therefore nobody can -- nobody can protect that claim.

Finally -- and I'll -- I'll answer your issue whether this is an ancillary claim that comes under State -- State law or State Court. But the problem with that, Your Honor, is -- is two facts. And -- and I -- I discussed this in my brief, is the entire controversy doctrine; right? It's a claim related to this case. If it's not -- if it's not handled within this case, it's going to be barred by the entire controversy doctrine.

The other issue, too, Your Honor, is -- is what's known as the All Writs Act, which says basically that this court has jurisdiction over this case, which would include prevailing party attorney fees -- attorneys fees. If that claim is brought in a -- in a state court or another court, then -- then this court has jurisdiction to pull that case

back in here. So, basically the -- you know this court has to retain jurisdiction over all the claims of this case, which includes my attorneys fees, and -- and -- and I'm the only one who's going to be able to -- and I need to intervene because I'm the only one who can protect the -- those fees.

THE COURT: Well -- all right. A couple of points. Isn't -- isn't your interest, if you will, in this case merely economic? Isn't that what it is? You have a contract between you and another law firm, who happens to be the Plaintiff's counsel in this case. And you're claiming that there may be some sort of breach perhaps. Why -- why do you not have the ability to file a separate law suit for breach of contract. And as it relates to this case, which is -- again, it's about compensatory education, not about attorneys fees or an attorney fee dispute. That's the nature of this action. It's contract dispute.

MR. THURSTON: Well, that's right, Your --

THE COURT: Yeah --

MR. THURSTON: Well, that's right, Your Honor, except I argued -- I -- look, I know this case is not just about fees. This case is about getting relief for the Plaintiffs, which -- and -- and you know, I'm sure you're familiar now with the long history of this case, but it was basically because a kid was denied re-entry back into the school district because he had taken a G.E.D. and they

declared that was a diploma. And, look I'm very strong -- I'm an advocate for special education kids, that's basically ninety-five percent of my practice. And I feel very strongly about the merits of that. But that -- that argument seems to have -- have been resolved, okay, by the New Jersey Supreme Court. So, I'm satisfied that this Court will you know -- it will use that as whether it's collateral estoppel or res judicata, but it's certainly a decision -- it's an issue that's been decided by the highest court in the State of New Jersey. So, therefore -- yes, that issue is important and it was important to me as -- as a member of this case. And, you know I would still be arguing that were John Rue and Associates had not -- had not fired me from this case. So -- so, yes I agree with you. But at this point, yes my interest is economic because in the normal course of things if I was still representing Plaintiffs, in addition to getting this court to acknowledge and -- and apply the New Jersey Supreme Court ruling, I would also be asking for reimbursement of my fees as part of -- as -- you known as part of that claim.

THE COURT: I understand. I understand that -- that a prevailing party is entitled to, among other relief, their fees to be reimbursed. I mean it's a fee shifting statute. But, again it's not a fee dispute -- an attorney fee dispute, this action. It's -- it's -- it's -- it's -- an IDEA claim.

Let me hear from Ms. Rue if you have anything to add or you want to respond?

MS. RUE: I mean, Your -- Your Honor, you've made -- you've pointed out many of the failings of Mr. Thurston's arguments that we noted in our papers. You know, if -- if Mr. Thurston at any point has any claim, it would be against John Rue and Associates, not against any of the parties to this case. This is -- this is not a case about money. This is not even -- you know, this is not a case about who get paid the attorneys fees. It's not a case that's even parallel with the one that -- with the argument it sounded like Mr. Thurston was trying to make about non-parties interests being injured by the outcome of the litigation. He's -- he's not a non-party whose interests are -- are even at stake in this matter. It's a -- it's an IDEA action.

If, and only if the Plaintiff prevails, and then if, and only if, fees are awarded, and then farther down the line if, and only if my law firm fails to honor its contract obligations, then maybe Mr. Thurston might have a State law claim. His claim is not in this court. It's not -- all -- all his attempts to intervene are doing are delaying relief for the Plaintiff, who you know he's basically acting adverse to in this -- by this filing.

THE COURT: Is -- is your -- is your position the same if this case say were instead of going the distance and

results in any kind of adjudication on the merits here in Federal Court, if they were to settle -- the parties -- if the parties were to reach a settlement here which involved a payment let's say of -- of fees, I don't know, are you saying that whether it's a case that's adjudicated on the merits or it's a case that's resolved by way of settlement, this IDEA case, that if Mr. Thurston has any rights, it's pursuant to the counsel agreement he has with your law firm. And, so again if the case settles he would have the same opportunities to pursue his -- really a lien on the file is really what we're talking about; right?

MS. RUE: Yes, yes. I -- that -- that is accurate. And in all fairness our interests in obtaining fees are aligned in this. We of course are going to submit Mr. Thurston's hours for reimbursement. We paid him for those hours.

THE COURT: That was going to be my question --

MS. RUE: Not full hourly rates, but we paid him --

THE COURT: Yeah.

MS. RUE: We paid him pursuant to the contract. You know with the expectation that we would submit this as part of any ultimate fee application or it would be portioned as part of any settlement of fees if we were to reach that. And, then if after that you know Mr. Thurston still feels aggrieved by the apportionment after -- under the contract,

then his remedy is in State Court, not in this Court.

THE COURT: The remedies would be what, to sue for breach of contract?

MS. RUE: Yeah -- yes.

THE COURT: Or quantum meruit or some other theory.

MS. RUE: Or quantum meruit, something under a contract theory, not -- not anything having to do with the IDEA and nothing that even touches on this Court's jurisdiction.

THE COURT: All right. Mr. Thurston, anything to respond?

MR. THURSTON: Yes, Your Honor. Just two quick responses. First of all, a quantum meruit claim is not against a law firm that's hired you as co-counsel. A quantum meruit claim is actually against the client who owes the fees. So, it -- you know, it's -- it's the Plaintiffs who would owe me the fees, not John Rue and Associates. Okay. So, even under -- under either an attorney charging lien theory or a quantum meruit theory, that's -- that's my firm's claim against the Plaintiffs, because I did the work for them. I didn't do the work for John Rue and Associates, I did the work for Plaintiffs. Okay.

The second issue is this, John Rue and Associates did not pay me for this case, at least not for the fees that I've submitted in my motion. Okay. John Rue and Associates

paid me a small hourly fee up to -- and now I've lost the date of this. It was up to I think January of 2022, I believe. Maybe I'm wrong about that. But -- so the fees that I've put in my motion have all occurred after John Rue and Associates could no longer pay that hourly rate. And the agreement was amended to say, okay since we can't pay you an hourly rate anymore, then whatever you bill will -- will be a hundred percent due in owing from the prevailing parties fees, okay. So -- and -- and the --

THE COURT: But isn't -- but I'm sorry to interrupt you, Mr. Thurston. Either way -- and I'm not here to interpret the contract. That's not before me. So whether or not Mr. Rue's law firm is the one who is the signatory and -- and should be paying you out of any award for fees, or your -- the Plaintiffs directly should be paying it, it still gets you down to the same issue then. At best it's a fee dispute. At best it's a claim for attorneys fees, query who under the contract that you entered into should pay you. But it's still at the end of the day the subject of this case; right? It's -- it's -- it's still an IDEA case, and still what you're talking about -- as you mentioned, it's an economic interest that you have. And I'm -- I'm not here to say that they paid you, they haven't paid you yet, your claim is ripe, your claim isn't ripe. But at the end of the day that's really what you're looking to pursue and protect here; right?

It's your economic interest based on the amount of work that you've performed in the litigation. And, so it's an attorney fee dispute; right?

MR. THURSTON: Yes, except for one thing, Your Honor. And there's kind of a twist on that because it's an IDEA case, okay. So, in the normal course of things if you -- if you litigate the case out, right, there's a decision on the merits. Okay. And let's assume for the moment the Plaintiffs win that decision on the merits. Then what comes after that is if the parties can't settle it or resolve the attorneys fees, an attorney --

THE COURT: Yeah, a fee dispute. Yeah, an attorney fee dispute --

MR. THURSTON: Right -- well, wait -- but that fee petition is filed in this Court; right?

THE COURT: Mmm hmm.

MR. THURSTON: So, you know, how -- how is my interest protected with such an adversarial stance by John Rue and Associates if that fee petition has to be filed? Why can I not be a part of that fee petition to protect my firm's interest?

THE COURT: Ms. Rue indicated that she's already or she would submit the hours that you worked to get reimbursed. How is it any different than any other fee petition where there are former attorneys who represented the prevailing

party and now there's new attorneys? You know, I'm not going to tell her how to do her job in terms of what kind of certifications and -- and time records and what have you have to be provided, but you know in the normal course when there's a fee petition that's how those kinds of matters are handled.

MR. THURSTON: Okay. And --

THE COURT: And if you disagree -- if you disagree with that, that they didn't do what they were supposed to do, then maybe there's a rise for a breach of contract.

MR. THURSTON: Okay. But there's one last issue, though, Judge.

THE COURT: Okay.

MR. THURSTON: That we -- I haven't addressed yet, and that -- but it's in my papers. And that is John Rue and Associates have sold their accounts receivable to a -- a lender. Okay.

MS. RUE: That is not accurate.

MR. THURSTON: There's -- I'm trying -- filed --

MS. RUE: Your Honor -- Your Honor --

MR. THURSTON: I've filed the -- excuse me --

MS. RUE: I'm sorry, I -- I've been trying to be patient --

MR. THURSTON: Do not interrupt me, please.

THE COURT: All right. All right. All right. Ms.

Rue -- Ms. Rue, wait a minute. Wait a minute. Wait a minute. Is your objection just on the merits or because there's some confidentiality issue here?

MS. RUE: My objection is on -- on the merits and the relevance of this argument.

THE COURT: All right. I'm going to -- I'm -- I hear you.

MS. RUE: Okay.

THE COURT: I'm going to let Mr. Thurston finish, but be brief. Okay, because I think we're getting a little far afield here of what the issues are. Go ahead, Mr. Thurston, briefly.

MR. THURSTON: Okay. So, basically John Rue and Associates's position is, okay if we have to go to a fee petition or in settlement negotiations, we'll submit your hours and we'll try and get your fees back. However, they have sold their -- they -- they have sold -- there's a U.C.C. statement I've filed in my papers. Okay. They sold their accounts receivable to a lender. That lender only wants their money back. They don't care -- and John Rue and Associates only wants to repay that lender. They -- they have no obligation to get my money over and above that. Okay. So, you know that is a compromise, and that's a compromise of my money. And -- and there's -- you know, I have no way to -- you know argue with a third party -- an

unknown third party, and say no, no, no, wait, you have to cover my fees as well. They don't care.

THE COURT: I'm not -- I'm -- I'm not -- still not understanding why you can't pursue any kind of remedies in other venues.

MR. THURSTON: Well, because --

THE COURT: State Court or otherwise.

MR. THURSTON: Because, (a) this is a case -- prevailing party fees come under the Federal IDEA statute. Number two, it's -- it's -- it's -- it's an entire controversy doctrine that will prevent that being -- from being pursued in another action. And there's also the All Writs Act which also prevents that from being brought in another action.

THE COURT: All right. Ms. Rue, I'll let you be -- I'll let you briefly be heard on -- on the response on the -- what he just said. And then I --

MS. RUE: All right. I -- I will be very brief. To the extent that once there was a U.C.C. statement filed, any -- that has been repaid and the U.C.C. has been vacated. So, I'm not sure what Mr. Thurston is referencing at this point, perhaps old news. But it has nothing to do with whether he has a claim in this Court. If anything, it goes to whether he has a contract claim at some point in the distant future.

THE COURT: All right. All right. I thank you for your submissions. I thank the attorneys for their good arguments and for answering my questions. I -- I'm prepared to issue my -- my findings and my oral rulings at this time.

So, briefly by way of background -- relevant background. On November 12th, 2021 Plaintiff M.N. filed this Individuals with Disabilities Education Act action by and through counsel John D. Rue of John Rue and Associates, individually on behalf of her Plaintiff son, A.D., then a minor. And the nature of it was appealing an administrative final administrative file Decision. You can see generally the complaint, docket entry number 1. As certified in the complaint, on the day before the -- this IDEA action was filed, Plaintiff filed an appeal of the administrative final decision with the Superior Court of New Jersey and the Appellate Division. See, the Complaint at page 26 in the Amended Complaint at page 37.

One -- one month after the instant civil action was filed on December 12th, 2021 Robert Thurston of the Thurston Law Offices appeared as -- entered an appearance as co-counsel on behalf of the Plaintiffs, and that's docket entry number 9. Thereafter, as noted on today's record the parties engaged in extensive dispositive motion practice, including the parties filing respective motions to dismiss, Plaintiff's motion for judgment on the pleadings, Plaintiff's application

for a preliminary injunction. This Court held the initial scheduling conference pursuant to Rule -- Federal Rule of Civil Procedure 16 in abeyance pending the outcome of those dispositive motions and -- and the preliminary injunction application, as well as an application for sanctions.

In a series of opinions and orders, District Judge Vazquez, now retired, denied all the motions and Plaintiff's preliminary injunction action application with the exception of granting in part the Defendant's motion to dismiss. See, for example docket entries number 62, 69, 72, 82, and 99.

As it relates to the instant motion to intervene, on May 24th, 2023 the Appellate Division affirmed the administrative final decision. That's Board of Education of Township of Sparta, Sussex County v. M.N. on behalf of A.D., it's a twenty -- 2023 WestLaw case, 3606292. It's New Jersey Superior Court Appellate Division, again on May 24th, 2023.

On June 19th, 2023 the Thurston Law Firm withdrew as counsel for Plaintiffs, while the Rue Law Firm remained as counsel of record. See docket entry number 98.

On September 1st, 2023 this Court issued an order scheduling the Rule 16 conference for October 24th, 2023 in light of the decision having been made on the dispositive motions. However, before the Rule 16 conference took place on October 24th, 2023, on September 19th, 2023 the Rule Law Firm wrote to the Court requesting, with Defense counsel's

consent, an adjournment of the October 24th Rule 16 conference and all corresponding deadlines because the Plaintiffs had filed a petition for cert to the New Jersey Supreme Court regarding the Decision of the Appellate Division affirming the administrative final decision. That was docket entry number 101, the parties' joint request for the adjournment.

In response to the parties' letter and -- and adjournment request this Court on October 10th, 2023 conducted a telephonic case management conference with the parties wherein the parties consented to the Court issuing an administrative termination order pending the outcome of Plaintiff's petition for cert to the New Jersey Supreme Court. Following that -- that conferences I issued an administrative termination order where I noted that any party may request that this action be reopened and restored to the Court's active docket by filing a letter. And that's my Order at docket entry number 105. In the Order I adjourned the initial scheduling conference for that date, and scheduled another telephone -- status conference for February 13, 2024.

Thereafter, the Court conducted the telephone status conference on February 13th, 2024 and a subsequent conference -- status conference on May 28th, 2024. After the May 28th conference I issued an order scheduling yet another

conference for September 4th, 2024 as the parties continued to await a decision by the New Jersey Supreme Court on Plaintiff's petition for cert.

Before the September 4th conference, on August 8th the Thurston Law Firm filed the instant motion to intervene. Again, that's docket entry number 111. In support of this -- in his supporting certification attorney Robert Thurston certified that on the previous day, August 7th, 2024, the New Jersey Supreme Court reversed the Appellate Division in favor of Plaintiffs here, which also entitles Plaintiffs to relief from this Court. And that's the Supreme Court's Decision. it's WestLaw at 2024 WL 3681547. Again, it's a New Jersey Supreme Court case Decision from August 7th, 2024.

In terms of the instant motion, the gravamen of the instant motion to intervene is that the Thurston Law Firm seeks recognition and enforcement of its -- of counsel agreement with the Rue Firm and Plaintiffs for fees and costs incurred in prosecuting this fee shifting IDEA action and the related State Court administrative proceeding. See the Proposed Intervener Complaint, docket entry number 114, pages 3 and 7. In essence the Thurston firm is seeking -- is asking this Court to enforce its attorneys fees contract and recognize its attorney lien on the file.

In support of its motion the firm argues that it's entitled to intervene as a right pursuant to Federal Rule of

Civil Procedure 24(a)(2) because it satisfies the four requirements set forth 3rd Circuit. See the Moving Brief at pages 6 through 9. The firm primarily asserts that it is "self evident" that its claim for fees quote is a sufficient interest in this litigation warranting intervention as a right. And that's coming from their Moving Brief at page 7. The firm further asserts that its motion is timely, as it was filed "before any judgment or settlement has been entered herein and before Plaintiffs have been declared prevailing parties." It's again coming from their moving brief at page 7. Alternatively, the firm contends that it holds a conditional statutory right to intervene or alleges a sufficiently related claim as required for permissive intervention pursuant to Rule 24(b)(1). That's coming from their moving brief, pages 9 through 7 -- excuse me -- 9 through 10.

In opposition Plaintiffs primarily counter that the Thurston firm seeks "a tangentially related and unvested potential contract claim against JRA". That's the Rue Law firm. That's coming from their opposition as docket entry number 117 at pages 4 through 5. And they argue that's not a sufficient interest in the litigation as required for intervention as right and lacks common questions of law or fact with Plaintiffs' underlying IDEA claim for purposes of permissive intervention. That's coming from the opposition

brief, pages 2 and then pages 4 through 9.

Plaintiffs also argue that regardless of whether the Thurston firm seeks to intervene as of right or permissively, the motion is untimely. Specifically, "both late and premature as TLO waited a year after being fired to seek intervention and nothing has occurred that would merit a holding in this case of prevailing party status." And that's their opposition -- at page 2.

On reply the Thurston Law Firm primarily argues that its interest quote is essentially an attorney charging lien and it's a cognizable interest for purposes of Rule 24(a)(2), and that's coming from their reply brief at page 7.

The Court first turns to the threshold requirement as to whether -- a proposed intervener has made a quote timely motion under Rule 24 of the Federal Rules of Civil Procedure. Again, see Rule 24(a) and (b). Courts in the 3rd Circuit have used three factors to consider whether -- when evaluating the timeliness issue. "(1) how far the proceedings have gone when the movant seeks to intervene; (2) the prejudice which -- prejudice which result a delay might cause to the other parties; and (3) the reason for the delay." That's coming from the In Fine Paper Antitrust Litigation 695 F.2d 494 at page 500. It's a 3rd Circuit case from 1982, internal citations omitted.

As to the first factor the Court notes here that

although this case has been pending for more than two years, the case has been administratively stayed pending the New Jersey Supreme Court's Decision on the petition for cert -- certification. And I also further note that no Rule 16 conference or discovery has been conducted. Accordingly, the proceedings are in their infancy and thus weighs in favor of finding the motion is timely.

However, the issue of prejudice, the second factor, is a closer call. Although no discovery has yet been exchanged, intervention would certainly broaden the scope of discovery to include ancillary issues that do not relate in any way to the allegations and legal claims in Plaintiff's amended complaint. In short the Court finds that on balance the delay posed by the Thurston Firm's proposed intervention would prejudice timely resolution of the parties' rights and interject allegations, claims, and defenses that are -- are best tangentially relevant in this IDEA case.

As to the final factor, reasons for delay, the Thurston firm asserts that the impetus for its motion arose "after it became clear that Plaintiffs are likely to be prevailing parties due to the Decision by the New Jersey Supreme Court." That's coming from their reply brief at pages 8 through 9.

This Court disagrees. This case has been pending for more than two and a half years. Indeed shortly after

this claim was -- this case was filed, the Thurston firm entered its appearance and prosecuted Plaintiffs' IDEA claims. A year and a half later the firm withdrew from the case in June 2023. The firm chose to sit on the sidelines waiting to see how the State Court action would play out before seeking relief from this Court and preserve any purported rights to enforce its fee agreement and lien. The firm's reasons for waiting rings hollow, and as such this Court finds that the reason for delay is not justified. Thus the second and third factors weigh in favor of finding that the firm's motion was untimely filed.

Nevertheless, even if this Court were to find that the motion was timely filed, the Court finds based on the reasons set forth in a minute that the firm failed to -- has failed to establish it has satisfied the requirements for intervention as of right or permissive intervention.

I'm going to first turn to the firm's contention that it is entitled to intervention as a right. Rule 24(a)(2) provides intervention as a right to quote anyone who claims an interest relating to the property or transaction that is the subject of the action and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest unless existing parties adequately represent that interest. The 3rd Circuit has held quote that a non-party is permitted to

intervene under Federal Rule of Civil Procedure 24(a)(2) only if (1) "the application for intervention is timely, (2) the applicant has a sufficient interest in the litigation, (3) the interest may be affected or impaired as a practical matter by the disposition of the actions, and (4) the interest is not adequately represented by an existing party in the litigation." That's the Mountaintop Condo Association v. Dave Stabbert Master Builder case 72 F.3d 361 at page 366. It's a 3rd Circuit case from 1995, quoting Harris v. Pernsley, 820 F.2d 592. It's a 3rd Circuit case from 1987. Quote, each of these requirements must be met to intervene as a right. And that's again the Mountaintop case at page 366. Again, this Court has already found that motion was not timely as to the second and third requirements. The 3rd Circuit has held that the proposed intervener "must demonstrate that there is a tangible threat to a legally cognizable interest." And that's the Mountaintop case at page 366, again quoting Harris at page 601. Quote, a mere economic interest in the outcome of the litigation is insufficient to support a motion to intervene. That's the Mountaintop case again, pages 366 -- 367. Quote, in determining whether a proposed intervener has an interest in a specific fund, as opposed to a purely economic interest, courts consider whether the proposed intervener seeks to recover from a "discrete limited fund." That's Sullivan v.

Borough of Atlantic Highlands case, it's a 2021 WestLaw case 915210 at page 2. It's a District of New Jersey case, March 10th, 2021. Importantly, as it applies to -- to the specific grounds for which the Thurston Law Firm moves to intervene, other courts in this circuit have considered a law firm's motion to intervene in an IDEA action.

For example, Judge Bongiovanni in the Joy B. v. Freehold Regional School District case, it's a 2021 WestLaw case 3773651, it's a District of New Jersey case, August 25th, 2021, denied the motion of the law firm Reisman, Carolla, Gran and Zuba -- the Reisman Law Firm -- to intervene as of right or permissively. As here, the Reisman Law Firm, who represented the Plaintiffs in the previous State Court administrative proceeding, asserted a right to intervene by virtue of its interest in settlement proceeds and the right to any award of fees under the statutory fee shifting provision applicable the Plaintiff's IDEA action. See, generally that -- the Joy B. case, but specifically I pinpoint page 1. Judge Bongiovanni found that the Reisman Law Firm's interests were not sufficient interests in the underlying IDEA litigation and would not be affected or impaired by the disposition of the action. That's the Joy B. case at page 3. In reaching her conclusion Judge Bongiovanni relied on the reasoning of the District Judge Kane in the Susquenita School District v. G.W. case, which involved the

same law firm and wherein Judge Bongiovanni then noted that quote the subject of the litigation was an award of compensatory education to a high school student, and the demand for attorney fees was a "purely collateral dispute based on a contractual relationship." And that's Judge Bongiovanni in the Joy B. case at page 3 quoting Susquenita School District case, which is a 2012 WestLaw case, 1268219 at page 3. It's a Middle District PA case, April 13th, 2012.

In -- in Susquenita Judge Kane found, like Judge Bongiovanni, that the law firm's interests were not sufficient interest, that they were purely economic in nature and found that the claims arose from a quote hourly fee arrangement and they would not be impaired by barring intervention because the proposed interveners had quote adequate alternate recourse, such as "filing any number of legal actions." And that's again from the Susquenita case, 2012 WL 1268219 *4.

This Court finds the reasoning of the Courts in Joy B. and Susquenita instructive as to the second and third requirements, Thurston Law Firm's purported entitlement to fees as per its of counsel agreement is not a sufficient interest, which is purely an economic one, is not a sufficient interest in the outcome of Plaintiffs' IDEA claims and will not be impaired by the disposition of this action. As the Plaintiffs correctly point out the Thurston Law Firm

will have an eventual recourse in State Court, assuming they -- they have a claim to state here.

As the Thurston Law Firm concedes, again that its claim is economic in nature, and is essentially an -- an attorney charging lien. That's coming from their brief at page 7. And, again as Judge Bongiovanni noted in the Joy B. case at page four, an attorneys lien is quote merely a right in the attorney to a lien on any judgment recovered for the attorney's clients and attaches to the final judgment. Quoting the Galluccio v. Pride Industrial case, it's a 2020 WL 3496914 *4. It's a District of New Jersey case, June 29, 2020. Such a lien "may be asserted even after the proceeds of the underlying action have been dispersed." And that's the Galluccio case again at page 4.

Additionally, here the Thurston Law Firm can seek a breach of contract action or -- and/or an unjust enrichment action or anything related to any claims it may -- arising out of the -- the fee contract against the Rue Law Firm and/or Plaintiffs, if appropriate, in State Court. See the Susquenita case again at page four.

While the Thurston Law Firm argues that the entire controversy doctrine would bar alternate recourse in another State action, here in oral argument and as well as they raised it in brief at page 9, New Jersey's entire controversy doctrine is a preclusive doctrine that requires the two

claims share a "commonality of facts rather than legal issues, parties, or remedies." And that's the Grippi v. Keith case 2024 WL 2058380 *9. It's a District of New Jersey case, May 8th, 2024.

The Court finds the Thurston Firm's breach of contract -- purported breach of contract claim shares no question of fact with Plaintiffs' IDEA claims. See the Joy B. case at page 4, whereas Judge Bongiovanni held "the -- Reisman Law Firm's claim does not share a common question of law or fact with this IDEA litigation, as it relates to attorneys fees and not to the educational needs of the particular student that are the subject of this dispute." See also the Susquenita case at page four where Judge Kane found that "an interest in attorney fees is unrelated to the underlying cause of action." That sound reasoning applies with equal force here.

As to the fourth requirement, this Court concludes that whether the Thurston Law Firm's interest, if any, are otherwise adequately represented, the Court turns again to the analyses of Judge Bongiovanni and Judge Kane in the Joy B. and Susquenita cases, respectively. In Joy B. Judge Bongiovanni found that the law firm's interests were "adequately represented to the extent the Plaintiffs and -- Reisman were both wanted to maximize any financial award and minimize the amount of attorneys fees owed by Plaintiffs.

That's the Joy B. case at page 4. The Court similarly finds here that Plaintiffs by and through the Rue Law Firm will pursue their interests in maximizing any award of damages and are thereby aligned with the Thurston Law Firm's interests, if any.

To the extent Thurston Law Firm suggests that Rues' animosity towards the Thurston Law Firm demonstrates that the Rue Firm will not represent the Thurston Firm's interest, this Court finds Judge Kane's reasoning in Susquenita persuasive. He -- he noted "whatever feelings of mistrust and animosity may exist between Plaintiffs' former counsel and Plaintiffs, Plaintiffs have an interest in maximizing the amount of settlement both to ensure that the student receives adequate compensatory education and to ensure that they are not forced to pay any legal fees out of pocket. Again, that's the Susquenita case at page five.

And, so for the foregoing reasons this Court finds that Thurston Law Firm has failed to satisfy any of the four requirements for intervention as a right, and denies its motion to intervene under Rule 24(a)(2).

The law firm's permissive intervention argument under Rule 24(b)(1) fares no better. Rule 24(b)(1) affords courts discretion to grant permissive intervention to "anyone who (a) is given a conditional right to intervene by a federal statute, or (b) has a claim or defense that shares

with -- within the main action a common question of law or fact." Further, Rule 24(b)(3) provides that in -- "in exercising its discretion the Court may -- must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." That's coming from the Glover v. Ferrera USA (phonetic) case, it's 2011 WL 5007805 *7. It's a District of New Jersey case, October 20th, 2011 quoting Rule 24(b)(3).

As to Rule 24(b)(1)(A), the Thurston Firm asserts that its conditional right to intervene arises from the IDEA's fee shifting provision, 20 U.S.C. § 1415(i)(3)(B). That's coming from the moving brief at page ten. The statute that provides that a court may award reasonable attorneys fees to a prevailing party "who is the parent of a child with a disability" or "a state educational agency or local educational agency". And that's from the Statute § 1415(i)(3)(B) i through iii.

However, the Thurston firm cannot be a prevailing party. Rather, as Plaintiffs contend "the right to fee shifting in and IDEA case belongs to a prevailing parent litigant." That's the opposition brief at page 5 -- 7. Accordingly, the Thurston Firm cannot assert a conditional right to intervene on this basis. And as to Rule 24(b)(1)(B), the Thurston Firm asserts that its claim for fees is a common question of law and fact with Plaintiffs'

main case -- that's coming from their brief again at page 10. But as previously noted, the law firm's alleged interest in fees pursuant to its of counsel agreement has nothing to do with the legal questions presented in this IDEA case. See In Re Camden Police case at 2012 WL 4442415 *4. It's a District of New Jersey case, September 24, 2012. Noting that "the 3rd Circuit has held that a contingent financial interest in the outcome of an indemnification action is insufficient to demonstrate a common question of law or fact supporting permissive intervention under Rule 24(b)." Thus, there is no -- the Court finds there's no common question of law or fact between the proposed intervener complaint and this action, and thus the Thurston Firm cannot seek intervention under this -- on this basis.

And, so based on the foregoing reasons and for good cause shown the motion to intervene is denied. The Court will issue an appropriate Order.

Now, I'm going to turn to -- conducting a case management conference with counsel for all parties. And, so, Mr. Thurston, sir, you're excused from the conference at this time.

MR. THURSTON: Thank you, Your Honor. May -- I just ask one question. Will the Opinion that you've read into the -- into the record, will that be converted into a written opinion, or will it just be an Order and then I will

order the transcript?

THE COURT: The latter. Yes, I will be doing an Order, and then you can call up the transcription company or you can call my Chambers for the name and the number of the transcription company, and you can order the transcript.

MR. THURSTON: Okay. Thank you, Your Honor.

THE COURT: Okay. Thank you, sir. All right.

MR. THURSTON: All right.

THE COURT: Take care. All right. So, now --

MS. RUE: Your Honor, just for the record, my -- my client is on the line. Can she be excused for the case management conference, or --

THE COURT: She's free --

MS. RUE: Is there a reason for her to be here?

THE COURT: No, she didn't have to come at all. But she's certainly free to stay --

MS. RUE: Yeah.

THE COURT: Or she can -- she can leave. She's certainly excused if she'd like either way. Is that the XXX number?

MS. RUE: Yes.

THE COURT: Okay.

MS. NIKOLIVA: Yes, yes.

THE COURT: Okay. Thank you.

MS. GILFILLAN: I would like to say --

MS. RUE: So, Marina -- Marina, it's up to you if you want to stay, or I can give you a call when we're done.

MS. NIKOLIVA: I would like to stay if; it's okay?

THE COURT: Okay, good. All right. So, yeah I just want to -- just so -- I guess I should have noted this. So, also present during the oral argument and now for the case management conference, ma'am, if you can just state your name, please? The Plaintiff -- this is M.N.? This is M.N.?

MS. NIKOLIVA: Yes -- sorry. Marina Nikoliva (phonetic).

THE COURT: Okay. Thank you. All right. Now, the Court's going to address the Plaintiffs' letter request right to reopen and restore this -- this action to the Court's active docket. That was letters you filed in duplicate, it looks like, as docket entries number 112 and 113, pursuant to the Court's October 10th, 2023 Order where I administratively terminated the case.

Does -- do any of the Defendants' attorneys oppose that request to reopen and restore the case to the active docket?

MS. GILFILLAN: The -- the Board of Ed does not, Your Honor.

THE COURT: Thank you.

MR. SILVER: No objection from the State, Your Honor.

THE COURT: All right. Thank you. So that request is granted. The case will be restored to the active docket and I will issue a separate Order to the effect.

Now, let's -- let's talk about -- I want to do an initial scheduling conference right now, just -- efficiency here. Is any -- let me ask -- let me go through a few things here. First, is litigation -- third-party litigation funding applicable here? -- for anybody -- okay.

MS. GILFILLAN: --

THE COURT: All right. Do you need any discovery in this case? I mean have are the parties -- have they filed the administrative record, either under seal or not, is there going to be any discovery needed in this case? Let me begin with Ms. Rue?

MS. RUE: I don't believe -- I don't believe we need any discovery. I -- yeah, I don't -- I don't think we do at this point. I think --

THE COURT: All right. Well, here's what I'd like to do -- let me hear from the Defense on that.

MS. RUE: Okay.

THE COURT: Any discovery --

MS. GILFILLAN: From the District's side, Your Honor, we would certainly need some discovery on the expected attorneys fees claim, which is included in the complaint. But other than the administrative record, which I have not

actually had an opportunity to review, I don't believe that there is anything further that is not on the Court's docket already.

THE COURT: Okay. Other than the administrative record, that's not on there yet; right?

MS. GILFILLAN: I -- I don't believe so. Krista, have you guys filed -- filed it --

MS. RUE: I don't -- I don't think so. So, I -- I need -- I will follow up on that. Yeah, I -- I wasn't involved in -- in this until you know after -- after Mr. Thurston was no longer involved. So, I don't believe that the administrative record has been submitted yet. So, I'll -- I'll make sure that happens quickly.

THE COURT: Okay.

MS. GILFILLAN: And, Your Honor; if I may? I'm sorry. The -- the only issue --

THE COURT: Sure, go ahead.

MS. GILFILLAN: The only issue that I -- I ever have with these cases, even though this -- this student is of maturity age, the -- the record does have some personal information contained in it. What has happened in the past, and I don't know if this has been remedied, is in fact this Court seals the record, then even the parties can't get to the information through the electronic system. So, I would just recommend that we do redactions, if necessary.

THE COURT: That's fine. If you want to have a meet and confer about that and submit something. If you -- look, if it's some you know limited number of proposed redactions, personal identifiers and things like that, I think that's fine where the majority of the record is not sealed. If it seems like you're going to need wholesale portions of the record sealed, then redaction is really probably not the way to go. It's going to have to be a seal --

MS. GILFILLAN: Yeah --

THE COURT: Do you see what I'm saying? But just have a meet and confer on that.

But let me ask, Mr. Silver, anything to add on -- on this point or any of these points?

MR. SILVER: -- Your Honor, no I actually probably would just echo the District's points to be honest.

THE COURT: Okay. So --

MS. GILFILLAN: Your Honor --

THE COURT: Yes.

MS. GILFILLAN: I think -- I think that maybe if we just for now say that no discovery, but we want to like -- just everyone needs to take a look at the administrative record, because it's been a couple -- many years since it was -- it was actually heard, before we make a final decision on discovery. Can we just --

THE COURT: Well, here's what I want to do --

MS. GILFILLAN: If -- if something comes up, then you know --

THE COURT: Yeah, look it's an old case.

MS. GILFILLAN: Yeah.

THE COURT: I stayed this for a long time, for good reason.

MS. GILFILLAN: Yeah.

THE COURT: But I'm not going to sit here and you know have representations made that no discovery is needed, and then in three or four months say, well you know we'd like to send a -- just fifteen single interrogatories. It's not going to happen.

MS. GILFILLAN: No, no, no, no, I'm talking like --

THE COURT: So -- so -- and to be clear, it's -- I really thought it's going to be the administrative record. I get you on the fees, the issue about the fees --

MS. GILFILLAN: Yeah.

THE COURT: I get that. So -- because you may tell me it's just the administrative record, we just have to file it, redact it, or under seal, and then we're prepared to you know proceed to summary judgment. I don't know. So, what I'm going to do is this. I'm going to give you -- I'm going to give you -- today is the 10th. I'm going to give you until September 30th to do two things. One, review the

administrative record. And then if you think -- talk amongst yourselves and come to some sort of consensus as to whether or not you're going to just file it on the public record with -- in a redacted form, or you're going to have to -- you're seeking -- file a consolidated motion to seal. All right. And the basis -- make sure it complies with Rule 5.3. And then also let me know by that date whether anybody is seeking any limited discovery beyond the administrative record. And if so, is there any consensus on that? And, then I'll issue a pretrial scheduling order with that. Okay.

All right. And I'm going to give you another date for a phone status conference and to give me any kind of status letter. I want to go off the record -- in a minute to see if there's been any settlement discussions. But let me give you a date right now, if we need it, for a status conference. And I will move this depending upon you know if you need to conduct any discovery or not.

But right now are you available on the 30th? It's a Wednesday?

MS. GILFILLAN: 30th of September or October?

THE COURT: Oh, sorry -- I'm sorry, October. Yep.

MS. GILFILLAN: Okay. I'm available.

MS. RUE: I am available.

MR. SILVER: Yeah, I'm available just except for two to three p.m. that day, Your Honor.

THE COURT: Not two to three, okay. You know what, can we do it on the 29th instead then? Because I was actually looking to do it around 2:30.

MR. SILVER: Sorry, Your Honor.

THE COURT: No worries. It's not a problem. How about the 29th at 4:00?

MR. SILVER: I'm available that -- all day that day, Your Honor.

THE COURT: Thank you.

MS. RUE: I'm -- I'm available all afternoon that day, so that works. Yeah.

MS. GILFILLAN: Fine for the District --

THE COURT: Okay, great. So, let's say October 29th at four p.m. And -- and we'll go from there. Anything else? Otherwise I want to go off the record for a moment.

MR. SILVER: Not from the State, Your Honor.

THE COURT: Okay, let's go off the record, please.

(PROCEEDING CONCLUDED)

* * * * *

CERTIFICATION

I, ANDREA SEMANOVICH, Transcriptionist, do hereby certify that the 45 pages contained herein constitute a full, true, and accurate transcript from the official electronic recording of the proceedings had in the above-entitled matter; that research was performed on the spelling of proper names and utilizing the information provided, but that in many cases the spellings were educated guesses; that the transcript was prepared by me or under my direction and was done to the best of my skill and ability.

I further certify that I am in no way related to any of the parties hereto nor am I in any way interested in the outcome hereof.

Transcriptionist: Andrea Semanovich

/s/ Andrea Semanovich October 2, 2024

Andrea Semanovich, AD/T 704
King Transcription Services
3 South Corporate Drive, Suite 203
Riverdale, NJ 07457
(973) 237-6080