# EXHIBIT A

***STATE OF NEW JERSEY***
***DEPARTMENT OF THE TREASURY***
***DIVISION OF REVENUE AND ENTERPRISE SERVICES***
***SHORT FORM STANDING***

***THURSTON LAW OFFICES LLC***
*0450068483*

*I, the Treasurer of the State of New Jersey, do hereby certify that the above-named New Jersey Domestic Limited Liability Company was registered by this office on April 15, 2016.*

*As of the date of this certificate, said business continues as an active business in good standing in the State of New Jersey, and its Annual Reports are current.*

*I further certify that the registered agent and office are:*

*ROBERT C THURSTON*
*111 ROUTE 70 EAST #5336*
*EVESHAM TWP, NJ 08053*



*IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my Official Seal at Trenton, this 22nd day of July, 2025*

*Elizabeth Maher Muoio*
*State Treasurer*

*Certificate Number : 6166728935*

*Verify this certificate online at*

*https://www1.state.nj.us/TYTR_StandingCert/JSP/Verify_Cert.jsp*

# EXHIBIT B

Docket No. 24-2763

*In the*

# United States Court of Appeals

*For the*

# Third Circuit

◆

**M.N. individually and on behalf of A.D., and A.D.**,

*Plaintiffs*,

v.

**, NEW JERSEY DEPARTMENT OF EDUCATION, SPARTA TOWNSHIP BOARD OF EDUCATION, and ANGELA ALLEN-MCMILLAN, Acting Commissioner of Education, in her official capacity,**

*Defendants*.

On Appeal from the United States District Court for the District of New Jersey
No. 2:21-cv-19977-SDW-JSA ✦ Order of Hon. Jessica S. Allen

## MOVANT-APPELLANT'S BRIEF
## ADDRESSING JURISDICTION

Robert C. Thurston, Esq.
Attorney ID #008801988
THURSTON LAW OFFICES LLC
433 River Road #1315
Highland Park, NJ 08904
856-335-5291
Email: rthurston@schoolkidslawyer.com

*Attorney for Movant-Appellant*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................3

THIS COURT HAS JURISDICTION ....................................................................4

CONCLUSION .......................................................................................................5

CERTIFICATE OF SERVICE ...............................................................................6

## TABLE OF AUTHORITIES

**Cases**

*CPR Management, SA v. Devon Park Bioventures*, 19 F. 4th 236 (3rd Cir. 2021)....5

*In re Gabapentin Patent Litigation*, 312 F. Supp. 2d 653 (D.N.J. 2004)..................4

*United States v. W.R. Grace & Co.-Conn.*, 185 F.R.D. 184 (D.N.J. 1999)...............4

**Statutes**

28 U.S.C. §1291 ...........................................................................................................4

**Rules**

Fed.R.Civ.P. 24 ...........................................................................................................4

# THIS COURT HAS JURISDICTION

The U.S. Court of Appeals has jurisdiction over this matter pursuant to 28 U.S.C. §1291 as an appeal of right from the Order Denying Movant's Motion to Intervene pursuant to Fed.R.Civ.P. 24. (ECF #187.)[1] The Magistrate Judge issued a final decision on the merits of Thurston Law Offices LLC's motion to intervene,[2] which is common practice in the District of New Jersey.

> Although the Court of Appeals for the Third Circuit has apparently not ruled on this issue, the Court notes that it is common practice in this district for a magistrate judge to hear and determine a motion to intervene (a non-dispositive, pretrial motion) in accordance with Local R. 72.1(a)(1) of the New Jersey Federal Practice Rules. *See also* 28 U.S.C. § 636(b)(1)(A); and for cases in which magistrate judges have determined motions to intervene, *see, e.g., Michaels Stores Inc. v. Castle Ridge Plaza Assocs.*, 6 F.Supp.2d 360 (D.N.J.1998); *Holloway v. Whaley*, 116 F.R.D. 675 (D.N.J.1987).

*United States v. W.R. Grace & Co.-Conn.*, 185 F.R.D. 184, 187 (D.N.J. 1999); *see also In re Gabapentin Patent Litigation*, 312 F. Supp. 2d 653, 661 (D.N.J. 2004).

This Court recently held that denials of motions to intervene are immediately appealable due to the potential loss of the movant's claim.

> Rule 24 allows non-parties to ensure their interests in the merits of the case are not 'adversely affected by litigation conducted without their participation.' *Stallworth v. Monsanto Co.*, 558 F.2d 257, 265 (5th Cir. 1977); *see also Buckner v. Schaefer*, 14 F.3d 593, 1993 WL

---

[1] References to the District Court docket are indicated by "ECF" and the docket number.

[2] Movant-Appellant has ordered the transcript from the hearing in which the Magistrate Judge read the opinion into the record, but has not yet received the transcript.

542143, at *1 (4th Cir. 1993) (*per curiam*) (noting that an important purpose of Rule 24 is the "protection of nonparties from adverse judgments entered in their absence"). When a non-party is denied intervention, it loses its ability to protect its interest in the merits of the litigation, and that ability can only be restored by a successful, immediate appeal.

*CPR Management, SA v. Devon Park Bioventures*, 19 F. 4th 236, 242 (3rd Cir. 2021). Thus, when a Magistrate Judge in the District of New Jersey denies a motion to intervene, it is immediately appealable to this Court.

## CONCLUSION

WHEREFORE, Movant-Appellant respectfully request that this honorable Court hold that it has jurisdiction to review the decision below and accept this appeal.


Date:   September 26, 2024

Thurston Law Offices LLC


*/s/ Robert C. Thurston*
Robert C. Thurston, Esq.
433 River Road #1315
Highland Park, NJ 08904
856-335-5291
rthurston@schoolkidslawyer.com

*Attorneys for Movant-Appellant*

# CERTIFICATE OF SERVICE

I hereby certify that on September 26, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Third Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

*/s/ Robert C. Thurston*
Robert C. Thurston, Esq.



THURSTON LAW OFFICES LLC
ROBERT C. THURSTON, ESQ.

111 Route 70 E #5336
Marlton, NJ 08053
856-335-5291
rthurston@schoolkidslawyer.com

October 9, 2024

**VIA ECF ONLY**
Patricia S. Dodszuweit, Clerk
United States Court of Appeals for the Third Circuit
21400 U.S. Courthouse
601 Market Street
Philadelphia, PA 19106-1790

  Re: **M.N., et al. v. Sparta Twp. Bd. of Educ., et al.**
    **Docket No. 24-2763**

Dear Ms. Dodszuweit:

Please accept this letter as Appellant's brief reply to the letters filed by Appellees
on the issue of this Court's jurisdiction.

While this Court has never fully addressed the appellate jurisdiction of the denial
of a motion to intervene by a federal Magistrate Judge,[1] this Court has previously
stated that it has "jurisdiction under 28 U.S.C. § 1291 (1988) because the denial of
a motion to intervene is a final, appealable order." *US v. Alcan Aluminum, Inc.*, 25
F. 3d 1174, 1179 (3rd Cir. 1994). In *Symbiont Science Engineering and
Construction, Inc. v. Ground Improvement Services, Inc., et al.*, U.S.D.C. D.N.J.
Civil No. 22-4905 (Feb. 1, 2024), U.S. Magistrate Judge Brendan Day wrote in
denying a motion to intervene by non-party Denali Water Solutions LLC:

  This opinion and the accompanying order resolve a non-dispositive
  motion pursuant to 28 U.S.C. § 636(b). *See, e.g., Dewey v.*

---

[1] It should be noted that *Siers v. Morrash* involves "a direct appeal from an order
of the United States magistrate, who denied plaintiff's motion for appointment of
counsel in a civil rights suit," 700 F. 2d 113, 114 (3rd Cir. 1983), not a motion to
intervene by a non-party.



*Volkswagen Aktiengesellschaft*, 558 F. App'x 191, 198 n.6 (3d Cir. 2014) (not precedential) ("[T]he Magistrate Judge considered the motion [to intervene] as a non-dispositive motion under 28 U.S.C. § 636(b), which empowers her to do so even absent consent of the parties."); *In re Gabapentin Patent Litig.*, 321 F. Supp. 2d 653, 661 (D.N.J. 2004) ("A ruling on a motion to intervene is typically treated as non-dispositive.")

Op. at *fn. 1*. This Court in the cited *Dewey* case did nevertheless address non-party Braverman's appeal of the Magistrate Judge's denial of the motion to intervene while specifically not addressing the appellate jurisdiction. *See¸ Dewey*, 558 F. App'x at 198.

In the District Court, U.S. Magistrate Jessica Allen did not issue "proposed findings and recommendations". Rather, she read her opinion and final Order denying the motion to intervene into the record and instructed Appellant to order the transcript. *See* Transcript, September 10, 2024, Dkt. No. 10, pp. 40-41. Thus, Appellant did not have an opportunity to review proposed findings and recommendations from which to seek review by the District Judge.

For these reasons and in the initial brief addressing this Court's jurisdiction, Appellant Thurston Law Offices LLC respectfully requests that this Court accept jurisdiction in this matter.

Respectfully submitted,

Robert C. Thurston, Esq.


cc:    All Counsel of Record (via ECF only)

# EXHIBIT C

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

|  |  |
|---|---|
| **C.P.,**<br>***Individually and on behalf of F.P., a minor child*, et al.,**<br><br>           **Plaintiffs,**<br><br>      **v.**<br><br>**NEW JERSEY DEPARTMENT OF EDUCATION, et al.,**<br><br>           **Defendants.** | **Civil No. 19-12807 (ESK/MJS)** |

## ORDER

This matter is before the Court on the motion, ECF No. 588, by the class representatives represented by John Rue ("Mr. Rue") and Krista Rue of John Rue & Associates, LLC ("JRA") to vacate the Order appointing class counsel ("Class Counsel[1]"), ECF No. 531. ECF No. 606.[2] Class Counsel opposes the motion. ECF No. 596. The Court has carefully considered the submissions and the voluminous record in this case. Pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1(b), the Court decides this motion without oral argument. JRA's motion is **DENIED**.

---

[1] "Class Counsel" refers to Reisman Carolla Gran & Zuba LLP ("RCGZ"), Education Law Center ("ELC"), Law Office of David R. Giles ("Giles"), Law Office of Denise Lanchantin Dwyer LLC ("Dwyer"), Thurston Law Offices LLC ("Thurston"), and Wasserman Legal LLC (now Wasserman Little LLC) ("Wasserman").

[2] ECF No. 606 is the unsealed version of JRA's motion, brief, and attachments.

## I. Background

The parties are thoroughly familiar with this case's factual and procedural history, dating back more than six years and spanning more than 600 docket entries. This matter involves allegations that New Jersey's dispute resolution system for special education matters violates the IDEA on a systematic basis by failing to decide due process petitions within the 45-day timeframe guaranteed by the IDEA. ECF No. 76.

The Court certified the relevant classes in this action in an August 19, 2022 opinion and order and evaluated JRA and "collaborating counsel[3]" under the standard for appointment of class counsel set forth in Federal Rule of Civil Procedure 23(g), ultimately granting the certification motions. ECF Nos. 384 and 385. Following settlement negotiations, plaintiffs and the classes filed an unopposed motion for preliminary approval of the settlement on June 9, 2023. ECF No. 462.

The Court held a status hearing on June 12, 2023, after which the parties were to address the Court's concerns with notice, the class website, and the fee-application process. ECF No. 463. JRA filed an amended certification on June 23, 2023. ECF No. 465-1. That same day, counsel, on behalf of the Education and Health Law Clinic and amici, submitted a letter to the Court raising concerns with the settlement agreement. ECF No. 464.

On July 10, 2023, Ms. Reisman, Mr. Giles, Mr. Dwyer, and Mr. Thurston, attorneys previously identified by the Court as "collaborating counsel," filed a motion seeking to clarify the order appointing counsel. ECF No. 469. The Court held a hearing on July 11, 2023 during which it declined to proceed with preliminary approval of the settlement citing amici's

---

[3] The Court's August 19, 2022 Opinion identifies Walsh Pizzi O'Reilly Falanga LLP ("Walsh"), RCGZ, Giles, Dwyer, Wasserman, and Thurston as collaborating counsel. ECF No. 384 at 44-45.

2

concerns, which the Court concluded warranted consideration by the parties, and the pending motion to clarify, which had resulted in JRA retaining counsel. ECF No. 474. Subsequent filings revealed significant infighting among Plaintiffs' counsel.

On August 22, 2023, the Court ordered JRA to show cause why it should not be disqualified as class counsel, invited motions for appointment of substitute counsel, and denied the motion to clarify as moot. ECF Nos. 504, 505, 506, and 509. JRA submitted a letter on the docket offering an apology to the Court and co-counsel, indicating that it would not oppose removal as class counsel, and recommending RCGZ as interim class counsel. ECF No. 503. The Court appointed RCGZ as interim class counsel on August 30, 2023. ECF No. 511. Soon thereafter, JRA signed a stipulation withdrawing as class counsel on September 13, 2023, which mooted the order to show cause. ECF Nos. 515, 516.

On October 27, 2023, the Court granted Plaintiffs' motion to appoint substitute class counsel, namely RCGZ, Giles, ELC, Dwyer, Thurston, and Wasserman. On April 11, 2024, the Court granted final approval of the settlement. ECF No. 569.

## II. Legal Standard

JRA's motion is brought under Rule 60 although the motion is more properly viewed under Federal Rule of Civil Procedure 23(g) as a motion to replace class counsel. "[A] court that certifies a class must appoint class counsel. In appointing class counsel, the court . . . may make further orders in connection with the appointment." Fed. R. Civ. P. 23(g)(1)(E). The Court further observes that it retained jurisdiction in this matter [ECF No. 569], and therefore, has inherent authority to reconsider prior interlocutory orders. State Nat'l Ins. Co. v. Cnty. of Camden, 824 F.3d 399, 406 (3d Cir. 2016) ("The power to reconsider prior interlocutory orders depends on the District Court retaining jurisdiction over the case."). Thus, the Court considers

whether JRA's allegations weigh on "counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

## III.    Discussion

JRA's motion raises various allegations of misconduct, all of which the Court has carefully reviewed. None of these allegations merit this Court revisiting Judge Hillman's October 27, 2023 Opinion and Order [ECF Nos. 530 and 531], none of these allegations provide a basis for disqualification and removal of class counsel, and none of these allegations warrant a lengthy response from this Court.

JRA's claims of alleged ex parte communications involving two retired and respected federal judges are unavailing, inapposite, and flatly rejected. There is no evidence of any misconduct by the judges referenced or by Class Counsel in this regard. Concerning the alleged conversation between Mr. Little and the unaffiliated lawyer referenced in JRA's brief, there is zero evidence that the District Judge assigned to this case was even aware of the conversation, let alone initiated it. Thus, there is no evidence of an ex parte communication between the Court and Class Counsel. Moreover, Ms. Reisman has certified that "No member of the Class Counsel team ever had any ex parte contact with [the former District Judge]." ECF No. 596-1 at 4 ¶4(g). JRA's allegation does not describe any misconduct by Class Counsel that would weigh on their continued representation of the class. JRA also alleges that the retired Magistrate Judge, in July 2023, reached out "unbidden" to JRA's attorney on behalf of the District Judge. ECF No. 606-1 at 11. The insinuation of misconduct is baseless. "JRA, through its own attorney, had filed a letter requesting judicial assistance to negotiate the dispute over the motion to clarify, leaving the choice of mediator to Judge Hillman's discretion." ECF No. 596 at 18 (citing ECF No. 488). The letter expressly requested a conference with the

undersigned "or someone else . . . to avoid continued litigation of the motion." ECF No. 488. Ms. Reisman certifies that "[a]fter those letters were filed, [the retired Magistrate Judge] contacted counsel to assist in negotiating a resolution of the motion." ECF No. 596-1 at 3 ¶ 4(f). There is nothing inappropriate about this. Moreover, these allegations do not implicate other Class Counsel, and JRA's claims that these alleged conversations "instill[ed] courage in JRA's partners to engage in the worst of their misconduct" [ECF No. 606-1 at 11] is simply without basis.

JRA's allegations of extortion and harassment by Class Counsel do not support the relief JRA seeks. Mr. Rue certifies that the "defamatory and sexually salacious document" at issue was sent "anonymously" to three different individuals. ECF No. 606-2 at 11 ¶¶50-53. There is no evidence connecting the mailing to Class Counsel. Likewise, the Court declines JRA's invitation to undo the Court's October 27, 2023 Order based on an alleged conversation between Mr. Little and Mr. Rue, months earlier, concerning "exposure" of this document in a motion to remove class counsel. No such motion was filed, the issue was not raised in the motion to clarify, and JRA never raised it when recommending Ms. Reisman, who was purportedly part of the conversation, to serve as interim class counsel. The Court declines to upend its earlier order on this record.[4]

---

[4]  JRA also alleges Mr. Thurston filed an ethics grievance against Mr. Rue on August 16, 2023 in bad faith. ECF No. 606-1 at 12-13. Mr. Rue states he first received the grievance in December 2023 (after he voluntarily withdrew as class counsel) and the "grievance was dismissed, without prejudice, by the ethics committee without a formal investigation, until final judgment was entered in this case. Final judgment was entered in this case in April 2024. The grievance has not been resubmitted. Id. at 13 n.11. The Court observes no misconduct, associated with this filing, weighing on the continued appointment of Class Counsel under Rule 23.

Finally, JRA's allegations of perjury and misrepresentation to the Court, fraud, conflicts of interest, and unethical conduct by Class Counsel lack predication. To be clear, the Court has considered all of JRA's arguments both in the briefs and attachments, and finds no basis, in fact or law, to revisit the October 27, 2023 Order. The Court is compelled, however, to make two observations. First, Mr. Rue alleges Class Counsel swore in their July 10, 2023 certifications that they had been appointed as co-class counsel, which "was factually false, and known to be false by each of them at the time." ECF No. 606-1 at 16. The Court finds no such misrepresentation. The Court's Opinion certifying the class was expressly predicated on "[JRA's] representation that it **and collaborating counsel** have reached an agreement to ensure that the case is managed effectively **through the procedural steps that remain**[.]" ECF No. 384 at 46. The Opinion references JRA, Walsh, RCGZ, Giles, Dwyer, Wasserman, and Thurston. Id. at 44-45. Moreover, on August 22, 2023, the Court stated "I appointed [JRA] as class counsel[,]" but continued "I would not have appointed you, Mr. Rue, to be class counsel standing alone. I was comforted by the experience in education law that I saw from many of the lawyers, ones who are here; I was encouraged and comforted by the fact that Walsh Pizzi was involved, a firm that I knew well as experienced in class action litigation. And in my mind, I approved a team." ECF No. 509 at 8:24-9:4. Thereafter, the Court issued an order to show cause as to why JRA should not be disqualified, JRA filed a letter apologizing to the Court and co-counsel, and JRA executed a stipulation withdrawing from the case. ECF Nos. 503, 504, 515. It strains credulity to claim that Class Counsel made knowing misrepresentations to the Court under the circumstances.

Second, the Court does not find that the Motion to Clarify [ECF No. 469] was made in bad faith, intended to cause delay or the product of misrepresentation by counsel. On the

contrary, it was, as the Court previously found, the natural result of the breakdown of a team of attorneys that that the Court had hoped would pilot this important case, a breakdown that the Court previously laid primarily at the hands of JRA.[5]

## IV.  Conclusion

In the end, this motion does not set forth any viable complaint about the job that Class Counsel is doing to advance the Class's interests during the monitoring phase of the case and does not articulate any misconduct by Class Counsel, previous or ongoing, providing any basis to revisit the earlier Order appointing Class Counsel.

**IT IS**, therefore, on this **29th** day of **May 2025**,

**ORDERED** that the motion [ECF No. 588] to vacate the appointment of Class Counsel is **DENIED**.

s/ Matthew J. Skahill
MATTHEW J. SKAHILL
United States Magistrate Judge

---

[5]  While JRA alleges Class Counsel caused unnecessary delay by filing the July 10, 2023 Motion to Clarify, ECF No. 606-1 at 21, JRA's arguments concerning this delay belie the procedural history of this litigation. For example, Mr. Rue asserts the concerns of amici do not justify any delay merely because "amici are not parties." ECF No. 597 at 8. Yet, the Court found "substantial issues . . . identified by amici, and . . . they're real and will have to be addressed by [the Court] at some point." ECF No. 492 at 27:1-3. Further, a review of the docket shows a plethora of filings and conferences with the Court during the alleged delay demonstrating active litigation of the case. The Court accordingly finds this allegation casts no doubt on the propriety of Class Counsel's continued appointment.

# EXHIBIT D

**rthurston@schoolkidslawyer.com**

| | |
|---|---|
| **From:** | SchoolKidsLawyer.com <rthurston@schoolkidslawyer.com> |
| **Sent:** | Wednesday, July 19, 2023 8:50 AM |
| **To:** | rthurston@schoolkidslawyer.com |
| **Subject:** | How SchoolKidsLawyer.com Can Help Me |

**Name**

filomena laforgia

**City**

oakland

**State**

NJ

**Your Email**

filomenabs247@gmail.com

**Name of School District**

RIH

**Let us know how we can help:**

Autocorrected to gullibleNone selected

Skip to content

Using Gmail with screen readers

in:sent

Conversations

Filomena Laforgia - 3rd Request

DEAN STUFF

filomena laforgia

Attachments

8:43 AM (5 minutes ago)

to John, Saran, Krista, Rachel, johannaburke, hello, lynne.lawteach, info, letschat, eslte2

Mr. Rue (and Ms. Edwards):

This is my 3rd request. As outlined in my reply letter dated July 7, 2023, you have yet to address the deliveries requested. Be aware that, in retrospect, I think what you (and your firm) have engaged in is fraudulent and ethical, and I will pursue all resources available to ensure that you do the right thing. It is beyond shameful that now I have to combat you when you were the person I paid (well) to fight others that have harmed my son. Yet, it is abundantly clear you have wasted my time and money. Ultimately, the only thing your office produced for $30,237.74 in almost a year is a Demand Letter to the RIH District and your Termination Letter (attached). Where did $30,327.74 go? Let's face it you NEVER intended to work this case. How gullible was I?

Note: I cc'd all the people listed on your letterhead (and I directly emailed them if an email was unavailable) because they should be aware of this situation since they are associated with you and your firm.

In closing, I firmly request, again, the following:

1. My complete and entire case file, including all the billing information. Please provide a date/time when I can physically pick it up, or you may scan it and send it.

2. I expect a full refund of all the money ($30,237.74*) I sent to your firm.

I WILL NOT WAIT your ridiculous 180 DAYS, AND I AM PREPARED TO FILE A
FEE ARBITRATION IF THIS MATTER IS NOT RESOLVED BY JULY 29, 2023.

You may proceed to pay my $30,237.74 via the mobile app Zelle (CHASE)

to filomena44@verizon.net

3. Provide me with the name of your insurance company so I may file accordingly
(Notice of Malpractice).

Payment History:

Aug. 10, 2022 - $795 initial consultation with amount agreement which I was informed
would be credited toward our ultimate engagement - That NEVER happened.

Oct. 27, 2022 - Total initial pre-payment of $15,000

Chase - Online check Transfer No:1561255031 (exhibit ?) Ck# 3005 $7,500

Chase Credit Card Payment of $7,500

Feb. 3, 2023 - $2,522.71 - Chase Credit Card payment / paid in full

Mar. 29, 2023 - $1,920.03 - Chase Credit Card payment / paid in full

May 24, 2023 - $3,000.00 - Chase Credit Card payment / Towards the new pre-
payment plan agreement. NOTE: THIS AMOUNT IS CURRENTLY IN DISPUTE WITH
THE CREDIT CARD AS OF WRITTEN.

May 24, 2023 - $7,000.00 - Chase Credit Card payment / Towards the new pre-
payment plan agreement. NOTE: THIS AMOUNT IS CURRENTLY IN DISPUTE WITH
THE CREDIT CARD AS OF WRITTEN.

Total prepayment: $25,000.00

Total "claimed" billable payment: $5,237.74

Full payment history to John Rue: $30,237.74*

Pending balance "claim."

(invoice 7/5/2023) $2,403.66

Refund "claim" by JR's firm $22,596.34

_____

Total in Arbitration $30,237.74

_____

*$10K is currently in dispute with the credit card company.

Cc'd:

Krista Haley Rue

Saran Q. Edwards

Francis X. Geier

Johanna G. Burke

Jonathan S. Corchnoy

Matthew P. Crimmel

Carolina T. Curbelo

Jordan B. Dascal

Lynne D. Feldman

Robert Thurston

Rami M. Salim

**info@schoolkidslawyer.com**

| | |
|---|---|
| **From:** | filomena laforgia <filomenabs247@gmail.com> |
| **Sent:** | Wednesday, July 19, 2023 8:44 AM |
| **To:** | John Rue; Saran Edwards; Krista Rue; Rachel Leverone |
| **Cc:** | johannaburke@jgburkelaw.com; hello@dascallaw.com; lynne.lawteach@gmail.com; info@schoolkidslawyer.com; letschat@lawfirmeditorialservice.com; eslte2@gmail.com |
| **Subject:** | Filomena Laforgia - 3rd Request |
| **Attachments:** | from the desk of (4).pdf; 2023-07-05 JDR to LaForgia.pdf |

Mr. Rue (and Ms. Edwards):


This is my 3rd request. As outlined in my reply letter dated July 7, 2023, you have yet to address the deliveries requested.  Be aware that, in retrospect, I think what you (and your firm) have engaged in is fraudulent and ethical, and I will pursue all resources available to ensure that you do the right thing. It is beyond shameful that now I have to combat you when you were the person I paid (well) to fight others that have harmed my son.  Yet, it is abundantly clear you have wasted my time and money. Ultimately, the only thing your office produced *for $30,237.74* in almost a year is a *Demand Letter to the RIH District and your Termination Letter (attached).* Where did $30,327.74 go? Let's face it you NEVER intended to work this case. How gullible was I?


*Note: I cc'd all the people listed on your letterhead (and I* directly emailed them if an email was unavailable*) because they should be aware of this situation since they are associated with you and your firm.*


In closing, I firmly request, again, the following:


1.  My complete and entire case file, including all the billing information. Please provide a date/time when I can physically pick it up, or you may scan it and send it.


2. I expect a full refund of all the money ($30,237.74*) I sent to your firm.

I WILL NOT WAIT your ridiculous 180 DAYS, AND I AM PREPARED TO FILE A

FEE ARBITRATION IF THIS MATTER IS NOT RESOLVED BY JULY 29, 2023.

You may proceed to pay my $30,237.74 via the mobile app Zelle (CHASE)

to filomena44@verizon.net

3. Provide me with the name of your insurance company so I may file accordingly

(Notice of Malpractice).

Payment History:

1. Aug. 10, 2022 - $795 initial consultation with amount agreement which I was informed would be credited toward our ultimate engagement - That NEVER happened.
2. Oct. 27, 2022  - Total initial pre-payment of $15,000
   a. Chase - Online check Transfer No:1561255031 (exhibit ?)  Ck# 3005 $7,500
   b. Chase Credit Card Payment of $7,500
3. Feb. 3, 2023 - $2,522.71 - Chase Credit Card payment / paid in full
4. Mar. 29, 2023 - $1,920.03 - Chase Credit Card payment / paid in full
5. May 24, 2023 - $3,000.00 - Chase Credit Card payment / Towards the new pre-payment plan agreement. NOTE: THIS AMOUNT IS CURRENTLY IN DISPUTE WITH THE CREDIT CARD AS OF WRITTEN.
6. May 24, 2023 - $7,000.00 - Chase Credit Card payment / Towards the new pre-payment plan agreement. *NOTE: THIS AMOUNT IS CURRENTLY IN DISPUTE WITH THE CREDIT CARD AS OF WRITTEN.*

*Total prepayment: $25,000.00*
*Total "claimed" billable payment:  $5,237.74*
*Full payment history to John Rue: $30,237.74\**

*Pending balance "claim."*
*(invoice 7/5/2023)  $2,403.66*

*Refund "claim" by JR's firm $22,596.34*

*Total in Arbitration $30,237.74*

*\*$10K is currently in dispute with the credit card company.*

Cc'd:

Krista Haley Rue
Saran Q. Edwards
Francis X. Geier
Johanna G. Burke
Jonathan S. Corchnoy
Matthew P. Crimmel
Carolina T. Curbelo
Jordan B. Dascal
Lynne D. Feldman
Robert Thurston
Rami M. Salim

# JOHN RUE & ASSOCIATES, LLC

### A PRIVATE PUBLIC INTEREST LAW FIRM
100 OVERLOOK CENTER, 2ND FLOOR, #9211
PRINCETON, NJ 08540
(862) 283-3155 (main)
(973) 860-0869 (facsimile)

John D. Rue[†]
—
Krista Haley Rue[§]
Saran Q. Edwards[§]
—
Francis X. Geier

Johanna G. Burke[*]
Jonathan S. Corchnoy[*⊗§]
Matthew P. Crimmel[*§†△]
Carolina T. Curbelo[*]
Jordan B. Dascal[*†]
Lynne D. Feldman[*]
Rami M. Salim[†]
Wayne Pollock[*§]

July 5, 2023

***Via Electronic Mail Only***
Filomena Laforgia
filomenabs247@gmail.com

RE:   ***Termination of Engagement***

Dear Filomena:

We write to inform you that the Firm has made the difficult decision to terminate your engagement. As you may recall, the June 2023 executed Engagement Agreement (hereinafter "the Agreement") provided the Firm with the ability to do so under specific circumstances. Regrettably, at least two (2) such reasons exist for our determination, as described more fully below.

Pursuant to Section 12 of the Agreement, the Firm "may withdraw from representing you if (i) in our judgment, further proceedings would be frivolous, unreasonable, groundless, or pursued for an improper purpose; [ ] *or* (ii) the Firm determines important facts are materially different from the facts presented by you to us prior to execution of this Agreement." Both of the aforementioned circumstances are present here. From the beginning, we were forthright with you regarding the strengths and weaknesses of your case. That is, we agreed to represent you, based on our understanding of the facts, and we informed you that it will be a particularly challenging case. Moreover, by bringing a civil action, you would likely expose yourself (and Dean) to invasive discovery proceedings (including depositions), as well as potential trial testimony. Nonetheless, we submitted demand letters on your behalf to ascertain if the District was interested in an expeditious resolution.[1] Unfortunately, our attempts were unsuccessful.

---

[1] Curiously, the Busch Law Group appeared to send a non-substantive response to your demand letter dated March 26, 2023, which we received on June 6, 2023. However, because the aforementioned attorneys resigned from its representation in or about May 2023, we sent a revised demand letter. As of this writing, we have not received a response.

*Bene facere bonum ~ Doing well by doing good*

*    Of-Counsel to the Firm
⊗   Licensed in Florida as well as New Jersey
△   Licensed in West Virginia as well as New Jersey

§    Licensed in Pennsylvania as well as New Jersey
†    Licensed in New York as well as New Jersey
◊   Licensed in Florida only

Undeterred, you decided to proceed to litigation, and we convened a meeting via telephone to discuss the potential claims and their respective merits. After our discussion, you informed us that you work for Robert F. Kennedy, Jr.'s Children's Health Defense organization.  Unfamiliar with the potential impact of this new information, we researched the Children's Health Defense, where it became evident that it takes an objectively anti-vaccine stance. Of course, it is your right to work wherever you choose and to promote the beliefs that are dictated by your conscience. But had we been aware of your current position, we would have declined to continue with the representation.  To the extent the Board's basis for removing you as President is related to concerns about your opposition to masking and vaccinations (particularly in the midst of a public health emergency), the facts of your employment and promotion of the philosophies of the Children's Health Defense organization as your own are likely legally sufficient to support the Board's decision[2]. Further, the above likely allows for the reasonable argument that the Board members were merely acting in accordance with their duties, and as such, constitutes protected speech. Unfortunately, if there is no legally actionable misconduct against you, in our opinion, there is no potential associational discrimination claims regarding Dean.

In accordance with the Agreement, the Firm will refund you $22,596.34 within 180 days of the date of this correspondence (i.e. no later January 1, 2024). We have also attached a final itemized pre-bill for your review. While we regret that we have arrived at this conclusion, we think that doing so now, instead of when you have filed a complaint and spent additional money on legal services, is prudent. Although our decision is final and not open to reconsideration, please contact Rachel to schedule a call with Saran and Krista (who was going to serve as trial counsel on your matter), in the event you would like to discuss the contents contained herein.

Because attorney's opinions can and often do differ, you should feel free to pursue subsequent counsel. If you decide to do so, we will work with them to ensure as seamless a transition as possible.

We wish you and Dean all the best.


Regards,

*John Rue*

John Rue

---

[2] Please note that these are not our beliefs, but what our experience informs us that the Board will most likely posit.



from the desk of
Filomena Laforgia

July 7, 2023

***Via Electronic Mail***
John D. Rue - john@johnruelaw.com
Saran Edwards  - sedwards@johnruelaw.com

***Via Mail***
**John Rue & Associates, LLC.**
40 South Fullerton Ave., Suite 29
Montclair, NJ 07042

Dear Mr. Rue:

After numerous attempts over the past several weeks to reach you, Tara Nutter, which I understand no longer works for you, and Ms. Edwards, receiving your abrupt termination letter is unsettling. Further, the rationale offered for termination is preposterous. From the start, I have been extremely transparent about myself, my son, and the case overall. This fact alone negates your reasoning as described in "Pursuant to Section 12 of the Agreement," which you and Ms. Edwards downplayed at every opportunity.

Yes, you offered the general notion of every case's uncertainty, but neither spoke of your apprehensiveness about your commitment. And with every conversation, I was the one who presented challenges that you might face, yet you reassured me that we were filing in federal court and things were different there. In addition, when I raised severe concern about your commitment after you flippantly shared that Mr. Harris, who represented the District (and lost the Due Process case - failure of FAPE), attended your wedding, you assured me that you had no conflict of interest and couldn't wait to tease him about his loss to a "pro se" and that "...this case was going to be fun."

That said, I spent a tremendous amount of time gathering and providing your team with detailed accounts and supportive documentation because we had a verbal agreement the more information I provided and the more legwork I did, the better the case overall. I held up my part of the bargain 100%. Did you? Did you ever bother to read anything I sent you thus far? You never paused or questioned any merit of the case or my character. Therefore, there is only one reasonable explanation for your abrupt change of direction: you got, got. So who got to you, Mr. Harrison, Mr. Fogarty, or my adversaries like Vivian Yudin King and her cast of characters such as Margaret Bennett and Kathy Schwartz, who have a reputation for contacting and dissuading people with all means who oppose them? You have an ethical obligation to be forthcoming if you have had any contact, conversation, emails, etc., with anyone regarding this case, my son or myself.

1

Now let me address your ridiculous assessment of my current employer. First, thank you for asserting my right to work for whomever and wherever I please. And if you had bothered to do more research, you would have concluded how nonsensical your statement was, yet that is not the point. Second, who I work for has **NOTHING** to do with this case or my son's legal right to an education. I wasn't even fully employed from 2018-2021 when I wholeheartedly embraced my civic duty as a RIH Board Member. Still, I can't believe I must explain to you at this junction what the case is about again. This case has always been about the egregious retaliation of the District that consciously and purposefully negated its legal obligation to provide a special education student a FAPE because his mother was the president of the Board - full-stop. It has never been about me, which I expressed many times. At one point, I even pronounced that if everything done to me had never affected my son's education, we would never have met.

Yet, it is abundantly clear that you have wasted my time and money. Ultimately, the only thing your office produced for $8,969.79 was a "demand letter" to the RIH Board, which you deemed "unsuccessful." Still, I know you didn't even bother to have a follow-up conversation with the Board attorney, Mr. Weiss from the Busch Law Group, because I called him yesterday. And the "non-substantive response" from March 26, 2023/June 6, 2023, was never shared with me. Why?

Then to add insult to injury, your final invoice says I have a balance. Per our agreement, I paid in full whenever I received an invoice. I settled in full on March 29, 2023, the last invoice you sent. Then I was advised of an overpay, so a balance of $2,403.66 and your need to hold the remains of my funds for 180 days is unacceptable and, frankly, a farce similar to your "Doing well by doing good" proclamation on your website.

In closing, while I regret that we have arrived at this conclusion, although I think it is a blessing in disguise, you should be aware of the following:

1. I put in a credit card DISPUTE for the last payments made on 5/24/2023 for $3K and $7K;

2. I expect a full refund of ALL MY FUNDS exchanged with your firm within five business days or provide information regarding your Arbitration protocol;

3. Please accept this letter as a Notice of Malpractice and provide me with the name of your insurance company so I may file accordingly;

4. I will file an ethics complaint against you and Ms. Edwards's law license shortly because what I think you have engaged in is shameful and unethical. I will let the New Jersey Courts decide if further action is needed.

5. Please provide a date/time when I can pick up my complete file from your office.

I look forward to hearing from you with deliverables.

Regards,

Filomena Laforgia

2

**info@schoolkidslawyer.com**

| | |
|---|---|
| **From:** | John Rue <john@johnruelaw.com> |
| **Sent:** | Wednesday, July 19, 2023 9:08 AM |
| **To:** | Saran Edwards; Krista Rue; Rachel Leverone; Filomena Laforgia |
| **Cc:** | Johanna Burke; hello@dascallaw.com; lynne.lawteach@gmail.com; info@schoolkidslawyer.com; letschat@lawfirmeditorialservice.com; eslte2@gmail.com |
| **Subject:** | Re: [EXTERNAL] Filomena Laforgia - 3rd Request |

We have advised our carrier about your discontent.  We'll be in touch.

Regards,
John

John Rue
Principal
John Rue & Associates, LLC
Pronouns: He, him, his

*************************
"A man [sic] with God is always in the majority."
-- John Knox
*************************

 **John Rue**
Principal

862-283-3155 (main)
973-860-0869
john@johnruelaw.com
100 Overlook Center
2ⁿᵈ Floor, #9211
Princeton, New Jersey 08540
**www.johnruelaw.com**

---

**From:** filomena laforgia <filomenabs247@gmail.com>
**Sent:** Wednesday, July 19, 2023 7:43:31 AM
**To:** John Rue <john@johnruelaw.com>; Saran Edwards <sedwards@johnruelaw.com>; Krista Rue <krue@johnruelaw.com>; Rachel Leverone <rleverone@johnruelaw.com>
**Cc:** Johanna Burke <johannaburke@jgburkelaw.com>; hello@dascallaw.com <hello@dascallaw.com>; lynne.lawteach@gmail.com <lynne.lawteach@gmail.com>; info@schoolkidslawyer.com <info@schoolkidslawyer.com>; letschat@lawfirmeditorialservice.com <letschat@lawfirmeditorialservice.com>; eslte2@gmail.com <eslte2@gmail.com>
**Subject:** [EXTERNAL] Filomena Laforgia - 3rd Request

Mr. Rue (and Ms. Edwards):

This is my 3rd request. As outlined in my reply letter dated July 7, 2023, you have yet to address the deliveries requested.  Be aware that, in retrospect, I think what you (and your firm) have engaged in is fraudulent and ethical, and I will pursue all resources available to ensure that you do the right thing. It is beyond shameful that now I have to combat you when you were the person I paid (well) to fight others that have harmed my son.  Yet, it is abundantly clear you have wasted my time and money. Ultimately, the only thing your office produced *for $30,237.74* in almost a year is a *Demand Letter to the RIH District and your Termination Letter (attached).* Where did $30,327.74 go? Let's face it you NEVER intended to work this case. How gullible was I?

*Note: I cc'd all the people listed on your letterhead (and I* directly emailed them if an email was unavailable*) because they should be aware of this situation since they are associated with you and your firm.*

In closing, I firmly request, again, the following:

1.  My complete and entire case file, including all the billing information. Please provide a date/time when I can physically pick it up, or you may scan it and send it.

2. I expect a full refund of all the money ($30,237.74*) I sent to your firm.

I WILL NOT WAIT your ridiculous 180 DAYS, AND I AM PREPARED TO FILE A

FEE ARBITRATION IF THIS MATTER IS NOT RESOLVED BY JULY 29, 2023.

You may proceed to pay my $30,237.74 via the mobile app Zelle (CHASE)

to [filomena44@verizon.net](mailto:filomena44@verizon.net)

2

3. Provide me with the name of your insurance company so I may file accordingly

(Notice of Malpractice).

Payment History:

1.
2.
3. Aug. 10, 2022 - $795 initial consultation with amount agreement which I was informed would be credited toward our ultimate engagement
4.  - That NEVER happened.
5.
6.
7.
8. Oct. 27, 2022  -
9. Total initial pre-payment of  $15,000
10.
    a.
    b.
    c. Chase - Online check Transfer No:1561255031 (exhibit
    d.  ?) Ck# 3005 $7,500
    e.
    f.
    g.
    h. Chase Credit Card Payment of $7,500
    i.
11.
12.
13. Feb. 3, 2023 - $2,522.71 - Chase Credit Card payment / paid in full
14.
15.
16.
17. Mar. 29, 2023 - $1,920.03 - Chase Credit Card payment / paid in full
18.
19.
20.
21. May 24, 2023 - $3,000.00 - Chase Credit Card payment / Towards the new pre-payment plan agreement. NOTE: THIS AMOUNT IS CURRENTLY
22.  IN DISPUTE WITH THE CREDIT CARD AS OF WRITTEN.
23.
24.
25.
26. May 24, 2023 - $7,000.00 - Chase Credit Card payment / Towards the new pre-payment plan agreement.
27. *NOTE: THIS AMOUNT IS CURRENTLY IN DISPUTE WITH THE CREDIT CARD AS OF WRITTEN.*
28.

*Total prepayment: $25,000.00*
*Total "claimed" billable payment:  $5,237.74*
*Full payment history to John Rue: $30,237.74\**

*Pending balance "claim."*
*(invoice 7/5/2023)   $2,403.66*

*Refund "claim" by JR's firm $22,596.34*

---

*Total in Arbitration $30,237.74*

---

*\*$10K is currently in dispute with the credit card company.*

Cc'd:

Krista Haley Rue
Saran Q. Edwards
Francis X. Geier
Johanna G. Burke
Jonathan S. Corchnoy
Matthew P. Crimmel
Carolina T. Curbelo
Jordan B. Dascal
Lynne D. Feldman
Robert Thurston
Rami M. Salim

# EXHIBIT E

## JOHN RUE & ASSOCIATES, LLC

A PRIVATE PUBLIC INTEREST LAW FIRM
100 OVERLOOK CENTER, 2ND FLOOR, #9211
PRINCETON, NJ 08540
(862) 283-3155 (main)
(973) 860-0869 (facsimile)

John D. Rue†
—
Krista L. Rue
—
Francis X. Geier

July 15, 2025

***Via email only*** to addresses on the docket
Daniel Dryzga, A.A.G.
Matthew Lynch, D.A.G.
Sadia Ahsauddin, D.A.G.
Kerry Sorrano, D.A.G.
Laurie Lee Fichera, D.A.G.

Hon. Joel Schneider, U.S.M.J. (ret.)

William S. Donio, Esq.

Robert Craig Thurston

**RE:    1:18-cv-09580-ESK-MJS J. A. et al v. N.J. Dep't of Edu.**
**Notice of Intent to File Motion to Intervene**

Dear  Counsel:

I write on behalf of several minor children and their parents who appear to be members of the putative class in J.A. My clients are not currently represented by any counsel in this matter.

If any party to the ongoing settlement discussions is contemplating a resolution that would be binding on the class, my firm expects to move to intervene, at minimum to ensure procedural compliance with Rule 23 and to preserve my clients' rights as absent class members. I am sending this letter prior to the July 17 status report to ensure that no party misrepresents the posture of the case or the absence of classwide objections.

This is not a litigation threat. It is a courtesy notice. I intend no gamesmanship. The clients I represent in C.P. devoted five years to securing significant injunctive relief for class members, and it appears that work may be influencing settlement negotiations in J.A. If that is correct, then a resolution in this matter should include terms ensuring enforcement of the State's obligations and guaranteeing adequate representation of absent class members. If those terms are not yet on the table, we have no present objection.  But we intend to be heard if and when they are.

Several of my clients are currently class representatives in C.P. v. N.J. Dep't of Edu., and so are well known to the State and its counsel.  They remain willing to serve in a representative capacity if necessary. At present, I do not intend to displace existing counsel or class representatives. I recognize that Mr. Thurston initiated this case. But the facts have changed. Mr.

*Bene facere bonum ~ Doing well by doing good*

Thurston's practice has collapsed, he is leaving private practice (if he has not done so already), and he is no longer being managed by his supposed clients, the putative class representatives in this case. As far as I can tell, he is now using his class counsel status in C.P. to advance his own claims in J.A., without protecting the interests of the absent members of the putative J.A. class. That would violate both the letter and spirit of Rule 23.

Although this letter is not required by any governing statute or rule, I am writing as a courtesy to inform you that several of our clients intend to file a Motion to Intervene in this matter within the next few weeks.  The relief we are likely to seek is not aimed, at this juncture, at displacing any current putative class representative, nor putative class counsel.  Rather, we intend to seek to intervene only so that we may monitor ongoing settlement negotiations.  We will do so on three grounds:

1.  **Possible Conflict of Interest**.  Putative Class Counsel, Robert Thurston of Thurston Law Offices, is appointed co-class counsel in the C.P. class action, which has been certified. The interests of the C.P. class (and especially the Rule 23(b)(3) class) is likely to diverge from the interests of the putative class in this case.

    Thurston has recently settled cases with NJDOE on behalf of individual clients where the settlement amount appeared to be disproportional to the value of the case.  This calls into question whether he is trading on his role as co-class counsel in CP to gain an improper benefit for his individual clients, and for himself (by receipt of attorneys' fees in cases without sufficient merit to succeed on their own).  Additionally, Thurston has recently engaged in wildly erratic behavior across numerous dockets in the District of New Jersey.

    Separately, I am aware (because I was informed by him) that Thurston intends to shut down his practice at the earliest possible time, so that he may emigrate to the United Kingdom (beyond the reach of the jurisdiction of US courts).

    The combination of his erratic behavior, combined with the facially illogical settlements, and his known intent to emigrate as soon as he can, suggest that he is in the process of "burning down" his law practice to maximize his retirement fund.  This is not an attorney who can be trusted to negotiate on the behalf of a class of plaintiffs with legitimate and substantial injuries.

2.  **Inexplicable Settlement Motive of NJDOE**.  Plainly stated, the currently operative complaint shows little or no risk of leading to an adversarial judgment.  The initial Answer was due on July 30, 2018.  Since then, seven years later, no Answer has been filed – not to the initial complaint, nor the first amended complaint, nor to the second amended complaint.  So the case has made no procedural progress at all.  No discovery has been taken.  No motion for certification of the class nor appointment of class counsel has been made.  And most tellingly, settlement negotiations began four years after the case was commenced, and only after negotiations began in the C.P. case.  These facts certainly support a plausible inference of collusion between NJDOE and Thurston.

3.  **Known Misconduct of the Mediator in a Related Case**.  Given the ethical challenges of putative class counsel, and the plausibility of collusion with NJDOE, it is even more

2

troubling that the assigned mediator is known by the undersigned to have engaged in ethical misconduct in the C.P. case, by ex parte communications with the then-presiding judge (even after being expressly forbidden from doing so, on a blanket basis, by then-class counsel), and by sharing class counsel's confidential settlement communications with defendants in a manner apparently intended to prejudice the interests of the class.

Notably, I assume that the settlement negotiations reflected on the docket pertain to a classwide resolution, with stipulated certification and appointment of class counsel for settlement purposes. That is where the interests of my firm's clients lie. If, however, the negotiations are limited to an individual settlement with one or more named plaintiffs, my firm presently has no basis to intervene, unless it becomes necessary to propose substitute class representatives to continue prosecuting the action on behalf of the class.

My intent in sending this letter is to ensure that no one can plausibly claim, after the fact, to have been unaware of these concerns or of the likelihood of intervention. If I have misunderstood any material aspect of the case, I welcome clarification. I will await the outcome of the July 17 status report before taking further action.


Best regards,

*John Rue*

John Rue

# EXHIBIT F



**Krista Haley Rue** She/Her · 3rd
Managing Partner @ John Rue and Associates | Equal Justice Medal recipient
Louisville, Kentucky, United States · Contact info
www.johnruelaw.com
500+ connections

Message    + Follow    More

John Rue and Associates

Columbia University in the City of New York

## Skills

### Preaching



Louisville Presbyterian Theological Seminary

Endorsed by 1 person in the last 6 months

1 endorsement

### Exegesis

Louisville Presbyterian Theological Seminary

Endorsed by 1 person in the last 6 months

1 endorsement

# EXHIBIT G

```
Status Report For:      JOHN RUE & ASSOCIATES, LLC
Report Date:            7/26/2025
Confirmation Number:    252073784657
```

## IDENTIFICATION NUMBER, ENTITY TYPE AND STATUS INFORMATION

```
Business ID Number:     0400656060
Business Type:          DOMESTIC LIMITED LIABILITY COMPANY
Status:                 ACTIVE
Original Filing Date:   05/01/2014
Stock Amount:           N/A
Home Jurisdiction:      NJ
Status Change Date:     NOT APPLICABLE
```

## REVOCATION/SUSPENSION INFORMATION

```
DOR Suspension Start    N/A
Date:
DOR Suspension End      N/A
Date:
Tax Suspension Start    N/A
Date:
Tax Suspension End      N/A
Date:
```

## ANNUAL REPORT INFORMATION

```
Annual Report Month:    MAY
Last Annual Report      05/28/2025
Filed:
Year:                   2025
```

## AGENT/SERVICE OF PROCESS (SOP) INFORMATION

```
Agent:                  JOHN RUE
Agent/SOP Address:      100 OVERLOOK CENTER ,PRINCETON,NJ,08540
Address Status:         DELIVERABLE
Main Business Address:  100 Overlook Center, 2nd Floor, #9211,
                        Princeton, NJ, 08540
Principal Business      100 Overlook Center2nd Floor,
Address:                #9211,Princeton,NJ,08540
```

## ASSOCIATED NAMES

```
Associated Name:        JOHN RUE  LLC
Type:                   PV
```

## PRINCIPALS

Following are the most recently reported officers/directors (corporations), managers/members/managing members (LLCs), general partners (LPs), trustees/officers (non-profits).

| | |
|---|---|
| Title: | OTHER |
| Name: | Rue,John |
| Address: | 238 NE 1st Street, Satellite Beach, , , US |

**FILING HISTORY -- CORPORATIONS, LIMITED LIABILITY COMPANIES, LIMITED PARTNERSHIPS AND LIMITED LIABILITY PARTNERSHIPS**

To order copies of any of the filings below, return to the service page, https://www.njportal.com/DOR/businessrecords/Default.aspx and follow the instructions for obtaining copies. Please note that trade names are filed initially with the County Clerk(s) and are not available through this service. Contact the Division for instructions on how to order Trade Mark documents.

Charter Documents for Corporations, LLCs, LPs and LLPs

| | |
|---|---|
| Original Filing (Certificate)Date: | 2014 |

Changes and Amendments to the Original Certificate:

| Filing Type | Year Filed |
|---|---|
| CHANGE OF REGISTERED OFFICE | 2021 |
| CHANGE OF REGISTERED OFFICE | 2022 |
| NAME CHANGE | 2017 |
| CHANGE OF AGENT AND OFFICE | 2024 |
| Annual Report Filing with address change | 2015 |
| Annual Report Filing with address change | 2022 |
| Annual Report Filing with address change | 2021 |
| Annual Report Filing with address change | 2023 |
| Annual Report filing with officer/member change | 2018 |
| Annual Report filing with officer/member change | 2022 |
| Annual Report filing with officer/member change | 2021 |

```
Annual Report filing    2025
with officer/member
change
```

Note:
Copies of some of the charter documents above, particularly those filed before June 1988 and recently filed documents (filed less than 20 work days from the current date), may not be available for online download.

- For older filings, contact the Division for instructions on how to order.
- For recent filings, allow 20 work days from the estimated filing date, revisit the service center at https://www.njportal.com/DOR/businessrecords/Default.aspx periodically, search for the business again and build a current list of its filings. Repeat this procedure until the document shows on the list of documents available for download.

The Division cannot provide information on filing requests that are in process. Only officially filed documents are available for download.

# EXHIBIT H



**Thursday, June 12, 2025**
**Regular Board Meeting Minutes**

**SPARTA BOARD OF EDUCATION**
**SPARTA, NEW JERSEY**
**REGULAR MEETING AGENDA, 6:00 PM**
**MOHAWK AVENUE SCHOOL**

YouTube Live Stream Link: https://www.youtube.com/channel/UCxXpaN6-LA0-qHedTBgxqZg

**1. MEETING OPENING**

**1.1 Called to Order**

The Sparta Board of Education Regular Meeting is called to order at 6:01 pm.

**1.2 Meeting Notice Announcement**

The New Jersey Open Public Meetings Law was enacted to ensure the right of the public to have advance notice of and to attend the meetings of public bodies at which any business affecting their interests is discussed or acted upon. In accordance with the provisions of this Act, the Sparta Board of Education has caused notice of the time and place of this meeting to be published in the New Jersey Herald, The Star-Ledger, TAPintosparta.net and notice of the meeting has been posted on the Sparta Township School District website.

**1.3 Roll Call**

Present:  Lauren Collier, Kaitlin Gagnon, Michelle Hinkle, Roque Martinez, Rebecca Williams, Chad Wood
Absent:  Leigh McMichael (arrived at 6:28 pm)
          Kurt Morris
          Emily Serafino

**1.4 Pledge of Allegiance**

**2. CLOSED SESSION**

**2.1 Convene Into Closed Session**

WHEREAS, Section 8 of the Open Public Meetings Act, Chapter 231, P.L. 1975, provides for the exclusion of the public from a meeting in certain circumstances, and; WHEREAS, the Sparta Township Board of Education is of the opinion that such circumstances exist to discuss legal and personnel matters which is exempt from public participation pursuant to New Jersey Public Law 1975, Chapter 231 "Open Public Meetings Act"; NOW THEREFORE, BE IT RESOLVED that the Sparta Township Board of

Education shall enter Executive Session on June 12, 2025 @ 6:03 pm. The Board will reconvene in public session at the conclusion of the Executive Session.
The information discussed during the Executive Session will be disclosed to the public as soon as it is determined by the Board that the information is no longer confidential.

A motion to enter into Executive session was made by Rebecca Williams, second by Roque Martinez and carried by a voice vote of the members present.

## 3. RESUME OPEN SESSION

### 3.1 Resume Open Session

RESOLVED that the Board of Education closes Executive Session and enters back into the public portion of the meeting at 7:06 pm.

Roll Call:
Present:  Lauren Collier, Kaitlin Gagnon, Michelle Hinkle, Roque Martinez, Leigh McMichael, Rebecca Williams, Chad Wood
Absent:  Kurt Morris
         Emily Serafino

## 4. DISTRICT RECOGNITION - NONE

## 5. PRESENTATIONS - NONE

## 6. STUDENT REPRESENTATIVE'S REPORT

### 6.1 Student Representative Monthly Report

The student representative provided an update on student activities and fundraisers.

## 7. APPROVAL OF MINUTES

### 7.1 Approval of Minutes

RESOLVED that the Board of Education approves the following BOE Minutes:
05/01/2025 - Regular Meeting Minutes
05/01/2025 - Executive Session Minutes
Upon request, all approved minutes shall be made promptly available to the public at any time on or after the next business day following this meeting, unless the need for confidentiality with respect to the approved Executive Session Minutes exists, in which case all privileged and/or confidential information shall be redacted. After a review of these executive session minutes, the reasons for prior redactions remain present, the extent that any prior redactions have been made.

A motion to approve the minutes was made by Rebecca Williams, second by Roque Martinez and carried by a voice vote of the members present.

Abstention correction—16.27 and 17.8, abstention was by Michelle Hinkle, not Rebecca Williams as indicated on the minutes.  The correction will be made and the minutes do not need to be approved again at the July Board meeting.

## 8. SUPERINTENDENT'S REPORT

### 8.1 Superintendent's Monthly Report

Dr. Beck reported on the following:

**16.13 Roll Call**

Motion to approve Curriculum and Special Services items 16.1 through 16.12 by Roque Martinez, second by Chad Wood
Discussion: Chad Wood provided and update on the Curriculum Committee meeting.
Final Resolution:  Motion Carries
Yes: Lauren Collier, Michelle Hinkle (abstain from 16.9 only), Roque Martinez, Leigh McMichael, Rebecca Williams, Chad Wood, Kaitlin Gagnon
Absent:  Kurt Morris
       Emily Serafino

**17. FINANCE - Roque Martinez, Chair - The Board of Education approves the following items as recommended by the Superintendent of Schools:**

**17.1 Vendor Payments**
RESOLVED that the Board of Education approves the vendor payments dated 05/02/25 through 06/12/25.

| Fund 10 | General Fund | $6,894,128.48 |
|---------|--------------|---------------|
| Fund 20 | Special Revenue | $703,769.18 |
| Fund 60 | Cafeteria | $111,996.31 |
| Fund 90 | Agency | $2,177,556.20 |
| | Total: | $9,887,450.17 |

**17.2 Financial Reports/Monthly Certification for April 2025**
RESOLVED that the Board of Education accepts the attached Board Secretary's Report and Treasurer of School Monies report for April, 2025.
RESOLVED pursuant to N.J.A.C. 6A:23A-16.10 (c)3, the Board Secretary does certify that as of April, 2025, no budgetary line item account has encumbrances and expenditures which in total exceed the amount appropriated by the district Board of Education pursuant to N.J.S.A. 18A:22-8.1; therefore be it RESOLVED that pursuant to N.J.A.C. 6A:23A-16.10 (c)4 the Board of Education does certify that as of April, the Board Secretary Monthly Financial Report, did not reflect an over expenditure in any Major Account or Fund, and based on the Appropriation Balances reflected on this report and on the advice of District Officials, that sufficient funds are available to meet the District's financial obligations for the remainder of the fiscal year.
File Attachments
Treasurer's Report April 2025.pdf (6,140 KB)
Board Secretary's Report April 2025.pdf (9,070 KB)

**17.3 Financial Reports/Monthly Certification for May 2025**
RESOLVED that the Board of Education accepts the attached Board Secretary's Report and Treasurer of School Monies report for May, 2025.
RESOLVED pursuant to N.J.A.C. 6A:23A-16.10 (c)3, the Board Secretary does certify that as of May, 2025, no budgetary line item account has encumbrances and expenditures which in total exceed the amount appropriated by the district Board of Education pursuant to N.J.S.A. 18A:22-8.1; therefore be it RESOLVED that pursuant to N.J.A.C. 6A:23A-16.10 (c)4 the Board of Education does certify that as of May, the Board Secretary Monthly Financial Report, did not reflect an over expenditure in any Major Account or Fund, and based on the Appropriation Balances reflected on this report and on the advice of District Officials, that sufficient funds are available to meet the District's financial obligations for the remainder of the fiscal year.
File Attachments
Treasurer's Report May 2025.pdf (4,704 KB)
Board Secretary's Report May 2025.pdf (8,961 KB)

| Regular Education | Grades 1-5 | $17,863.00 |
| Regular Education | Grades 6-8 | $20,049.00 |
| Regular Education | Grades 9-12 | $20,657.00 |
| Special Education | LLD, all grades | $46,925.00 |
| Special Education | Emotional Regulation Impairment | $46,104.00 |
| Special Education | Multiple Disabled | $52,638.00 |
| Special Education | Preschool Handicapped Full Time | $40,841.00 |

**17.38 Tax Shelter Annuity Vendors**
RESOLVED that the Board of Education approves the following Tax Shelter Annuity salary reduction 403b Deferred Compensation Plans, Adoption Agreement and applicable 457 plans. The plan administrator for all accounts is the School Business Administrator.
AXA Equitable
PenServ Plan Services (previously Foresters and First Investors)
Fidelity Investments
Invesco (previously Oppenheimer)
Lincoln Financial
Corebridge Financial (AIG Retirement) (previously AIG Valic)
Lincoln Investment Planning Inc. (previously the Seely Legend Group)
Security Benefit
Metlife Investors

**17.39 New Jersey School Boards Association**
RESOLVED that the Board of Education approves the NJSBA 2025-2026 dues in the amount of $27,914.80 .

**17.40 Orthopedic Institute of New Jersey**
RESOLVED that the Board of Education approves the Orthopedic Institute of New Jersey as the physicians for home football games and scrimmages at no cost to the district. An orthopedic physician will be onsite for all home football games in compliance with NJSIAA recommendations.

**17.41 Settlement Agreement**
RESOLVED that the Sparta Township Board of Education ("Board") hereby approves the settlement in the matter captioned M.N. et al. v. Sparta Township Board of Education, as said caption has been amended by Court Order, Civil Docket No.: 2:21-cv-19977 and all associated state and administrative actions, in accordance with the terms of the Settlement Agreement and Release provided to the Board, which is on file in the office of the Business Administrator; and
BE IT FURTHER RESOLVED, that the Board hereby approves the indemnification agreement annexed to, and incorporated by reference to, the aforementioned Settlement Agreement and Release; and
BE IT FURTHER RESOLVED, that the Board President and Board Business Administrator are hereby authorized to execute the foregoing documents and to take such actions as required to effectuate the terms of the Settlement Agreement and Release.

**17.42 Donation(s)**
RESOLVED that the Board of Education approves the following donations:

| Donation From | Purpose/Items | Recipient | Amount |
| --- | --- | --- | --- |
| Sparta Boys Lacrosse Team Booster Club | Stipend for volunteer coaches | Henderson, Shane Sanchez, Aaron | $1,528.50 $1,528.50 |
| Sparta Benevolent Society | Field trip to Turtle Back Zoo | Multilingual Learners Program | $1,515.50 |

**17.43 Amend Resolution No. 18.3 Maschio's Addendum (5/1/25)**
RESOLVED that the Board of Education approves to amend Resolution 18.3 Maschio's Addendum from the 5/1/25 meeting as follows:

RESOLVED that the Board of Education approves the following addendum to the 2025-2026 school year Food Service Program renewal:
This addendum, is between Sparta Township Board of Education (hereinafter referred to as "School Food Authority", "SFA" and "Board of Education") and Maschio's Food Services Management, Inc. (hereinafter referred to as "Maschio's", "FSMC" and "Food Services Management Company").
WITNESSETH:
WHEREAS, SFA and Maschio's entered into a certain Management Contract, (dated July 1, 2023), as amended, whereby Maschio's manages and operates SFA's Food Service operation at Sparta, New Jersey; and
WHEREAS, the parties now desire to further amend the aforesaid Contract;
NOW, THEREFORE, in consideration of the promises herein contained and for other good and valuable consideration, the parties hereto agree as follows:
1. The following terms and conditions shall apply for duration of this Addendum
Article I: Federal and State Required Contract Language
A. DURATION OF ADDENDUM 1) This addendum begins on July 1, 2025 and ends on June 30, 2026.
B. MANAGEMENT FEE / GUARANTEES
1) FEE Management Fee. SFA shall pay Maschio's a Management Fee in an amount equal to $51,750.00 payable in ten equal installments of $5,175.00, September through June for the 2025-2026 contract year. The Management Fee shall be calculated at the end of each Accounting Period during the school year and prorated for any partial Accounting Period. Partial Accounting Period shall be defined as a period of time less than one (1) month.
2) GUARANTEE. SFA and Maschio's shall work together to ensure a financially sound operation and shall guarantee financial results for the 2025-2026 school year as follows.
Surplus Guarantee
Maschio's guarantees that SFA shall receive a Surplus of $50,000.00 for the 2025-2026 school year. If the actual Surplus for the Food Service program falls short of the aforementioned amount, Maschio's shall pay the difference to SFA in an amount not to exceed one hundred percent (100%) of Maschio's annual Management Fee and General Support Services Allowance. Maschio's reserves the right to recover any such reimbursement made during the current contract year from that year's Surplus on a monthly basis.
**The Guaranteed Return amount is unlimited.**
**Total cost of contract:  $1,234,589.53**

**17.44 Memorandum of Agreement, Sparta Education Association**
Resolved, that the Board of Education hereby ratifies the Memorandum of Agreement with the Sparta Education Association for the contract period July 1, 2025 through June 30, 2029, including related mutually adopted salary guides, which was previously ratified by SEA, and which is on file in the office of the School Business Administrator; and be it;
Further Resolved, that the Board authorizes its Board President, or designee, as applicable, to execute an appropriate successor collective negotiations agreement upon finalization of the same.

==17.45 Roll Call==

==Motion to approve Finance items 17.1 through 17.44 by Roque Martinez, second by Lauren Collier==
Discussion:  Roque Martinez provided an update on the Finance and Operations Committee meeting.
Dr. Beck and Kaitlin Gagnon thanked the Sparta Benevolent Society for their donation (17.42) for the ELL student field trip to Turtle Back Zoo.  Kaitlin Gagnon thanked all involved in the contract settlement process with the SEA (17.44).  Lauren Collier offered condolences to the family of Dr. Coyle who recently passed away.  She had served as our school physician for the past several years.
==Final Resolution:  Motion Carries==
Yes:  Lauren Collier, Michelle Hinkle (abstain from 17.36 and any item that involves present or former students at William Paterson University), Roque Martinez, Leigh McMichael, Rebecca Williams, Chad Wood, Kaitlin Gagnon

**19.45 Roll Call**

Motion to approve Renewal items 19.1 through 19.44 by Lauren Collier, second by Rebecca Williams
Discussion:  None
Final Resolution:  Motion Carries
Yes:  Lauren Collier, Michelle Hinkle, Roque Martinez, Leigh McMichael, Rebecca Williams, Chad Wood, Kaitlin Gagnon
Absent:  Kurt Morris
          Emily Serafino

**20. OLD BUSINESS - NONE**

**21. NEW BUSINESS - NONE**

**22. PUBLIC COMMENT #2**

**22.1 Public Comments**

The Board uses the second public comment period to invite comments on **all matters pertaining to the school district**.  Please state your name, municipality, and group affiliation, if appropriate, for the record.  Each participant will receive three (3) minutes to speak.  Once you have had your allotted three (3) minutes to speak, you will not be permitted to speak again.  All statements should be directed to me as the presiding officer.  The Board or administration *may or may not* respond to any questions or comments after the conclusion of the public participation.

Michelle Patrickio – Baseball Booster Club President – discussed field issues
Angela Deluccia – SEA President - provided an update on current membership activities

**23. FOR THE GOOD OF THE ORDER**

**23.1 For the Good of the Order**

Lauren Collier – provided a summary/update on Sparta traditions that took place during the school year
Leigh McMichael – congratulated the class of 2025

**24. CLOSED SESSION**

**24.1 Convene Into Closed Session**

WHEREAS, Section 8 of the Open Public Meetings Act, Chapter 231, P.L. 1975, provides for the exclusion of the public from a meeting in certain circumstances, and; WHEREAS, the Sparta Township Board of Education is of the opinion that such circumstances exist to discuss the CSA evaluation which is exempt from public participation pursuant to New Jersey Public Law 1975, Chapter 231 "Open Public Meetings Act"; NOW THEREFORE, BE IT RESOLVED that the Sparta Township Board of Education shall enter Executive Session on June 12, 2025 @ 7:40 pm. The Board will reconvene in public session at the conclusion of the Executive Session.

The information discussed during the Executive Session will be disclosed to the public as soon as it is determined by the Board that the information is no longer confidential.

A motion to enter into Executive session was made by Rebecca Williams, second by Lauren Collier and carried by a voice vote of the members present.

**25. RESUME OPEN SESSION - NONE**

**26. ADJOURNMENT**

**26.1 Motion to adjourn the meeting from Executive Session**
RESOLVED that the Board of Education approves the motion to close the meeting of the Sparta Board of Education at 10:02 pm.

A motion to adjourn the meeting was made by Rebecca Williams, second by Lauren Collier and carried by a voice vote of the members present.


_____
Barbara A. Decker, Business Administrator/Board Secretary

# EXHIBIT I

**rthurston@schoolkidslawyer.com**

| | |
|---|---|
| **From:** | John Rue <john@johnruelaw.com> |
| **Sent:** | Wednesday, July 23, 2025 9:45 AM |
| **To:** | rthurston@schoolkidslawyer.com |
| **Cc:** | Matthew Lynch; Ryan Silver; kag@spsk.com; vlapira@fhlclaw.com; jkleen@machadolawgroup.com; Krista Rue |
| **Subject:** | Pending Sanctions Motion – Improper Letters |
| | |
| **Importance:** | High |

Mr. Thurston,

As you know, a motion for sanctions against you is currently pending in the *Sparta* matter. You may not yet have had sufficient time to review it in full, but you will see that I have attached to my certification copies of your letters to defense counsel in three other cases (*C.P.*, *Strunk*, and *Augustyn*) to my supporting certification. These were provided to me directly by the attorneys who received them, as you did not copy me.

I included these letters because they were, on their face, improper. Your threats of litigation for conversion or wrongful settlement had no legal foundation. In context, they appear plainly calculated to disrupt the orderly resolution of those matters in order to assert leverage over funds likely to be in dispute between you and JRA, non-parties to these cases.

This email offers you a final opportunity to withdraw the letters — for purposes of the pending sanctions motion only. If you do so before the deadline for your opposition, you will be free to inform Judge Allen that the relevant portion of your misconduct has been formally disavowed.

If, however, you do *not* withdraw the letters by **close of business tomorrow** (July 24, 2025), I will write to Judge Keil (regarding your letters to counsel in *C.P.* and *Strunk*) and Judge Day (regarding your letter to counsel in *Augustyn*) to ensure they are aware of your communications, and will attach the letters accordingly.

The choice is yours.

—

John Rue


John Rue
Pronouns:  He/Him/His
"Doing Well By Doing Good."



**John Rue**
**Principal Attorney**
📞 862-283-3155 (office)
✉
john@@johnruelaw.com

100 Overlook Center
2nd Floor, #9211
Princeton, NJ 08540

**[www.johnruelaw.com](http://www.johnruelaw.com)**

 

"One man with God is a majority."

-- Frederick Douglass, hailing the lone minority opinion of John Harlan in *Plessy v. Ferguson*.  Over Harlan's historic and outraged dissent (in which he argued that "[t]he arbitrary separation of citizens, on the basis of race . . . is a badge of servitude wholly inconsistent with the civil freedom and the equality before the law established by the constitution. It cannot be justified upon any legal grounds."), SCOTUS announced the rule of "separate but equal," permitting racial segregation.  *Plessy* survived for over fifty years, until it was overruled by *Brown v. Bd of Edu.* which held that "in the field of public education . . . Separate educational facilities are inherently unequal."

Harlan was right in 1896.  And if *Brown* were overruled today, and *Plessy* were reinstated, he would still be right today.  **In the law, it is not might that makes right.  It is right that makes right.**

2

# EXHIBIT J

JOHN RUE & ASSOCIATES, LLC
A PRIVATE PUBLIC INTEREST LAW FIRM
100 OVERLOOK CENTER, 2ND FLOOR, #9211
PRINCETON, NJ 08540
(862) 283-3155 (main)
(973) 860-0869 (facsimile)

John D. Rue†

—

Krista L. Rue

—

Francis X. Geier

November 2, 2024

State of New Jersey
Office of Attorney General
Department of Law and Public Safety
J. Stephen Ferketic, Esq.
Director, Division of Criminal Justice

***Via USPS to:***
     Richard J. Hughes Justice Complex
     Attn: Records and Identification
     25 Market Street -- PO Box 085
     Trenton NJ 08625-0085
***Via email to:*** *dcjtipline@njdcj.org*

**RE:**    **Request for Criminal Investigation**

Dear Mr. Ferketic:

I am writing to request an investigation into gross criminal misconduct directly related to *C.P. et al. v. N.J. Dep't of Edu.* (D.N.J. 1:19-12807), in which the Attorney General's office appears on behalf of New Jersey Department of Education.

In this letter, I summarize the criminal misconduct alleged, identify with specificity those whom I accuse, provide citation to the criminal statutes alleged to have been violated, and indicate where evidence of the crimes can be obtained. I then explain the timing of this letter, as well as the distribution list. The letter concludes with a short statement regarding concurrent jurisdiction, and a respectful request for expedition of the decision whether to investigate the within allegations.

\*     \*     \*

**Narrative of Criminal Misconduct**. In 2019, John Rue & Associates, LLC (my law firm, "JRA") engaged by contract with five other firms for their assistance with prosecuting a class action against New Jersey Department of Education. The contract was amended and ratified in 2021 (adding one more firm in a supporting role), and again in February 2022 (adding one more, for a total of seven). Also in February 2022, JRA contracted separately with the Education Law Center, Inc. to provide additional assistance with the lawsuit.

In the summer of 2022, two classes were certified, and JRA was appointed sole class counsel. In February 2023, JRA settled the lawsuit with the State, obtaining consent from the defendants to

*Bene facere bonum* ~ *Doing well by doing good*

historic injunctive relief.[1]  Negotiation of the fees was bifurcated from the merits and the fees were later agreed by JRA and NJDOE to be $4,750,000.00.

In early May, 2023, ELC (through Gregory Little) commenced *ex parte* communications with the presiding federal District Court Judge, Noel Hillman, by and through Lawrence Lustberg, Esq. of Gibbons P.C.  The content of these improper communications was about Judge Hillman's desire to quickly push the settlement along to final approval, because the Judge wanted to retire by the end of the summer 2023, to accept a job at Gibbons. But regardless of the intent, these communications had the effect of emboldening those accused herein to commit the crimes alleged.

After the *ex parte* communications began, at the end of May, 2023, three partner firms[2] met with me and my wife (who is a partner at JRA) to extort us (by threats of exposure of a defamatory and sexually salacious document[3]) into handing control of the case over to Education Law Center.  The threat was reiterated by phone call between ELC and me about ten days later.  On that June phone call, Little warned me that "Rob Thurston is dangerous!"  I had no idea then how true that was.

When the extortion attempt initially failed, four of the appearing firms[4] brought a frivolous and bad faith motion in the case, supported by three perjurious certifications.

- ==**July 10, 2023**:  Frivolous and bad faith motion.  While the bad faith motion was pending (from July 10 to September 13, 2023, the following happened:==

- ==Beginning (at the latest) in **late July 2023**, the *ex parte* communications with Judge Hillman continued, now through Judge Joel Schneider, U.S.M.J. (ret.), who had been previously contracted (by JRA and the State) to mediate the dispute between the certified classes and NJDOE, but was never appointed by the Court as a mediator, and certainly neither contracted nor appointed to mediate any disputes between the firms appearing on behalf of the classes==.

- On **August 6, 2023**, the defamatory and sexually salacious document used for extortion was mailed anonymously to Nina Rue, my ex-wife and mother of my son.[5]

- On **August 9, 2023**, the defamatory and sexually salacious document used for extortion was mailed anonymously to a person who was previously legally adverse to a JRA client.[6]  The recipient had been accused by JRA's clients of raping their teenage daughter.[7]

- On **August 16, 2023**, Robert Thurston filed a bad faith ethics grievance against me, containing virtually no information based on his personal knowledge (almost entirely regurgitated from

---

[1] Daniel Dryzga, Assistant Attorney General¸ signed for NJDOE.  He is likely a fact witness to any investigation. So too are Deputy Attorney Generals Matthew Lynch, Esq. and Carolyn Labin, Esq.

[2] These were Catherine Reisman (for Reisman Carola Gran & Zuba), Jefferey Wasserman (for WassLegal, now known as Wasserman Little), and Gregory Little (for ELC).

[3] This document was not confidential.  But neither was it widely disseminated.  The extortionists expressly and repeatedly warned (both in late May and early June) that I should agree to their demand    to avoid "exposure."

[4] Reisman, Thurston, Dwyer, and Giles.  Only Reisman and Giles had human clients in the case.  JRA represents seven of the ten appointed class representatives.

[5] That document is in my possession.

[6] The case received wide press coverage.

[7] A digital copy of this anonymous mailing was provided to me by my former adversary.

unverified sources found on the internet).  The "grievance" also contained much information that could have easily been determined by him to be false.[8]

After a second hearing before Judge Hillman, in which the Judge showed hostility to me personally and to JRA, in **mid-September 2023**, JRA "voluntarily" withdrew as class counsel.  Notably, this not only relinquished JRA's control over the disbursement of $4,750,000.00 in fees (eventually paid in June 2024, largely to RCGZ), but also control of the case going forward, in which the Court is expected to retain jurisdiction for a substantial period of time.  Additional fees will accrue during this post-judgment period and, by the terms of the agreement I negotiated with NJDOE, the State has agreed to fee shifting for post-judgment work.

- On or around **June 10, 2024** (within days of the deadline for payment of attorneys' fees), the defamatory and sexually salacious document was mailed anonymously to Diane Haley, my mother-in-law, and the mother of Krista Rue, my wife and my law partner.[9]  I believe that the synchronization of the timing of this latest anonymous mailing with events in the case post-judgment indicates that the misconduct continues, *and will likely continue into the future*.

*     *     *

**Accused Persons**.  Because the crimes alleged involve conspiracy, I cannot always state with specificity which person (natural or legal) was directly involved.  Investigation will be necessary to attribute liability to the individuals in these instances.  Where I do have personal knowledge of information sufficient to allege individual criminal liability, I provide it in the footnotes.

The persons I accuse of criminal misconduct are:

- Education Law Center, Inc.
- Gregory Little, Esq.
- Catherine Reisman, Esq.
- Robert Thurston, Esq.
- Denise Dwyer, Esq.
- Jefferey Wasserman, Esq.
- David Giles, Esq.
- Jennifer Valverde, Esq.

*     *     *

---

[8] The grievance was dismissed without prejudice by the ethics committee, as related to the *C.P.* case (and because it recited allegations from a then-pending fee arbitration dispute).  Since final approval of the settlement and payment of the fees, Thurston has not renewed the grievance.

[9] This anonymous letter is in my possession.

3

**Indictable Offenses:**[10]

1. **Extortion**:[11] .....................................................18 U.S.C. 1951; N.J.S.A. 2C:20-5
2. **Obstruction of Justice**:[12] ..............................18 U.S.C. 1503; N.J.S.A. 2C:29-1
3. **Perjury**:[13] ...........................................................18 U.S.C. 161; N.J.S.A. 2C:28-2 & 8-3
4. **Antitrust**:[14] ..................................................... 15 U.S.C. 1; N.J.S.A. 56:9-1 *et seq.*
5. **Racketeering**:[15] ...................................................18 U.S.C.A. 1951; NJSA 2C:41-1 *et seq.*
   a. **Criminal harassment** (petty disorderly persons[16]):[17] ......................N.J.S.A. 2C:33-4

\*      \*      \*

**Timing, Purpose, and Distribution of this Letter**.  The crimes accused herein are largely economic, but without adequate remedy in civil court.  Moreover, the crimes had ramifications that go beyond financial harm.  But there are no allegations of violence.  Accordingly, I have moved slowly so far, seeking to reach some sort of accommodation.  Most notably, before filing the recent motion in Court (seeking relief for JRA's clients), I sent an exhaustive demand letter to ELC on June 21, 2024.[18]  I received no substantive response.  Other attempts at informal resolution have been similarly met with stony silence.  So finally, just days before the 1-year deadline imposed by Rule 60(b), JRA (on behalf of its clients) sought reconsideration and removal of substitute class counsel (all of the above accused, except for Ms. Valverde, who represents *amici*), based in large part on the misconduct alleged herein.  In all of these communications, I have had to walk a tightrope, i.e., by (a) alleging facts which would (if proven) clearly give rise to criminal liability, without (b) leveraging the prospect of a criminal prosecution for an unfair advantage in a civil dispute.  I believe I succeeded.

However, even the filing of the motion on October 25 has resulted in no substantive response from the accused (and, as to the motion, the Respondents).  They are required to file an opposition brief no later than Monday, November 4, 2024, to which JRA has the right to reply.  So I am sending this to you (and to the respondents to the motion, as cc's) over the weekend before their deadline, in order to be fair to them.  Now that I have formally accused them (by this letter) of the criminal misconduct listed above, I need not refrain, in JRA's response to any opposition brief that they may file, from expressly describing their misconduct as criminal.

I will also send a copy of this letter to Judge Keil, U.S.D.J.  The misconduct alleged herein occurred in his court, in a case to which he is currently assigned, and retains continuing jurisdiction.  He has

---

[10] One disorderly persons offense is listed below, intended to be referenced as a predicate offense to racketeering.

[11] Little, ELC, Reisman, Wasserman.  The others may be criminally liable for aiding and abetting or conspiracy.

[12] Little and ELC by facilitating the *ex parte* communications.  The others may be criminally liable for aiding and abetting or conspiracy.

[13] Reisman, Dwyer, Thurston.

[14] This is a crime of conspiracy, and so all of the above accused should be investigated for their involvement.  This is the primary reason for including Jennifer Valverde, Esq. on this list.  *Noer-Pennington* does not protect "sham litigation," such as the frivolous and bad faith motion brought in July 2023.

[15] *See* n.13, *supra*.

[16] These are included as predicate offenses to the racketeering.

[17] This particular criminal liability arises from the anonymous letters, and so all of the above accused should be investigated for their involvement.

[18] A copy of that letter to ELC, which is about seventy pages long, is attached to the pending motion papers.

every right to know the full details of this letter-request for a full criminal investigation. And because I will send it to him, I must also send it to all counsel representing parties to the case.

Having said that, this letter is not directly related to the *C.P.* class action. So the presumption of access to judicial documents does not clearly apply. I will send Judge Kiel this letter by mail, rather than by posting it on the docket. If he deems publication to be warranted, he will do so.

*       *       *

**Concurrent Jurisdiction**. As indicated by the statutory citations above, most of the criminal misconduct alleged – if proven – would be a violation of both federal and New Jersey law. Because the locus of the misconduct is in New Jersey (although the federal mails were used), and also because the Attorney General's office is appearing in *C.P.*, we thought it proper and appropriate to first bring this matter to the attention of the New Jersey criminal law enforcement authorities. However, as noted in footnote 1, above, both of the OAG attorneys involved in the case in federal court are likely to be fact witnesses to any criminal investigation (especially on the subject of perjury). Accordingly, you might rather refer any investigation of this matter to the U.S. Attorney's Office. If so, we consent to that decision.

However, in any event, we respectfully request at least a preliminary response to this letter with all due haste. We do not expect, in that preliminary response, the result of your investigation. We only ask you to provide, as soon as you are able, a decision on whether you will investigate and, if not, whether you will refer the matter to federal criminal enforcement authorities.

Thank you for your consideration of this request.

Respectfully,

*John Rue*

John Rue

cc:     Judge Edward S. Keil (via USPS only)
        Daniel Dryzga, Esq. (via email only)
        Matthew Lynch, Esq. (via email only)
        Catherine Reisman, Esq. (via email only)
        Robert Thurston, Esq. (via email only)
        Denise Dwyer, Esq. (via email only)
        Jefferey Wasserman, Esq. (via email only)
        David Giles, Esq. (via email only)
        Mark Berman, Esq. (via email only)
        Elizabeth Athos, Esq. (via email only)
        Jessica Levin, Esq. (via email only)
        Gregory Little, Esq. (via email only)
        Jennifer Valverde, Esq. (via email only)

# JOHN RUE & ASSOCIATES, LLC

### A PRIVATE PUBLIC INTEREST LAW FIRM
100 OVERLOOK CENTER, 2ND FLOOR, #9211
PRINCETON, NJ 08540
(862) 283-3155 (main)
(973) 860-0869 (facsimile)

John D. Rue[†]

—

Krista L. Rue

—

Francis X. Geier

March 12, 2025

J. Stephen Ferketic, Esq.
Director
Office of Attorney General
Department of Law and Public Safety
**Via USPS to:**
        Richard J. Hughes Justice Complex
        Attn: Records and Identification
        25 Market Street -- PO Box 85
        Trenton, NJ 08625-0085
**Via email to**: dcjtipline@njdcj.org

***RE:    Criminal Misconduct in Federal Court***
***C.P. v. N.J. Dep't of Edu.*** (D.N.J. 1:19-12807)

Dear Mr. Ferketik:

This letter follows up on my two (2) prior letters sent to your attention, the first on November 1, 2024 and the second on November 15, 2024. In those communications, I demanded a criminal investigation into gross misconduct in the above cited case before the Federal District of New Jersey. I have not received even a confirmation of your receipt of those letters.

In one federal subsequent filing, one of the attorneys about whom I complained (Robert Thurston) cited to my criminal complaint to you as an example of my "unhinged" behavior. And he implied that inaction by your office somehow vindicates him (and presumably others) against my allegations. My guess is that your office may be awaiting resolution of the motion filed on behalf of my clients in the underlying case. As noted by Mr. Berman (ELC's counsel, cc'ed here), the Court may be slow in resolving that motion, given that the case is closed. But a criminal investigation should not wait. In fact, if sequential, the criminal investigation should go first, to create a factual record that the Court might find useful.

In any event, an investigation into the misconduct I've alleged cannot be delayed. The Attorney General has jurisdiction to investigate it; but such jurisdiction is not exclusive. I have not heard from someone in your office in the next fifteen days, I will likely forward my complaint to the U.S. Attorney and/or to any of the county prosecutors who might have jurisdiction to investigate the charges I've alleged. Needless to say, delays in investigation criminal misconduct can only prejudice the investigation, as memories fade and documents are lost. Time is of the essence. Please respond at your earliest convenience.

Respectfully,

*John Rue*
John Rue

cc:    Mark Berman, Esq. (counsel to ELC and all others associated with it)

*Bene facere bonum ~ Doing well by doing good*

†    Licensed in New York as well as New Jersey